No. 24-40571

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

State of Texas; State of Alabama; State of Arkansas; State of Florida;
State of Georgia; State of Iowa; State of Kansas; State of Louisiana;
State of Missouri; State of North Dakota; State of Ohio; State of South
Carolina; State of South Dakota; State of Tennessee; State of Wyoming;
State of Idaho,

Plaintiffs - Appellees

v.

United States Department of Homeland Security; Alejandro Mayorkas,
in his official capacity as Secretary for DHS; Ur Mendoza Jaddou, in her
official capacity as Director of USCIS; Troy Miller, in his official
capacity as the Acting Commissioner of CBP; Patrick J. Lechleiter, in
his official capacity as the Acting Director of ICE; Office of Management
and Budget; Shalanda Young, in her official capacity as the Director of
the Office of Management and Budget,

Defendants - Appellees

Oscar Silva Perez; Natalie Taylor; Salvador Doe; Justin Doe; Carmen
Miranda Zayas; Ricardo Ocampo Hernandez; Jessika Ocampo
Hernandez; Foday Turay; Jaxhiel Turay; Genaro Vicencio Palomino;
Cindy Siqueiros Maduena; Coalition for Humane Immigrant Rights,

Movants – Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS, TYLER DIVISION
NO. 6:24-CV-00306

# OPENING BRIEF OF APPELLANTS COALITION FOR HUMANE
# IMMIGRANT RIGHTS, JUSTIN DOE, SALVADOR DOE, CINDY
# MADUENA, JESSIKA OCAMPO HERNANDEZ, RICARDO
# OCAMPO HERNANDEZ, GENARO PALOMINO, OSCAR SILVA
# PEREZ, NATALIE TAYLOR, FODAY TURAY, JAXHIEL TURAY,
# AND CARMEN ZAYAS

*Esther H. Sung, Karen C. Tumlin, Hillary Li, Laura Flores-Perilla, Brandon Galli-Graves, Vanessa Rivas-Bernardy*
*Justice Action Center*
*P.O. Box 27280*
*Los Angeles, CA 90027*
*(323) 450-7272*

*Paige Austin, Harold Solis*
*Make the Road New York*
*301 Grove St.*
*Brooklyn, NY 11237*
*(718) 418-7690*

*Counsel for Appellants*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case.

Additionally, as required by Rule 26.1, Appellant Coalition of Humane Immigrant Rights states that it is a nonprofit corporation which does not have a parent corporation, and does not issue stock, so no publicly held corporation owns ten percent (10%) or more of its stock. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| United States Department of Homeland Security Alejandro Mayorkas Ur Mendoza Jaddou Troy Miller Patrick J. Lechleiter Office of Management and Budget Shalanda Young | Erez Reuveni Office of Immigration Litigation Department of Justice Washington, DC |
| State of Texas | Lanora Pettit Ryan Walters William Cole Garrett Greene Office of the Texas Attorney General Austin, TX |

| | |
|---|---|
| State of Alabama | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Arkansas | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Florida | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Georgia | Stephen Petrany<br>Georgia Department of Law<br>Atlanta, GA |
| State of Idaho | Alan Hurst<br>Michael Zarian<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Iowa | Eric Wessan<br>Iowa Department of Justice<br>Des Moines, IA<br><br>Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Kansas | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Louisiana | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Missouri | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of North Dakota | Philip Axt<br>North Dakota Office of the Attorney General<br>Bismarck, ND |

|  | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
|---|---|
| State of Ohio | Thomas Gaiser<br>Office of the Attorney General<br>Columbus, OH |
| State of South Carolina | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of South Dakota | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Tennessee | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |
| State of Wyoming | Alan Hurst<br>Idaho Office of the Attorney General<br>Boise, ID |

| Appellants: | Counsel for Appellants: |
|---|---|
| Oscar Silva Perez<br>Natalie Taylor<br>Salvador Doe<br>Justin Doe<br>Carmen Miranda Zayas<br>Ricardo Ocampo Hernandez<br>Jessika Ocampo Hernandez<br>Foday Turay<br>Jaxhiel Turay<br>Genaro Vicencio Palomino<br>Cindy Siqueiros Maduena<br>Coalition for Humane<br>Immigrant Rights | Esther Sung<br>Karen Tumlin<br>Hillary Li<br>Laura Flores-Perilla<br>Brandon Galli-Graves<br>Vanessa Rivas-Bernardy<br>Justice Action Center<br>Los Angeles, CA<br><br>Paige Austin<br>Harold Solis<br>Make the Road New York<br>Brooklyn, NY |

*/s/ Esther H. Sung*
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272

*Counsel for Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

If the Court determines that there is a need for oral argument, Appellants respectfully request that the Court schedule the argument for as soon as possible following the close of briefing, including via videoconference, to allow for a decision no later than September 17.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...................................... iii

STATEMENT REGARDING ORAL ARGUMENT ................................vii

TABLE OF CONTENTS ......................................................................viii

TABLE OF AUTHORITIES .....................................................................x

INTRODUCTION .....................................................................................1

STATEMENT OF JURISDICTION.........................................................2

ISSUE PRESENTED ........................... **Error! Bookmark not defined.**

STATEMENT OF THE CASE ..................................................................4

BACKGROUND.......................................................................................9

   I.   Keeping Families Together Parole Process......................................9

   II.  Procedural History ........................................................................13

SUMMARY OF THE ARGUMENT .......................................................16

STANDARD OF REVIEW....................................................................19

ARGUMENT.........................................................................................20

   I.   The district court erred in denying intervention as of right. ........20

      A.   *Appellants' motion was timely.* .................................................21

      B.   *Appellants have legally protectable interests.*............................23

      C.   *This case will impair or impede Appellants' ability to protect their concrete interests.* ..........................................................29

      D.   *Federal Defendants do not adequately represent Appellants' protectable interests.* ...............................................................30

II. The district court erred in denying permissive intervention. ....... 44

    A.   *The district court erred in denying intervention based on the allegedly adequate representation of Appellants' interests by the Federal Defendants.* .................................................................. 46

    B.   *The district court erroneously construed the "record rule" in holding that Appellants will not significantly contribute to full development of the factual issues.* ........................................... 49

CONCLUSION ......................................................................... 53

CERTIFICATE OF SERVICE.................................................... 55

CERTIFICATE OF COMPLIANCE .......................................... 56

# TABLE OF AUTHORITIES

**Cases**

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014).......................... *passim*

*Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984)............................35, 42, 43

*Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160 (D.D.C. 2017)................52

*Cibolo Waste, Inc. v. San Antonio*, 718 F.3d 469 (5th Cir. 2013) ...........40

*Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015).....................................40

*Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104 (1st Cir. 1999)........................................................................35

*Davis Mountains Trans-Pecos Heritage Ass'n v. FAA*, 116 F. App'x 3 (5th Cir. 2004).........................................................................................51

*DeOtte v. Nevada*, 20 F.4th 1055 (5th Cir. 2021) ...................................23

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) (en banc)...2, 19

*Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989).....................................51

*In re Abbott*, 956 F.3d 696 (5th Cir. 2020)..............................................52

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008)...........19, 52

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185 (5th Cir. 1989) ........................................................31, 44, 45

*League of Women Voters of Michigan v. Johnson*, 902 F.3d 572 (6th Cir. 2018).....................................................................................................48

*Louisiana v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872 (5th Cir. 2023) ..............................................................................................40

*Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55 (5th Cir. 1977)..20

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ..................50

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984) ................................................................45, 48

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ........................*passim*

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) ..............21, 44

*Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021) ..........................................50

*Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2024 WL 1021068 (S.D. Tex. Mar. 8, 2024) ........................................................40

*Texas v. United States*, 40 F.4th 205 (5th Cir. 2022) ..............................50

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ....................*passim*

*Uniloc 2017 LLC v. AT&T Mobility LLC*, No. 2:18-CV-00514-JRG, 2019 WL 1773117 (E.D. Tex. Apr. 23, 2019) ..........................................31, 35

*United States v. Columbia Pictures Indus., Inc.*, 88 F.R.D. 186 (S.D.N.Y. 1980) ............................................................................................45

*United States v. Tex. E. Transmission Corp.*, 923 F.2d 410 (5th Cir. 1991) ............................................................................................48

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562 (5th Cir. 2016) ................................................................20, 23

*Zerezghi v. USCIS*, 955 F.3d 802 (9th Cir. 2020) ....................................25

**Statutory Provisions**

28 U.S.C. § 1291 ................................................................................2

5 U.S.C. § 705 ..............................................................................4, 13

8 U.S.C. § 1154(a)(1)(A)(i) ................................................................24

8 U.S.C. § 1182(a)(6)(B) ....................................................................11

8 U.S.C. § 1182(a)(9)(A) ....................................................................11

8 U.S.C. § 1182(a)(9)(B)(i)(I)-(II) ................................................ 11

8 U.S.C. § 1255(a) ................................................................... 10

**Other Authorities**

33 Wright & Miller, *Federal Practice and Procedure* § 8304 (2d ed.) .... 51

7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1913 (3d ed. 2024) ............................................. 45

7C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1909 (3d ed. 2007) .................................................................... 35

Dep't of Homeland Security, Fact Sheet: DHS Announces New Process to Promote the Unity and Stability of Families (June 17, 2024), https://www.dhs.gov/news/2024/06/17/fact-sheet-dhs-announces-new-process-promote-unity-and-stability-families ......................................... 4

Fact Sheet: President Biden Announces New Actions to Keep Families Together, June 18, 2024, https://www.whitehouse.gov/briefing-room/statements-releases/2024/06/18/fact-sheet-president-biden-announces-new-actions-to-keep-families-together ............................... 4

Implementation of Keeping Families Together ("KFT FRN"), 89 Fed. Reg. 67459 (Aug. 20, 2024) ........................................................... *passim*

**Regulations**

8 C.F.R. § 274a.12(c)(11) ................................................. 12, 27

**Rules**

Federal Rule of Civil Procedure 24 .................................. *passim*

# INTRODUCTION

This appeal presents the narrow issue of whether the district court erred, first, in denying the motion to intervene as of right filed by Appellants—would-be beneficiaries of the process Texas challenges in its suit filed two weeks ago today—based solely on the fact the federal government defendants have "the same objective" as Appellants (the successful defense of the process at issue); and, second and in the alternative, in denying the motion to intervene permissively, on the same ground plus a misconception of the scope of the "record rule" applicable in Administrative Procedure Act ("APA") cases. The district court's decision is contrary to this Court's precedent and, if not reversed, would prevent Appellants from developing the factual record in a case challenging a federal process that would fundamentally better their lives and strengthen American families. There is simply no reasonable basis to exclude Appellants from the ongoing litigation, and doing so would only undermine its legitimacy, regardless of outcome. Appellants respectfully request that this Court expeditiously reverse the district court, with the mandate issuing forthwith.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because it is an appeal of a final order denying Appellants' motion for intervention. *See Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc).

Appellants timely filed their notice of appeal within sixty days of the district court's order of September 3, 2024, in a case where a federal agency is a party.

**STATEMENT OF ISSUE PRESENTED**

Whether the district court erred in denying Appellants' timely motion to intervene where Appellants have a unique protectable interest—obtaining parole under the challenged Keeping Families Together parole process, which allows eligible noncitizen spouses and stepchildren of U.S. citizens to request work authorization and to remain with their families in the United States—when it held that the Federal Defendants adequately represent Appellants' interests.

**STATEMENT OF THE CASE**

On June 17, 2024, the Biden administration announced Keeping Families Together ("KFT"), a new parole process that "will help certain noncitizen spouses and children apply for lawful permanent residence—status that they are already eligible for—without leaving the country."[1] On average, the spouses of U.S. citizens eligible for KFT have been in the United States for approximately twenty-three years.[2] Two and a half months after KFT was announced, and a week after the Department of Homeland Security ("DHS") began accepting applications, Texas and fifteen other states sued to challenge KFT's lawfulness and requested a temporary restraining order, a preliminary injunction, and a stay of agency action under 5 U.S.C. § 705 to block KFT's further

---

[1] Fact Sheet: President Biden Announces New Actions to Keep Families Together, June 18, 2024, https://www.whitehouse.gov/briefing-room/statements-releases/2024/06/18/fact-sheet-president-biden-announces-new-actions-to-keep-families-together/.

[2] Dep't of Homeland Security, Fact Sheet: DHS Announces New Process to Promote the Unity and Stability of Families (June 17, 2024), https://www.dhs.gov/news/2024/06/17/fact-sheet-dhs-announces-new-process-promote-unity-and-stability-families.

implementation.[3] The district court functionally granted Texas's motion one business day later, albeit in a form not requested, imposing a fourteen-day "administrative stay" of Keeping Families Together. ROA.527-535. In the same order, the district court gave notice that it was *sua sponte* converting Texas's motion for preliminary relief into one for summary judgment; authorized a short period of expedited discovery; and set a summary judgment briefing schedule that would conclude in mid-October, with a date for argument on the dispositive motions and/or a bench trial, whichever was necessary, to be set sometime thereafter. ROA.532-535. The district court expressly contemplated extending its "stay" until final judgment. ROA.532.

Before the district court ordered the administrative stay, Oscar Silva Perez, Natalie Taylor, Salvador Doe, Justin Doe, Carmen M. Miranda Zayas, Ricardo Ocampo Hernandez, Jessika Ocampo Hernandez, Foday Turay, Jaxhiel Turay, Genaro Vicencio Palomino, Cindy Siqueiros Maduena, and the Coalition for Humane Immigrant Rights ("CHIRLA") ("Appellants") sought to intervene in the litigation as

---

[3] Sixteen states are listed as plaintiffs in the Complaint, but they have since stipulated that only Texas will seek to prove standing or irreparable injury in this litigation. ROA.555-556.

beneficiaries of Keeping Families Together. ROA.253. If Texas succeeds in its lawsuit to terminate KFT, Appellants will lose their access to its benefits, including family unity, maintaining safety and stability in the United States, the ability to request employment authorization, and freedom from fear of removal and family separation. Following an expedited briefing schedule that required Texas to respond to the intervention motion after four business days and Appellants to reply after zero business days, on Labor Day, the district court denied Appellants' motion for intervention both as of right and permissively on the same ground: that Federal Defendants adequately represent Appellants' interests. ROA.694-702. Appellants noticed their appeal the same day and moved to expedite the appeal, which this Court granted. ROA.703.

The district court erred. As this Court has held repeatedly, the burden of proving inadequate representation is "minimal," *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994), and Appellants have more than met it. If any presumption of adequate representation does exist, Appellants have sufficiently shown "adversity of interest, collusion, or nonfeasance on the part of the existing party" to overcome it. *Texas v.*

*United States*, 805 F.3d 653, 661-62 (5th Cir. 2015) (citation omitted). Appellants' specific and personal interests in keeping their families together, obtaining work authorization, and being free of the fear of removal indisputably diverge from Federal Defendants' broader, institutional interests in advancing "foreign policy objectives" and "furthering national security, public safety, and border security objectives." Implementation of Keeping Families Together ("KFT FRN"), 89 Fed. Reg. 67459, 67465 (Aug. 20, 2024). Appellants have also identified multiple issues, including the question of Appellees' standing and the balance of equities, on which they will make "real and legitimate additional or contrary arguments" to those made by Federal Defendants. *Texas*, 805 F.3d at 662. This suffices to support a finding that "the representation of [Appellants'] interest *may* be inadequate" and that intervention is warranted. *Id.* at 661 (cleaned up) (emphasis added). The district court's decision is an outlier, deviating from this Court's precedent strongly favoring intervention in this context, as well as from multiple other cases from this Circuit in which district courts granted

intervention to program beneficiaries under materially indistinguishable circumstances.[4]

The day after denying Appellants' intervention motion, without the benefit of oral argument or a status conference with the parties, the district court *sua sponte* accelerated its already expedited schedule and set the case for a hearing on dispositive motions for permanent relief and a bench trial, if necessary, on September 18. ROA.732-738. Given that Appellants moved timely to intervene and seek to protect numerous concrete, personalized, and legally protectable interests that the existing parties do not adequately represent, it is imperative that Appellants be permitted to intervene to defend their interests as soon as possible. At stake for Appellants is family unity, freedom from perpetual uncertainty and the fear of removal, and the opportunity to seek lawful permanent resident status in the United States without enduring prolonged

---

[4] *See, e.g.*, Texas v. United States, No. 6:23-CV-00007, 2023 WL 3025080 (S.D. Tex. Apr. 19, 2023) (challenging humanitarian parole processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV Parole")); Texas v. Biden, No. 3:22-cv-00780-M, 2022 WL 22858891 (N.D. Tex. May 26, 2022 (challenging a humanitarian parole process for Central American Minors); Texas v. United States, No. 6:21-cv-00003, 2021 WL 411441, at *4 (S.D. Tex. Feb. 6, 2021) (challenging the Biden Administration's 100-day deportation moratorium).

separation from their spouses and children for an unknowable period that could last for weeks, months, or even years. *See, e.g.*, ROA.329 ("[KFT] gives me that satisfaction of knowing I will be able to put my kids to bed the next day, and of not worrying about whether my wife will have to pick up the pieces if I am stuck in another country for who knows how long.").

This Court has held that intervention should be permitted "where no one would be hurt and greater justice could be attained." *Sierra Club*, 18 F.3d at 1205 (citation omitted). That is precisely the case here. The district court erred in denying intervention and this Court should expeditiously reverse and remand, with the mandate issuing forthwith.

## BACKGROUND

### I.  Keeping Families Together Parole Process

Under current federal law, noncitizen spouses of U.S. citizens are eligible for a green card as an "immediate relative" of a citizen. However, individuals who entered "without inspection" (e.g., if they crossed the border between ports of entry or otherwise were not authorized to enter) cannot apply for a green card from within the United States—a process called "adjustment of status"—until they have met the independent

requirement of being "inspected and admitted *or* paroled" into the United States. 8 U.S.C. § 1255(a) (emphasis added). For example, many eligible individuals who came to the United States to seek safety from persecution or opportunities unavailable in their country of birth. Irrespective of how and when they arrived in this country, all these individuals found that they wanted to commit to and build a life and family here with a U.S. citizen, illustrated by the experiences of Proposed Intervenors-Appellants. *See generally* ROA.278-372 (describing the common thread of individual Appellants' and CHIRLA's members' desires to build a life for themselves and their families in the United States).

Before the implementation of Keeping Families Together, for these noncitizen spouses who entered without inspection, the only option generally available for them to meet the independent requirement of being inspected and admitted was to engage in a process called "consular processing," which requires the noncitizen to leave the United States, travel to a consulate abroad, obtain an immigrant visa, and then return home to the United States for inspection and admission. KFT FRN, 89

Fed. Reg. at 67460.[5] However, this process is complex and arduous. Not only is the grant of the immigrant visa not guaranteed, but even if it is granted, the process of waiting for the visa requires weeks, months, or even years of waiting abroad for consular processing. *Id*.

In addition, noncitizens who depart the United States to consular process will often trigger years-long bars on reentry. *See*, *e.g.*, 8 U.S.C. § 1182(a)(6)(B) (*in absentia* removal order bar), (a)(9)(A) (prior orders of removal bar), (a)(9)(B)(i)(I)-(II) (unlawful presence bars). Although certain noncitizen spouses may apply for a provisional waiver of the unlawful presence bars, eligibility for a waiver is limited and approval is not guaranteed; worse, the processing backlog for provisional waiver applications currently exceeds three and a half years. Even for those who receive the provisional waiver, they are still required to leave the country for an indefinite, and often prolonged, period to await completion of

---

[5] Importantly, as Federal Defendants point out, "any noncitizen applicant for admission physically present in the United States can apply for parole in place, with or without the KFT process." ROA.681. KFT parole does not make parole newly available to noncitizens but simply creates a new process for submitting requests and contains agency guidance to enhance consistency in adjudications. ROA.681. Indeed, noncitizens in these circumstances have requested parole into the United States through already-established parole-in-place processes preceding KFT.

consular processing. KFT FRN, 89 Fed. Reg. at 67460 n.11. This uncertain period of waiting abroad leads to additional stress and hardships caused by family separation and, in some cases, the inability for a noncitizen spouse to work to support their family in the United States.

Thus, Federal Defendants announced Keeping Families Together on June 17, 2024, and subsequently published the Federal Register Notice on August 20, 2024, allowing certain spouses and stepchildren of U.S. citizens—who must qualify and meet certain requirements—to apply to be considered on a case-by-case basis for parole for a period of up to three years. *See* KFT FRN, 89 Fed. Reg. at 67473. If granted parole, the noncitizen will be considered to have been "inspected and . . . paroled" and will not be required to leave the United States for consular processing. Under longstanding regulations not at issue in this litigation, parolees are eligible to apply for employment authorization via separate application and agency action. 8 C.F.R. § 274a.12(c)(11). U.S. Citizenship and Immigration Services ("USCIS") began accepting applications for KFT, via Form I-131F, on August 19, 2024.

KFT offers stability, security, and family unity for mixed-status families who have been living in fear of separation for years. ROA.258-262.

## II. Procedural History

On August 23, 2024, Texas and fifteen other states ("Appellees") filed a lawsuit challenging KFT, ROA.27-88, and on the same day moved for a temporary restraining order, preliminary injunction, and a stay of agency action under the Administrative Procedure Act, 5 U.S.C. § 705, ROA.96-194. Following subsequent motions filed by Appellants and Federal Defendants in the past two weeks, including the Motion to Intervene at issue in this appeal, the case is now set for a summary judgment hearing and, if necessary, a bench trial on the merits, on September 18, 2024, less than one month after Appellees filed their complaint.

Seeking to protect their unique and distinct interests in KFT as direct applicants and beneficiaries of the KFT Parole Process, Appellants filed the motion to intervene at issue in this appeal on August 26, 2024,

the first business day after Appellees filed suit.[6] ROA.253-400. A few hours after Appellants filed their motion to intervene, the district court entered *sua sponte* an "administrative stay" of KFT, ROA.527-535, enjoining the federal government from granting parole through KFT for an initial fourteen days, with the possibility of an extension for "good cause" or on consent of the parties. ROA.531-532.

In its order, the district court advised that it would consolidate Appellees' motion for preliminary relief with summary judgment briefing and set an extremely expedited schedule whereby discovery would close by September 16 and the final summary judgment brief would be due on October 10, 2024. ROA.533-535. A hearing, and if necessary a bench trial, would be set "as soon as possible after completion of that briefing." ROA.535.

After expedited briefing that included Appellants filing their reply brief on Labor Day, the district court denied Appellants' motion to intervene on September 3, 2024, holding that Appellants were not entitled to intervene as of right because their interests are adequately

---

[6] Appellees opposed the intervention. Federal Defendants took no position on the motion. ROA.277.

represented by the Federal Defendants, and denying permissive intervention for the same reason. ROA.694-702. Appellants filed their notice of appeal the same day. ROA.703-705. Also on that same day, Federal Defendants filed a motion to vacate the administrative stay, pointing out various procedural and substantive errors in the decision. *See* ROA.633-693. The following day, September 4, Appellants timely filed an amicus brief in support of vacating the administrative stay, focusing on issues distinct from the federal government and unique to Proposed Intervenor-Appellants. ROA.710-731.

Hours after Appellants filed their amicus brief, the district court denied Federal Defendants' motion to vacate but credited the "rigor" of Federal Defendants' briefing in adopting (again *sua sponte*, without the benefit of oral argument or a status conference with the parties) "an even more accelerated schedule than previously anticipated." ROA.737. The court shortened the discovery deadline to September 11 and ordered omnibus dispositive motions due two days later, on September 13; responses to such motions due three days after that on September 16; and arguments in reply to be raised orally at the "consolidated hearing on the omnibus motions and, if necessary, bench trial to resolve factual

issues [that] is scheduled for September 18, 2024 at 9:00 a.m. in Tyler, Texas." ROA.737-738. Without explanation, the district extended its "administrative stay" another fourteen days, thereby enjoining KFT grants at least through September 23, 2024. ROA.737.

## SUMMARY OF THE ARGUMENT

The district court erred in denying Appellants' motion to intervene. Appellants have concrete, protectable interests in the outcome of this litigation that enable them and, indeed, require them to make real and legitimate additional or contrary arguments to those advanced by the parties in the case, and which also enable them to contribute significantly to the development of underlying factual issues. Accordingly, intervention as of right and as a matter of permission is warranted, and the district court erred in holding that Federal Defendants adequately represent Appellants' interests in this litigation.

The outcome of this case will affect whether Appellants and thousands of other families like theirs will be able to benefit from Keeping Families Together, whose process allowing for parole to be granted on a case-by-case basis directly affects their lives, livelihoods, and families. Appellants and others like them are mixed-status couples

and families with one noncitizen spouse who is eligible for lawful permanent residence, but generally only if the noncitizen spouse leaves the country to "consular process"—a process of variable duration that could require the noncitizen spouse to remain outside the country for weeks, months, or even years. Keeping Families Together implements uniform guidance for USCIS that allows Appellants to apply for parole on a case-by-case basis, which would enable them to pursue lawful permanent residence, as well as employment authorization, while maintaining family unity in the United States. If Texas prevails in its lawsuit and secures an injunction blocking any further implementation of KFT, Appellants will lose their access to KFT's benefits, including family unity, employment authorization, freedom from fear of removal, and preservation of safety and stability in the United States for themselves and their families.

Appellants' narrow, personal, and deeply held interests in keeping their families together, obtaining work authorization, and being free from the fear of removal and family separation diverge from Federal Defendants' broader, institutional interests in increasing efficiency in the immigration system, advancing foreign policy objectives, and furthering

17

various national security and public safety objectives. Although Appellants and Federal Defendants both seek to defend Keeping Families Together to allow its continued operation, this divergence of interests prompts Appellants to advance positions contrary to Federal Defendants, and to offer additional and contrary arguments and evidence on issues such as standing, the balance of equities, and the appropriate scope of relief. Appellants are, *inter alia*, uniquely situated to provide evidence that Federal Defendants cannot, regarding both harms that an injunction of Keeping Families Together will inflict on Appellants, families like theirs, and the public interest, as well as how those harms eclipse Texas's attenuated and speculative claims to harm. Appellants have therefore more than met their burden of showing that Federal Defendants' representation of their interests may be inadequate and that intervention is permissible, if not warranted.

If Appellants are allowed to intervene, "no one would be hurt and greater justice could be attained." *Sierra Club*, 18 F.3d at 1205 (citation omitted). For the reasons outlined in this brief, this Court should reverse the district court's order denying Appellants' motion for limited

intervention and, given the extremely expedited schedule currently in place in the district court, issue the mandate forthwith.

## STANDARD OF REVIEW

A ruling denying intervention as of right under Rule 24 is reviewed de novo. *Edwards*, 78 F.3d at 955. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed. Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Texas*, 805 F.3d at 656-57 (cleaned up).

The denial of permissive intervention is reviewed for "clear abuse of discretion." *Edwards*, 78 F.3d at 992. "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008). Failing to properly weigh all relevant factors or placing "inordinate weight" may constitute an abuse of discretion. *Id.* at 314-15 (court erred by applying a stricter *forum non conveniens* dismissal standard and thus giving inordinate weight to the plaintiffs' choice of venue).

For purposes of deciding a motion to intervene, the court must accept the movant's factual allegations as true. *Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n.2 (5th Cir. 1977).

## ARGUMENT

### I.    The district court erred in denying intervention as of right.

The district court erroneously denied Appellants' motion for intervention as of right, erroneously finding that Appellants' interests are adequately represented by Federal Defendants. That ruling contravened this Court's precedent.

Appellants demonstrated that they were entitled to intervene as of right by showing that: (1) their application to intervene was timely; (2) they have an interest related to the policy that is the subject of the action; (3) the disposition of the action may "as a practical matter impair or impede [their] ability to protect [that] interest"; and (4) their interest is inadequately represented by existing parties to the suit. Fed. R. Civ. P. 24(a); *see Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016).

In its opposition to Appellants' motion to intervene at the district court, Texas contested only the last requirement, regarding adequate

representation. *See* ROA.594-598. When considering Appellants' motion to intervene, the district court held that the motion was timely, that CHIRLA and the noncitizen individual Appellants have the requisite legal interests, and that those interests are "sufficiently implicated" by the litigation but denied the motion solely on the ground that the Federal Defendants adequately represent Appellants' interests. ROA.695-700.

## A.    *Appellants' motion was timely.*

When considering whether a motion to intervene is timely, courts consider four factors: (1) the length of time during which the would-be intervenor actually knew or should have known of his interest in the case before he petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties may suffer as a result of the failure of the proposed intervenor to apply sooner; (3) the extent of the prejudice that the proposed intervenor may suffer if the petition is denied; and (4) any unusual circumstances militating for or against the determination of whether the application is timely. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977).

The district court correctly found that Appellants satisfied these timeliness factors—an issue no party contested. *See* ROA.695, ROA.701

(stating that Appellants' motion to intervene was timely both as of right and permissively); *see also* ROA.599 ("Plaintiffs do not contest that the Proposed Intervenors have filed their application early in the proceedings . . . ."). Appellants filed their motion for intervention one business day after Appellees filed their complaint, before the district court entered any order pertaining to the case. ROA.264. And thus, no party could be prejudiced by the motion's timing. Because Appellants sought intervention at the outset of the litigation, there has been no delay in the litigation. ROA.264; *see also Texas*, 2021 WL 411441, at *3 ("Given that the matter is in its infancy, the Proposed Intervenors' request will not impose timing issues, difficulties, or constraints . . . ."). In contrast, Appellants, as intended beneficiaries of KFT Parole, would be severely prejudiced if not permitted to intervene in this litigation, which seeks to deny them the opportunity to seek legal status for themselves and their spouses without risking prolonged family separation. *See generally* ROA.278-362. Similarly, intended beneficiaries of KFT Parole are among CHIRLA's approximately 50,000 active members, and their ability to attain and maintain durable family unity will be determined by this litigation. *See* ROA.363-372. As is now evident from the district court's

accelerated schedule—which enables the district court to render final judgment as early as September 18 (seven business days from today), ROA.738—if not permitted to intervene, Appellants would lose the opportunity to defend their concrete, personalized, and distinct interests in KFT Parole, which would significantly prejudice them.

Appellants' motion to intervene was timely.

### B.   *Appellants have legally protectable interests.*

Appellants have deeply held interests in the challenged KFT parole process, as required by Rule 24, *see Texas*, 805 F.3d at 660, and as the district court correctly held as to the noncitizen Appellants and CHIRLA. For intervention as of right, proposed intervenors must show "an interest that is concrete, personalized, and legally protectable." *Id.* at 658. This interest need not be one that would give rise to standing: "[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Wal-Mart Stores*, 834 F.3d at 566; *see also DeOtte v. Nevada*, 20 F.4th 1055, 1068 (5th Cir. 2021). It is sufficient if "the intervenor has a stake in the matter that

goes beyond a generalized preference that the case come out a certain way." *Texas*, 805 F.3d at 657.

The district court erred in distinguishing between noncitizen parole applicants and U.S.-citizen spouses of such applicants when it held that only the former have interests that warrant intervention in this case. All Appellants unquestionably possess far more than a "generalized preference" in the outcome of this case, as they stand to benefit immensely from KFT Parole. Noncitizen Appellants have already applied for KFT parole and, if granted, would be eligible to request work authorization and, eventually, adjustment of status. This would allow *all* Appellants, including the U.S. citizen-spouse Appellants, to avoid the hardships and risks that accompany consular processing—including the hardship of family separation, and the risk that such separation could last for weeks, months, or even years.[7] *See, e.g.*, ROA.319-320, ROA.328,

---

[7] Indeed, several Appellants have filed I-130 family-based green card petitions for their non-citizen spouses. *See* ROA.361, ROA.311, ROA.318. For I-130 petitions, the applicant is the U.S. citizen relative—in this case, the spouse—of the noncitizen ultimately seeking to adjust status to lawful permanent residence. 8 U.S.C. § 1154(a)(1)(A)(i) (explaining petition process). Here, the U.S. citizen-spouse Appellants who have filed I-130 applications have a strong interest in the continuation of KFT parole, because it may be their noncitizen spouse's only viable option for

ROA.350. Because of the potential for KFT to profoundly benefit their families, all Appellants have a direct and concrete interest in this case.

However, the Court need not reach the issue of whether U.S. citizen-spouse Appellants have legally protectable interests in the litigation because it is undisputed that noncitizen-spouse Appellants and CHIRLA do. As an initial matter, the Fifth Circuit has held that individuals who are "intended beneficiaries" of a program, like noncitizen Appellants and some of CHIRLA's members, necessarily have an interest sufficient to support intervention. *Texas*, 805 F.3d at 660. *Texas* held that immigrants eligible for a program that would have protected them from deportation and granted other benefits were "intended beneficiaries" of that program and therefore entitled to intervene, as their interest was "not a mere generalized interest in the implementation of" the program.

---

satisfying the "inspected and admitted or paroled" requirement for a green card and avoiding the risk of prolonged family separation that accompanies consular processing. *See Zerezghi v. USCIS*, 955 F.3d 802, 808 (9th Cir. 2020) (recognizing "[i]mmediate relative status for [a noncitizen] spouse is a right to which citizen applicants are entitled[.]"). Indeed, the green card process—which requires the U.S. citizen spouse to submit an I-130 petition and the noncitizen spouse to submit an I-485 application for adjustment of status—reflects the interest of *both* spouses in seeking the benefit of lawful permanent residence for the noncitizen spouse and confirms that *both* spouses are intended beneficiaries of the family visa process Congress created.

*Id.* at 660-61. The intervenors' interest in applying to receive the program's benefits was sufficient, even if their applications could be denied. *Id.*

As the intended beneficiaries of KFT parole, noncitizen Appellants and CHIRLA's members clear the Rule 24 threshold on this basis alone. These individuals "have an interest in receiving [parole-in-place] under [KFT] so that they may legally remain in the United States." *Id.* at 660. "Although [such individuals] do not have a legal entitlement to [KFT parole], their interest in avoiding deportation is a concrete, personalized interest that is legally protected by the Due Process Clause of the Fifth Amendment." *Id.*; *see also* ROA.303 (explaining how if deported to Mexico, Salvador would likely be subjected to the severe threat of crime and targeted as an LGBTQ+ person); ROA.343 (detailing the harm to Foday's family if, as the primary breadwinner, he were deported); ROA.319-320 (describing the danger posed to Carmen's husband Francisco if he were to return to Mexico, where his family members have been murdered or kidnapped). Non-citizen Appellants and CHIRLA's members also "have an interest in the employment opportunities that would be available to them if they are granted [parole] and employment

authorization," *Texas*, 805 F.3d at 660, which they would be eligible to request upon receiving parole. *See* 8 C.F.R. § 274a.12(c)(11); *see also* ROA.303 ("I have always been working while here and contributing to the economy but never had the security that comes with work authorization."); ROA.281-287 (describing the opportunities that a work permit would give Oscar Silva Perez and his wife); ROA.321 ("[KFT parole] would allow Francisco to obtain work authorization and pursue his dreams of owning his own landscaping company."). These interests are legally protectable and support intervention.[8]

---

[8] If their spouses are granted KFT parole, U.S. citizen Appellants also stand to benefit in tangible, life-changing ways that support intervention. The economic benefits conferred by KFT extend beyond the parole recipient, as Appellants demonstrate. A grant of KFT parole, for example, would mean Oscar would be eligible for employment authorization for the first time, which would allow him to seek a job after finishing graduate school and relieve the burden on his wife, who is currently their family's sole breadwinner and who has delayed her dream of pursuing a graduate degree in science. *See* ROA.280-281, ROA.291. In addition, KFT parole recipients' lawful immigration status and ability to live free from fear of removal would have concrete and meaningful benefits for their U.S. citizen spouses. For example, Carmen—a little person with Multiple Sclerosis—depends on her spouse, Francisco, for help with daily tasks. His protection from deportation would allow her to feel "more stable and secure" knowing she will not have to be without the person who has been her primary source of physical, financial, and emotional support for over three decades. ROA.321.

Moreover, many Appellants are parents, who "have an interest in directing the upbringing of their United States-citizen children. This interest, which would be adversely affected if the [non-citizen Appellants] are deported, is a legally protected liberty interest under the Due Process Clause." *Texas*, 805 F.3d at 660. Foday Turay, Genaro Vicencio, and Ricardo Ocampo are all fathers to U.S. citizen children under the age of ten from whom they would be separated—potentially for an extended period of time, if not indefinitely—if they were deported or required to consular process. *See, e.g.*, ROA.356 (describing how "emotionally taxing" it would be for "[Genaro's] young son to be without his father for an undetermined amount of time."). Without their noncitizen spouses, the U.S. citizen parents would suffer extraordinary hardship in the caretaking of their children. *See, e.g.*, ROA.335 (detailing how Jessika Ocampo and her children "would not have the support that we need here" if Rico had to leave the country); ROA.350 (describing how without Foday's support, Jaxhiel Turay would "struggle to continue to pay for childcare, food, and other needs" for their son and "would need to raise [their] son on [her] own, which would be very difficult given [her] full-time job and other responsibilities" such as providing daily care for her

mother). Both parents' interest in the upbringing of their children would be impacted if one were not able to remain in the United States for an extended period of time to continue raising their children as they have been for years.

For these reasons, Appellants have legally protected interests in this case.

## C. *This case will impair or impede Appellants' ability to protect their concrete interests.*

A proposed intervenor must "demonstrate that disposition of th[e] action may, as a practical matter, impair or impede [their] ability to protect th[eir] interest." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citation omitted). The impairment must be "practical," not merely "theoretical." *Id.* For example, in *Brumfield*, the Fifth Circuit held that parents of children receiving school vouchers through a program challenged in litigation could intervene under Rule 24 because the lawsuit's outcome might have put some parents at risk of losing vouchers or their full range of school choices. *Id.* at 344, 346.

As the district court correctly held, Appellants' ability to protect their interests in KFT will be impaired by the outcome of this case. All noncitizen Appellants, and some of CHIRLA's members, have submitted

applications for KFT Parole. *See* ROA.278-372. Due to the district court's administrative stay, adjudication of these applications is currently paused. If Texas prevails, the opportunity for the applicants, their U.S. citizen spouses, and their families to benefit from KFT Parole will be foreclosed altogether. *See* ROA.278-362. CHIRLA, too, surpasses the "minimal" burden of showing its ability to protect its members' interests is impaired by this litigation, as some of its members have submitted KFT Parole applications, and others intend to apply but have not done so yet. *See* ROA.363-372; *Brumfield*, 749 F.3d at 344 n.2. Because Appellants, including CHIRLA's members, stand to lose access to a benefit for which they are the intended beneficiaries, the impairment of their ability to protect their interests is far from "theoretical." *Brumfield*, 749 F.3d at 344. Thus, the outcome of this case has impeded and will continue to impede their ability to protect their interests.

## D. *Federal Defendants do not adequately represent Appellants' protectable interests.*

The district court erred in holding that Federal Defendants adequately represent Appellants' interests in this litigation. The burden of proving inadequate representation is "minimal." *Sierra Club*, 18 F.3d at 1207. "[T]he Rule is satisfied if the applicant shows that the

representation of [their] interest *may* be inadequate." *Texas*, 805 F.3d at 661 (cleaned up) (emphasis added). While the "proposed intervenor must put forth 'something more than speculation as to the purported inadequacy' . . . it remains 'a relatively minimal showing.'" *Texas*, 2023 WL 3025080, at *3 (quoting *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) [hereinafter *LULAC*]); *accord Uniloc 2017 LLC v. AT&T Mobility LLC*, No. 2:18-CV-00514-JRG, 2019 WL 1773117, at *5 (E.D. Tex. Apr. 23, 2019) (recognizing the "minimal" burden and "liberal application of Rule 24").

The district court committed two distinct legal errors. First, the district court erroneously held that a presumption of adequate representation applies because "the would-be intervenor has the same ultimate objective as a party to the lawsuit."[9] ROA.697 (quoting *Texas*, 805 F.3d at 661). The case law supports no such presumption here. The legal question for adequacy of representation does not boil down merely

_____

[9] A presumption of adequate representation also applies where the existing party "is a governmental body or officer charged by law with representing the interests of the [intervenor]. *Texas*, 805 F.3d at 661. The district court correctly did not rely on this presumption when considering whether Appellants' interests are adequately represented in the litigation.

to whether Appellants share the same goal of keeping the Keeping Families Together process in place. But, even if it did and the "same ultimate objective" presumption applies, a proposed intervenor can rebut that presumption by showing, *inter alia*, "adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Texas*, 805 F.3d at 661-62. Where there is a "lack of unity in all objectives," it is sufficient for proposed intervenors to show that they plan to advance "real and legitimate additional or contrary arguments." *Id.* at 662. Appellants have met that showing here, and the district court erred in holding otherwise.

Appellants do not have the "same ultimate objective" as the federal government. The district court applied this presumption merely because both Appellants and Federal Defendants aim to "avoid[] or defeat[] plaintiffs' request for judicial relief that impedes the [KFT parole] rule's implementation." ROA.697. However, this Court in *Brumfield* rejected that kind of oversimplified analysis. 749 F.3d at 346 (granting intervention as of right to parents whose children's school vouchers risked being enjoined in a lawsuit between the United States and Louisiana). There, this Court found that the ultimate objective

presumption did not apply because "[a]lthough both [Louisiana] and the parents vigorously oppose dismantling the voucher program, *their interests may not align precisely.*" *Id.* at 345 (emphasis added). While the state had "many interests" in the case in addition to maintaining the voucher program, including "maintaining . . . its relationship with the federal government and with the courts," the parents' "only concern [was] keeping their vouchers." *Id.* at 346. It was enough that "the state ha[d] more extensive interests to balance than [did] the parents." *Id.*

As in *Brumfield*, here Federal Defendants have many more interests to balance than Appellants, including broad institutional ones like "promot[ing] accessibility and increas[ing] efficiency in the immigration system," KFT FRN, 88 Fed. Reg. at 67460, "advancing diplomatic relationships and key foreign policy objectives," *id.* at 67465, and "furthering national security, public safety, and border security objectives," *id.* Appellants' only concerns are keeping their families together in the United States and obtaining work authorization. ROA.266-268. Clearly, their interests "may not align precisely," *Brumfield,* 749 F.3d at 345, so all Appellants need demonstrate is that representation by Federal Defendants *may* be inadequate. As in

*Brumfield,* the "lack of unity in all objectives" is sufficient to meet that minimal burden. *Id.* at 346; *see also Sierra Club*, 18 F.3d at 1208 (holding that representation by the federal government did not adequately represent the interests of timber trade associations because the government "must represent the broad public interest, not just the economic concerns of the timber industry").

But even assuming *arguendo* that this presumption applies, the district court also committed legal error in holding that Appellants had not rebutted it. Indeed, both Texas and the court below mischaracterize the standard for rebutting this presumption. *See* Appellees' Resp. in Opp. to Appellants' Mot. to Expedite, ECF No. 48 at 10; ROA.697. While this Court has held that factors such as "adversity of interest, collusion, or nonfeasance on the part of the existing party" are *sufficient* to rebut the presumption of adequate representation, they are by no means the *only* ways to do so. *Texas*, 805 F.3d at 661-62. Instead, as this Court has noted, "[t]he wide variety of cases that come to the courts make it unlikely that there are three and only three circumstances that would make representation inadequate and suggest that adequacy of representation is a very complex variable." *Id.* at 662 n.5 (quoting 7C Charles Alan

Wright, et al., *Federal Practice and Procedure* § 1909 (3d ed. 2007); *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 111 (1st Cir. 1999) (explaining that the court's prior reference to "adversity of interest, collusion, or nonfeasance" was not intended to create an exclusive list); *accord Uniloc 2017 LLC*, 2019 WL 1773117, at *4 (citing *Texas*, 805 F.3d at 662 n.5 for non-exhaustive nature of "adversity of interest, collusion, or nonfeasance" list). For example, this Court has noted inadequate representation may be found, *inter alia*, in suits "in which it is clear that the applicant will make a more vigorous presentation of arguments than existing parties." *Bush v. Viterna*, 740 F.2d 350, 357 (5th Cir. 1984).

As mentioned above, Appellants have outlined at length how their narrow, personal, and deeply held interests in keeping their families together, obtaining work authorization, and being free of the fear of removal diverge from Federal Defendants' broader, institutional interests. *Supra* Section I.B.; ROA.258-262, ROA.269-272. And unlike Appellants, Federal Defendants are not concerned about the outcome of this litigation because it may jeopardize their own familial integrity, well-being, or their ability to earn a living. Without the chance to defend

their personal and community interests in this litigation, the voices and experiences of Appellants will be left out altogether.

Federal Defendants have also already taken a position that is "directly adverse to the [Appellants]." *Texas*, 805 F.3d at 663. In *Texas,* this Court held that the Government's position on standing that "the States may refuse to issue driver's licenses to deferred action recipients" was directly adverse to the proposed intervenors, who were eligible for deferred action and had an interest "in working and providing for their families, for which a driver's license is beneficial." *Id.* Here, the Federal Government has made the same kind of argument regarding standing: that the States may refuse to provide public higher education or other benefits to paroled noncitizens. ROA.655 ("[T]o the extent there are any costs for public higher education or other benefits provided to paroled noncitizens, those costs are attributable to the States' own choices concerning eligibility for in-state resident tuition or participation in certain benefit programs.").

This position is directly adverse to Appellants, who may be eligible for, and rely on, such education and other benefits. *See, e.g.*, ROA.281 (Appellant Oscar Silva Perez obtained his undergraduate degree from

University of North Texas, a public university in Texas, and is currently pursuing his master's there). As in *Texas*, the Federal Defendants' position on these issues is directly connected to its "institutional interest in shielding its actions from state intervention through the courts," *Texas,* 805 F.3d at 663, which is distinct from Appellants' interests in this litigation. The district court attempted to distinguish *Texas* from the instant case, specifically because Federal Defendants here have not "made a legal argument that conflicts with movants' interests, such as the driver's-license argument that animated the [*Texas*] decision." ROA.698. This is clearly untrue.

Appellants and Federal Defendants have other adverse interests as well. Both in the KFT FRN and their motion to vacate the district court's stay, Federal Defendants repeatedly emphasize that the federal government retains its right to take enforcement actions against noncitizens, "notwithstanding a noncitizen's intent to request parole in place, eligibility to request parole in place, filing of a request for parole in place, or grant of parole in place under this process." KFT FRN, 88 Fed. Reg. at 67465; *see also* ROA.648, ROA.653. This runs contrary to Appellants' interests in being protected against deportation and

remaining with their families in the United States, ROA.272, and could easily lead to differences in how Appellants and Federal Defendants advance arguments and evidence in this case.

Similarly, in their motion to vacate, Federal Defendants argue that if the district court were to issue any injunctive relief at all, it should be limited to the Plaintiff States, ROA.689, even though fifteen of the sixteen Plaintiff States have affirmatively disclaimed any intent to prove their standing or irreparable injury—meaning that, as a matter of law, they will not carry their burden of proof as to either issue. Proposing this kind of alternative relief would be directly contrary to the interests of Appellants who live in Texas, including Oscar Silva Perez and Natalie Taylor. ROA.280, ROA.290. Such "adversity of interest[s] and lack of unity in all objectives . . . overcome the presumption that Defendants adequately represent Proposed Intervenors' interests." ROA.271.

In any regard—and notwithstanding the frenetic pace of proceedings below—Appellants have already demonstrated numerous "real and legitimate additional or contrary arguments" to those made by Federal Defendants, which firmly rebut any presumption of adequate representation.

To begin, Appellants have a manifestly distinct theory of Texas's (lack of) standing from that which Federal Defendants propound. Texas frames its theory of injury as "increased incentive for [undocumented noncitizens] to remain in the United States," arguing that individuals "currently subject to [KFT] would be removable if [KFT] were vacated, providing incentives for some if not many to leave the United States, including Texas," so that their departure would reduce Texas's costs. ROA.154 (internal quotation marks and citation omitted). Federal Defendants argue at length that a possible termination of KFT won't result in a net decrease in presence of otherwise-eligible individuals, because ultimately, Federal Defendants have discretion as to whom to remove and when to remove them, and have no plans to remove individuals who are not priorities for enforcement. ROA.626-629, ROA.632-634. And in any regard, Federal Defendants argue, there are fatal issues of speculation and attenuation. ROA.654-656.

While Federal Defendants refute Texas's *conclusions* as to harm, Appellants contest the premise itself—even *if* Texas's alleged costs were cognizable, the number of self-deportations or removals is the wrong metric to measure irreparable harm. "To show irreparable harm, Texas's

preexisting irreparable costs must *increase* due to Keeping Families Together . . . ." ROA.721. Yet Texas does not allege that Keeping Families Together will increase these costs, as required to show injury.[10] Instead, Texas claims "that its *preexisting* costs will *decrease* if individuals eligible for the process become so discouraged in its absence that they decide to uproot their lives and extricate themselves from the country they have called home for an average of a quarter-century." ROA.718. Here, Appellants offer "real and legitimate additional or contrary arguments," *Texas*, 805 F.3d at 662, in a matter central to the viability of the case— standing. This alone is "sufficient to demonstrate that the representation *may* be inadequate," *id.*, and without regard to how this Court might rule on the ultimate standing question if presented with it later in the case.

---

[10] *E.g.*, *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015) ("Mississippi's alleged fiscal injury was purely speculative because there was no concrete evidence that Mississippi's costs had increased or will increase as a result of DACA."); *Louisiana v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 881 (5th Cir. 2023) (finding that standing through a strain on state resources "is necessarily contingent on a finding that the Final Rule will increase [the state's] enforcement costs."); *Cibolo Waste, Inc. v. San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013); *see also Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-CV-00007, 2024 WL 1021068, at *16 (S.D. Tex. Mar. 8, 2024) ("[W]hen deciding whether a state has been injured . . . the Fifth Circuit reviews whether the numbers of [noncitizens], and the associated amount expended because of them, increased relative to those same numbers prior to the implementation of the challenged program.").

Appellants also intend to offer additional evidence refuting standing that Federal Defendants are unlikely to introduce. Appellants stand prepared to submit various expert declarations refuting Texas's alleged harms and have reason to believe that this evidence will not be entered in the record otherwise. For example, in Texas's recent lawsuit against the parole processes for certain nationals of Cuba, Haiti, Nicaragua, and Venezuela—which Judge Tipton dismissed for lack of standing—the intervenor defendants (represented by many of the same undersigned counsel) introduced more than twenty fact and expert declarations on issues of standing, relief, and the historical use of the statutory parole authority. Intervenor Defendants' Opposition to Plaintiff States' Motion for Permanent Nationwide Injunction, *Texas v. United States*, No. 6:23-CV-00007 (S.D. Tex. June 20, 2023), ECF No. 175-52–175-76. None of these duplicated anything presented by the federal government. When Texas introduced declarations in that case— as they have done here—pertaining to alleged education, law enforcement, and healthcare costs, only intervenor defendants introduced expert declarations disputing Texas's claims. Not only would the declarations and evidence Appellants plan to submit here constitute

"real and legitimate additional or contrary arguments," *Texas*, 805 F. 3d at 662, but they also demonstrate an instance where Appellants "will make a more vigorous presentation of arguments than existing parties." *Viterna*, 740 F.2d at 357.

Appellants likewise offer "additional or contrary" and "more vigorous presentation of arguments" regarding both the balance of harms and public interest elements for injunctive relief. Federal Defendants offer a *single paragraph* of general harms to "core concerns of the executive branch" such as "public safety, obtaining international cooperation with migration and law enforcement efforts, managing its backlog and limited resources, and preserving family unity." ROA.688. Appellants, on the other hand, painstakingly detail the multitudinous ways that (a) harms to Appellants outweigh Texas's attenuated and speculative claims to harm, ROA.722-725, and (b) halting Keeping Families Together undermines the public interest, ROA.725-729; *see also* ROA.258-262. Likewise, here, Appellants raise arguments either that the federal government has *not* otherwise made; or offer detail, context, and experience that it is not *able* to make.

Furthermore, Appellants have been excluded from the ongoing discovery by the district court's orders. If the deadline to complete discovery is extended or discovery is otherwise open in the future, Appellants would take substantively different discovery from Federal Defendants. As discussed *supra,* Appellants have a distinct theory of standing from Federal Defendants, so they would propound additional discovery requests relevant to those arguments. This is a concrete way the divergent interests of Appellants and Federal Defendants would "impact[ ] the litigation." *Texas,* 805 F.3d at 663. Federal Defendants' institutional interests, moreover, mean that Appellants—who are *not* repeat players as to the State of Texas and who have no occasion to appear again before the district court—would be more aggressive in pursuing discovery, further demonstrating the value of their participation. *See Viterna*, 740 F.2d at 357.

For all these reasons, the district court erred in holding that Federal Defendants adequately protect Appellants' interests. Although Federal Defendants and Appellants share a high-level goal of defending Keeping Families Together, they do it for divergent reasons, with a host of divergent interests, arguments, and evidence. Appellants have more

than met their "minimal" burden that "representation *may* be inadequate." *Texas*, 805 F.3d at 661-62. This Court's precedents mandate reversal.

## II. The district court erred in denying permissive intervention.

The district court also erred when it denied Appellants permissive intervention under Rule 24(b), which it proceeded to do without identifying any prejudice to Texas or the Federal Defendants. In doing so, it recycled its erroneous analysis on the adequacy of the federal government's representation, and it incorrectly invoked the "record rule" to dismiss Appellants' potential evidentiary contributions. These errors warrant reversal.

On a timely motion, courts may permit a nonparty to intervene where the proposed intervenor has a "claim or defense that shares with the main action a common question of law or fact" and the intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(2)(3); *accord LULAC*, 884 F.2d at 189 n.2. "If this threshold requirement is met, then the district court must exercise its discretion in deciding whether intervention should be allowed." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977) (citations omitted).

But unlike intervention as of right, the "principal consideration" for *permissive* intervention is "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1913 (3d ed. 2024). In determining whether to permit intervention, courts may consider other factors, including adequate representation by other parties and whether the proposed intervenor will "significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (citation omitted); *accord LULAC*, 884 F.2d at 189. But those factors are neither exclusive nor necessarily dispositive in the permissive intervention context.[11]

In this case, the district court agreed that Appellants have an interest in the outcome of this litigation and share common questions of law or fact in the defense of KFT Parole. ROA.701. It also correctly did not hold that intervention would prejudice the existing parties.

---

[11] Some courts have suggested that inadequacy of representation is "not required at all for permissive intervention" or "clearly a minor factor at most," given its absence from Rule 24(b)'s textual framework. *See, e.g.*, *United States v. Columbia Pictures Indus., Inc.*, 88 F.R.D. 186, 189, n.3 (S.D.N.Y. 1980).

The district court erred, however, when it denied permissive intervention based again on the allegedly adequate representation by the Federal Defendants of Appellants' interests and when it misconstrued the "record rule" in APA cases. ROA.701-702.

A.   ***The district court erred in denying intervention based on the allegedly adequate representation of Appellants' interests by the Federal Defendants.***

The district court erred in holding that the Federal Defendants will adequately represent Appellants' interests in this case.

As a factual matter, that finding ignores that Appellants' ultimate objective is not simply the preservation of KFT Parole. For them, KFT Parole is a means to a different objective: to protect themselves and their families from undue separation and familial hardship. *See* ROA.278-372; *see also* ROA.335 ("What I want more than anything, if Rico is finally able to get status, is more stability for my kids, so that I can protect them more."); ROA.343 ("If our family was separated because I was deported or forced to leave the country to do consular processing . . . [my wife's] life and my son's life would be turned upside down."). Any generalized interest the current federal administration may have in preserving KFT Parole, even if it includes facilitating family unity, is only one interest among many other

institutional interests that the government has explicitly articulated as informing its defense of KFT Parole. KFT FRN, 88 Fed. Reg. at 67462; ROA.663-664, ROA.688-689.

Separately, the district court's analysis does not comport with this Court's decision in *Brumfield*, which explicitly recognized that the "ultimate objective" presumption could not be used to deny intervention when an individual has a concrete and focused interest. Here, as noted above, Appellants have a particularized interest in avoiding separation and raising their families. *Texas*, 805 F.3d at 660 (recognizing intervenors "had an interest in directing the upbringing of their United States-citizen children"); *see also Sierra Club,* 18 F.3d at 1207-08 ("[The] government must represent the broad public interest, not just the economic concerns of the timber industry.").

Furthermore, the district court erred in the permissive-intervention context by reflexively applying its "intervention-as-of-right" analysis. This misapplication overlooked the distinct standards for permissive intervention, particularly regarding the federal government's purported adequacy as a representative for Appellants. Permissive intervention is a different, independent legal basis for intervention. As such, the considerations there are not strictly limited to the factors imposed by Rule 24(a) on intervention as of right. *See,*

*e.g.*, *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 416 (5th Cir. 1991) (proper to consider whether intervenor had other mechanisms to protect its interests); *New Orleans Pub. Serv., Inc.*, 732 F.2d at 472 (other factors "include the nature and extent of intervenors interest and their standing to raise relevant legal issues") (cleaned up). While this Court has said lower courts may consider adequate representation as one factor, it has never suggested that a district court may rely solely on it to the exclusion of others that may inform the proper exercise of its discretion. *Id.* Indeed, other courts have recognized this principle. *See League of Women Voters of Michigan v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018) ("This question [adequate representation of intervenors' interest] is more pertinent to intervention of right.").

Here, the district court erred when it proceeded under the misconception that there are only three relevant factors for permissive intervention, much of which it borrowed from its earlier "as of right" analysis: "Under that prong [permissive intervention], the relevant factors to consider are whether the motion was timely, whether the proposed intervenors are adequately represented by other parties, and whether they are likely to contribute significantly to the development of the underlying factual issues." ROA.701. The district court failed to

consider two crucial factors in its permissive-intervention analysis: (1) the extent of the Appellants' interests and (2) whether they had alternative means of protecting those interests—interests that this litigation will undoubtedly affect. Instead, the court merely recycled its analysis for intervention as of right, giving it undue weight in the permissive-intervention context.

## B. *The district court erroneously construed the "record rule" in holding that Appellants will not significantly contribute to full development of the factual issues.*

The district court also erred when it held that Appellants' intervention "would not significantly amplify development" of facts relating to, among other things, the balance of equities and the public interest. ROA.702.

The court's reasoning—that because Texas filed a claim under the Administrative Procedure Act, the "record rule" would limit evidentiary findings—is flawed. The court concluded that "any adjudicative facts developed in litigation about the claim of significant public benefit from KFT parole would not affect the merits of the APA claims." ROA.701. This reasoning is problematic on several fronts, each of which constitutes an abuse of discretion.

First, the district court erred by suggesting that this lawsuit is exclusively about the merits of Texas' APA claims. In fact, Texas's lawsuit presents many other legal and factual questions that, as Texas has (correctly) acknowledged in other recent lawsuits about federal immigration policy, are *not* limited to the administrative record. Exh. A, Appellants' Reply in Support of Motion to Expedite, ECF No. 51-2. For instance, a central issue in this case is whether Texas has alleged or can prove an injury in fact that is fairly traceable to the challenged program and can be redressed by a federal court. Courts have repeatedly found that whether a party has been injured presents questions that can be decided by considering evidence outside of the administrative record. *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-54 (2010) (relying on declarations to find that plaintiffs had Article III standing in an APA case); *Texas v. United States*, 40 F.4th 205, 216-18 (5th Cir. 2022) (same); *Texas v. Biden*, 10 F.4th 538, 547 (5th Cir. 2021) (same).

Here, Texas has itself opened the door for the district court to consider evidence outside the administrative record to assess, for example, its redressability argument, which is predicated on its allegations of what may or may not motivate noncitizens and their families to leave their places of residence. *See* ROA.56 (alleging that

"[v]acatur of [KFT] would 'cause some recipients to leave, thereby reducing the financial burdens on the State.'"). The only parties situated to explain what may or may not cause them to upend their lives in states that they have called home for years or decades are the Appellants. That perspective, at this juncture, would surely help the court below gauge the soundness of Texas's logic and ultimately make a finding on this critical factual issue.

Second, the district court erred in applying the record rule to preclude Appellants' potential factual contributions. This error stems from a misunderstanding of the law. Contrary to the court's assumption, the record rule does not govern questions of remedy. *See* 33 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8304 (2d ed.). Particularly relevant for the current phase of this litigation, courts may consider extra-record evidence "[i]n cases where relief is at issue, especially at the preliminary-injunction stage." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989) (listing several exceptions to the record rule); *accord Davis Mountains Trans-Pecos Heritage Ass'n v. FAA*, 116 F. App'x 3, 16 (5th Cir. 2004). These issues require fact-finding that is permissible and not restricted by the record rule. Moreover, Appellants intend to address these questions of fact

with evidence. *See supra* Section I.D. at 41 (discussion of similar evidence filed in *CHNV Parole* case).

Furthermore, the record rule may not apply to Texas's non-APA claims. *Chiayu Chang v. USCIS*, 254 F. Supp. 3d 160, 161 (D.D.C. 2017) (noting disagreement among courts on when constitutional claims are exempt from APA's record rule). But Texas has previously taken the position that it does not. *See* Exh. A, Appellants' Reply in Support of Motion to Expedite, ECF No. 51-2 at 5-6 (Texas claiming *ultra vires* claims are exempt from record rule). Here, Texas has included at least two non-APA claims. One claims KFT Parole is *ultra vires,* ROA.77, and the other alleges that KFT Parole violates the Take Care Clause under Article II of the Constitution, ROA.75.

The district court's erroneous legal conclusion—that the record rule would bar appellants and that their intervention would not aid the litigation—stands as the sole impediment to their intervention in this case.

"An 'abuse of discretion' becomes a 'clear abuse of discretion' when it 'produce[s] a patently erroneous result.'" *In re Abbott*, 956 F.3d 696, 707 (5th Cir. 2020) (quoting *In re Volkswagen*, 545 F.3d at 310), *cert. granted, judgment vacated on other grounds sub nom. Planned*

*Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021). For all the reasons set forth above, that is the case here. If this Court does not reverse the decision below, the implications would be untenable. Appellants, families whose futures are directly at stake in this lawsuit, will effectively be forced to watch from the sidelines as their lives are shaped by the outcome of this case. In stark contrast, a coalition of states—all of whom but one have abandoned any attempt to prove actual harm from KFT Parole—would continue as active litigants in their quest to terminate KFT Parole. This imbalance underscores a key purpose of permissive intervention: to ensure that courts hear from those with concrete interests in a case, even if those intervenors may lack a clear right to participate under Rule 24(a). Allowing Appellants to intervene would not only serve the interests of fairness but also provide the district court with a comprehensive understanding of the case's real-world implications, ensuring "greater justice [is] attained." *Texas*, 805 F.3d at 657.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court order denying Appellants' motion for intervention and issue the

mandate forthwith given the extremely expedited schedule currently in place in the district court.

Dated: September 9, 2024

Respectfully submitted,

*/s/ Esther H. Sung*
Esther H. Sung
Karen C. Tumlin
Hillary Li
Laura Flores-Perilla
Brandon Galli-Graves
Vanessa Rivas-Bernardy
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

Paige Austin
Harold A. Solis
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Telephone: (718) 418-7690
Facsimile: (866) 420-9169

*Counsel for Appellants*

**CERTIFICATE OF SERVICE**

I, Esther H. Sung, hereby certify that on September 9, 2024, I caused the foregoing Opening Brief of Appellants to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit via the CM/ECF system, which will send a notice of this filing to counsel for Plaintiffs-Appellees and Defendants-Appellees.

*/s/ Esther H. Sung*
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272

*Counsel for Movants-Appellants*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify the following:

1. The foregoing brief complies with the length limitations of Rule 27(d)(2)(A). The brief contains 10,293 words according to the Microsoft Word word-counting function, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times Century Schoolbook type style.

Dated: September 9, 2024

*/s/ Esther H. Sung*
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272

*Counsel for Appellants*