**No. 24-40571**

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS; STATE OF ALABAMA; STATE OF ARKANSAS; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF IOWA; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF MISSOURI; STATE OF NORTH DAKOTA; STATE OF OHIO; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF TENNESSEE; STATE OF WYOMING; STATE OF IDAHO,

*Plaintiffs-Appellees,*

*v.*

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, IN HIS OFFICIAL CAPACITY AS SECRETARY FOR DHS; UR MENDOZA JADDOU, IN HER OFFICIAL CAPACITY AS DIRECTOR OF USCIS; TROY MILLER, IN HIS OFFICIAL CAPACITY AS THE ACTING COMMISSIONER OF CBP; PATRICK J. LECHLEITER, IN HIS OFFICIAL CAPACITY AS THE ACTING DIRECTOR OF ICE; OFFICE OF MANAGEMENT AND BUDGET; SHALANDA YOUNG, IN HER OFFICIAL CAPACITY AS THE DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET,

*Defendants-Appellees,*

OSCAR SILVA PEREZ; NATALIE TAYLOR; SALVADOR DOE; JUSTIN DOE; CARMEN MIRANDA ZAYAS; RICARDO OCAMPO HERNANDEZ; JESSIKA OCAMPO HERNANDEZ; FODAY TURAY; JAXHIEL TURAY; GENARO VICENCIO PALOMINO; CINDY SIQUEIROS MADUENA; COALITION FOR HUMANE IMMIGRANT RIGHTS,

*Movants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of Texas, Tyler Division

**BRIEF FOR PLAINTIFFS-APPELLEES**

**(*Counsel Listed on Inside Cover*)**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

AARON L. NIELSON
Solicitor General

LANORA C. PETTIT
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

WILLIAM F. COLE
Deputy Solicitor General

Counsel for Plaintiffs-Appellees

# Certificate of Interested Persons

No. 24-40571

State of Texas; State of Alabama; State of Arkansas; State of Florida; State of Georgia; State of Iowa; State of Kansas; State of Louisiana; State of Missouri; State of North Dakota; State of Ohio; State of South Carolina; State of South Dakota; State of Tennessee; State of Wyoming; State of Idaho,

*Plaintiffs-Appellees,*

*v.*

United States Department of Homeland Security; Alejandro Mayorkas, in his official capacity as Secretary for DHS; Ur Mendoza Jaddou, in her official capacity as Director of USCIS; Troy Miller, in his official capacity as the Acting Commissioner of CBP; Patrick J. Lechleiter, in his official capacity as the Acting Director of ICE; Office of Management and Budget; Shalanda Young, in her official capacity as the Director of the Office of Management and Budget,

*Defendants-Appellees,*

Oscar Silva Perez; Natalie Taylor; Salvador Doe; Justin Doe; Carmen Miranda Zayas; Ricardo Ocampo Hernandez; Jessika Ocampo Hernandez; Foday Turay; Jaxhiel Turay; Genaro Vicencio Palomino; Cindy Siqueiros Maduena; Coalition for Humane Immigrant Rights,

*Movants-Appellants.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellees, as governmental parties, need not furnish a certificate of interested persons.

/s/ Lanora C. Pettit

Lanora C. Pettit
*Counsel of Record for*
*Plaintiffs-Appellees*

## Statement Regarding Oral Argument

The Court has calendared oral argument for October 10. The States intend to participate.

# Table of Contents

Page

Certificate of Interested Persons .................................................................ii

Statement Regarding Oral Argument ...........................................................iii

Table of Authorities ....................................................................................v

Introduction ................................................................................................1

Statement of Jurisdiction ............................................................................3

Issue Presented ...........................................................................................3

Statement of the Case .................................................................................3

    I.   Statutory and Regulatory Background..................................................3

    II.  Procedural History ..............................................................................5

Summary of the Argument...........................................................................8

Standard of Review .....................................................................................11

Argument.....................................................................................................12

    I.   Appellants Were Not Entitled to Intervention by Right Because the Federal Government Adequately Represents Their Interests. ...........12

        A.  Because Appellants share the same "ultimate objective" as the named defendants, the defendants' representation is presumed adequate............................................................................................14

        B.  The governmental-representative presumption of adequate representation also precludes intervention. .....................................24

    II.  The District Court Did Not Abuse its Discretion in Denying Appellants Permissive Intervention. .......................................................27

Conclusion...................................................................................................34

Certificate of Service...................................................................................35

Certificate of Compliance ...........................................................................35

# Table of Authorities

**Page(s)**

**Cases:**

*Arizona v. United States*,
567 U.S. 387 (2012) ........................................................................ 26

*Biden v. Texas*,
597 U.S. 785 (2022) ..................................................................... 4, 30

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) ......................................... 16, 17, 18, 19, 31

*Buck v. Gordon*,
959 F.3d 219 (6th Cir. 2020) ........................................................... 29

*Bush v. Viterna*,
740 F.2d 350 (5th Cir. 1984) (per curiam) ......................... 2, 11, 16, 23, 27, 29, 33

*Cajun Elec. Power Co-op., Inc. v. Gulf States Utils., Inc.*,
940 F.2d 117 (5th Cir. 1991) ........................................................... 12

*Cameron v. EMW Women's Surgical Ctr. P.S.C.*,
595 U.S. 267 (2022) ................................................................... 25, 28

*Cawthorn v. Amalfi*,
35 F.4th 245 (4th Cir. 2022) ........................................................... 28

*City of Houston v. Am. Traffic Sols., Inc.*,
668 F.3d 291 (5th Cir. 2012) ........................................................... 19

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990) ...................................................................... 28

*Crumble v. Blumthal*,
549 F.2d 462 (7th Cir. 1977) ........................................................... 28

*Daggett v. Comm'n on Governmental Ethics & Election Pracs.*,
172 F.3d 104 (1st Cir. 1999) ........................................................... 17

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) ...................................................................... 30

*DHS v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ........................................................................ 30

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996) (en banc) ........ 1, 3, 9, 10, 11, 12, 13, 14, 18, 25, 26, 27

*EEOC v. Nat'l Child.'s Ctr.*,
146 F.3d 1042 (D.C. Cir. 1998) ........................................................ 28

*Entergy Gulf States La., LLC v. U.S. E.P.A.*,
817 F.3d 198 (5th Cir. 2016) ........................................................... 25

*Freedom from Religion Found., Inc. v. Geithner*,
    644 F.3d 836 (9th Cir. 2011) ............................................................... 15
*Guenther v. BP Ret. Accumulation Plan*,
    50 F.4th 536 (5th Cir. 2022) (per curiam) ................................... 10, 22
*United States ex rel. Hernandez v. Team Fin., L.L.C.*,
    80 F.4th 571 (5th Cir. 2023) ................................................................28
*Hopwood v. State of Texas*,
    21 F.3d 603 (5th Cir. 1994) (per curiam) ...................... 10, 13, 24, 25, 30, 32, 33
*Jenkins ex rel. Jenkins v. Missouri*,
    78 F.3d 1270 (8th Cir. 1996) ................................................................22
*John Doe No. 1 v. Glickman*,
    256 F.3d 371 (5th Cir. 2001) ...............................................................19
*Kneeland v. NCAA*,
    806 F.2d 1285 (5th Cir. 1987) .......................................................15, 32
*Korioth v. Brisco*,
    523 F.2d 1271 (5th Cir. 1975) .............................................................27
*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ............................................................... 15
*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
    884 F.2d 185 (5th Cir. 1989) ................................................. 24, 29, 32
*Miller v. Vilsack*,
    No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022) (per curiam)........15, 25
*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir. 1984) (en banc) ........................... 27, 29, 32, 33
*N.Y. Pub. Int. Rsch. Grp., Inc. v. Regents of Univ. of State of N.Y.*,
    516 F.2d 350 (2d Cir. 1975) (per curiam) ................................... 23, 24
*Rotstain v. Mendez*,
    986 F.3d 931 (5th Cir. 2021) .................................................................3
*Ruiz v. Collins*,
    981 F.2d 1256 (5th Cir. 1992) (per curiam) ......................................22
*SEC v. LBRY, Inc.*,
    26 F.4th 96 (1st Cir. 2022) ..............................................................9, 22
*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ...............................................................19
*Sierra Club v. Glickman*,
    82 F.3d 106 (5th Cir. 1996) (per curiam) ..........................................19
*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*,
    101 F.3d 503 (7th Cir. 1996) ............................................................... 17

vi

*Sommers v. Bank of Am., N.A.*,
   835 F.3d 509 (5th Cir. 2016) ................................................... 2, 3, 12
*St. Bernard Par. v. Lafarge N. Am., Inc.*,
   914 F.3d 969 (5th Cir. 2019) ..................................................... 11, 12
*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
   807 F.3d 472 (1st Cir. 2015) ............................................... 13, 15, 24
*Texas v. U.S. Dep't of Energy*,
   754 F.2d 550 (5th Cir. 1985) ..................................................... 24, 25
*Texas v. U.S. Dep't of Homeland Sec.*,
   No. 6:23-cv-00007, 2024 WL 1021068 (Mar. 8, 2024) ...................30
*Texas v. United States*,
   50 F.4th 498 (5th Cir. 2022) ...........................................................30
*Texas v. United States*,
   805 F.3d 653 (5th Cir. 2015)....................................9, 18, 19, 20, 21, 23
*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) .................................................... 20, 30
*Tollett v. City of Kemah*,
   285 F.3d 357 (5th Cir. 2002) ......................................................... 31
*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) ....................................................................... 12
*United States Postal Serv. v. Brennan*,
   579 F.2d 188 (2d Cir.1978) ...................................................... 27, 28
*United States v. Franklin Par. Sch. Bd.*,
   47 F.3d 755 (5th Cir. 1995) ............................................................ 13
*United States v. Mendoza*,
   464 U.S. 154 (1984).........................................................................16
*United States v. Texas*,
   599 U.S. 670 (2023) ........................................................................30
*Veasey v. Perry*,
   577 F. App'x 261 (5th Cir. 2014) (per curiam) ........................... 13, 19
*Wis. Educ. Ass'n Council v. Walker*,
   705 F.3d 640 (7th Cir. 2013) .......................................................... 15
*Yniguez v. State of Arizona*,
   939 F.2d 727 (9th Cir. 1991) ..........................................................25

**Statutes:**

U.S. Const. art. II, § 3 .................................................................5
5 U.S.C.:
  § 702 ............................................................................. 3, 26
  § 704 ....................................................................................3
8 U.S.C.:
  § 1182(d)(5)(A) ..................................................................4
  § 1255 .............................................................................. 3, 4
28 U.S.C.:
  § 1291 ...................................................................................3
  § 1331 ...................................................................................3
  § 1346 ...................................................................................3
  § 1361 ...................................................................................3
Fed. R. Civ. P.:
  24 ..........................................................................................3
  24(a) ........................................................................... 1, 7, 8
  24(a)(1) ............................................................................ 12
  24(a)(2) ............................................................................ 12
  24(b) ................................................... 1, 7, 10, 11, 27, 28
  24(b)(1)(B) ...................................................................... 27

**Other Authorities:**

7C Charles Alan Wright et al., Federal Practice & Procedure (3d ed.
  June 2024 Update)....................................................... 24, 28
H.R. Rep. No. 104-469 (1996) .....................................................5
Implementation of Keeping Families Together, 89 Fed. Reg. 67,459
  (Aug. 20, 2024)............................................... 4, 14, 15, 26
Webster's Third International Dictionary (2002) ............................. 15

# Introduction

This appeal arises out of an administrative-law challenge by several States to the Biden-Harris Administration's Parole in Place ("PIP") program, which unilaterally creates a pathway to legal status for over 1.3 million aliens who have been unlawfully present in the country for ten years or more—notwithstanding Congress's mandate that such individuals must leave the country and observe a waiting period before applying for admission or a visa. The question presented, however, concerns only the district court's order denying one association and eleven would-be beneficiaries of the PIP program leave to intervene in this lawsuit as parties.

There is no dispute that the federal government is vigorously defending this lawsuit. Under well-established precedent, this gives rise to a presumption that the federal government will adequately represent Appellants so long as they share the same "ultimate objective." *Edwards v. City of Houston*, 78 F.3d 983, 992 (5th Cir. 1996) (en banc). They do share the same objective: preservation of the PIP program. Because Appellants presented no evidence—such as adversity of interest, collusion, or nonfeasance—to overcome that presumption, they had no "right" to intervene in this lawsuit as parties under Federal Rule of Civil Procedure 24(a). Nor was it an abuse of discretion for the district court to deny Appellants permissive intervention under Rule 24(b)—particularly as the court welcomed Appellants to present any arguments or evidence they wished in an amicus capacity.

This Court should affirm the district court's order denying intervention as of right. There is no serious dispute that the federal government and Appellants both want the Court to uphold the validity of the PIP program—that is, that they share

the same "ultimate objective." As a result, there is always a presumption that the named defendant will adequately represent the interests of the intervenor—a presumption that is particularly strong here where the defendant in question can and will bring to bear the full resources of the federal government. That doesn't change merely because the federal government's reasoning for pursuing that objective is more expansive on the merits than Appellants, because Appellants' evidence of irreparable harm is more expansive than the federal government, or because Appellants and the federal government have disagreed on points not germane to this litigation.

This Court should also dismiss for lack of jurisdiction Appellants' remaining complaints regarding the district court's denial of their request for permissive intervention. Because this Court has only "provisional jurisdiction" to consider a district court's denial of permissive intervention, the Court must dismiss any such appeal unless the district court abused its discretion. *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512 (5th Cir. 2016). Moreover, due to the district court's wide latitude to control its docket, a finding of such an abuse is "so unusual as to be almost unique." *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (per curiam). Far from unusual, the district court's order reflects a straightforward application of this Court's well-established test to determine that permissive intervention was unwarranted. It nonetheless welcomed Appellants' amicus participation—an invitation they have already accepted. Appellants' mere disagreement with the district court's decision does not demonstrate an abuse of discretion.

## STATEMENT OF JURISDICTION

The district court has jurisdiction under 28 U.S.C. §§ 1331, 1346, 1361 and 5 U.S.C. §§ 702, 704. This Court has appellate jurisdiction to review a "denial of a motion to intervene of right," which is "an appealable final order under 28 U.S.C. § 1291." *Sommers*, 835 F.3d at 512 (quoting *Edwards*, 78 F.3d 983 at 992). But this Court has "'only provisional jurisdiction' to review the denial of permissive intervention." *Id.* This means that "[i]f the district court's denial of permissive intervention does not constitute an abuse of discretion," the Court "must dismiss the appeal for lack of jurisdiction." *Id.*; *see also, e.g.*, *Rotstain v. Mendez*, 986 F.3d 931, 942 (5th Cir. 2021) (holding that the same ground that led to affirmance of the denial of intervention as of right requires dismissal of an appeal of permissive intervention).

## ISSUE PRESENTED

Whether Appellants were entitled to intervene, by right or by permission, under Federal Rule of Civil Procedure 24 where they share the same ultimate objective as the federal government and have shown no evidence of adversity of interest, collusion, or nonfeasance on the federal government's part.

## STATEMENT OF THE CASE

### I.  Statutory and Regulatory Background

Under the Immigration and Naturalization Act, certain categories of aliens who are unlawfully present in the United States may seek to adjust their immigration status to that of a lawful permanent resident. *See generally* 8 U.S.C. § 1255. But only aliens present in the United States who were previously "inspected and admitted or paroled *into* the United States," or aliens who previously petitioned under the

Violence Against Women Act, are eligible for an immediate adjustment of their immigration status. *Id.* § 1255(a) (emphasis added). Otherwise, any alien who entered the United States unlawfully after April 30, 2001, but who wants to adjust his status, must leave the United States and apply for an immigrant visa at a U.S. consulate or embassy overseas. *Id.* § 1255(i). An alien who has been unlawfully present in the United States for more than one year is inadmissible to the United States and ineligible for a visa for ten years after that "alien's departure or removal from the United States." *Id.* § 1182(a)(9)(B)(i)(II).

Disregarding this statutory framework, the Biden-Harris Administration announced in July the creation of a new Parole in Place program that would allow aliens who have been unlawfully present in the United States for ten or more years to be granted "parole"—without leaving the United States, let alone applying for admission at a U.S. consulate or embassy—if the alien is the spouse or stepchild of a U.S. citizen. *See generally* Implementation of Keeping Families Together, 89 Fed. Reg. 67,459 (Aug. 20, 2024). Although the Administration has stated that it expects this new program to benefit half-a-million aliens, the number is likely closer to 1.3 million. *See* ROA.110 & nn.2-3.

In search of legal authority for its actions, 89 Fed. Reg. at 67,460, the Biden-Harris Administration looked to the Secretary of Homeland Security's "parole" power under 8 U.S.C. § 1182(d)(5)(A). But that provision allows the Secretary to parole into the United States an otherwise inadmissible alien only on a "case-by-case basis" for "urgent humanitarian reasons" or "significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see Biden v. Texas*, 597 U.S. 785, 806 (2022). Congress added these

statutory restrictions to the parole power as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 because the executive branch had previously abused that parole power "to admit entire categories of aliens who do not qualify for admission under any other category in immigration law." H.R. Rep. No. 104-469, at 140 (1996). Despite these statutory limitations, on August 16, the United States Citizenship and Immigration Services ("USCIS") announced the official start of the PIP program by publishing an electronic application; four days later, USCIS published notice of the program and began approving applications and granting parole the same day. ROA.111-12.

## II. Procedural History

Plaintiffs—a coalition of sixteen States—filed a complaint on August 23 against the Department of Homeland Security ("DHS") and several relevant federal officials. ROA.29-30. In that complaint, the States brought eight causes of action under the Administrative Procedure Act ("APA"), alleging (among other things) that the PIP program exceeds DHS's statutory authority, is arbitrary and capricious, and was promulgated without proper notice and comment. ROA.63-75. The States also brought a claim under the Constitution's Take Care Clause, U.S. Const. art. II, § 3, and a non-statutory ultra vires claim. ROA.75-77. The States moved for emergency relief the same day they filed their complaint. ROA.96-161.

On August 26, the district court issued an administrative stay, which allowed USCIS to accept PIP applications but prevented the agency from approving new applications for 14 days. ROA.527-32. In its order, the court set an expedited schedule, requiring the administrative record to be completed by September 9, discovery by

September 16, and dispositive motions by October 10, ROA.532-35. The district court later issued a revised scheduling order setting even tighter deadlines, including setting the close of discovery for September 11, dispositive motions for September 13, responses to the dispositive motions on September 16, and a bench trial for September 18. *See* ROA.732-38. The court also extended its "temporary stay and restraining order for an additional 14-day period, such that it expires at the end of September 23, 2024." ROA.737.

Despite considerable logistical challenges, the States and the federal government negotiated in good faith to balance the need for speedy resolution with the practical concern of giving each side sufficient opportunity to develop their facts and legal arguments. A stipulation describing that agreement was jointly filed with the district court. *See* ROA.555-56. Specifically, the parties agreed that the States "will only seek to establish Article III injury based on alleged injuries to Texas" and "may not attempt to introduce new evidence of injury or irreparable harm" relating to any other State "absent new reciprocal discovery." ROA.555. In exchange, the federal government stipulated that its discovery requests would be limited to the State of Texas. ROA.555.

Yet, on the same day the district court issued its first scheduling order, Appellants sought admission into the case as defendants to advance the same ultimate objective as the federal government: namely, the continuation of the PIP program. *See* ROA.253-76. These proposed intervenors consist of the Coalition for Humane Immigrant Rights, an advocacy organization claiming to represent the interests of its

members, as well as eleven individuals who describe themselves as beneficiaries of the PIP program. ROA.258-62.

In a thorough, nine-page decision, the district court denied the motion to intervene. ROA.694-702. The court first held that Appellants were not entitled to intervention by right under Federal Rule of Civil Procedure 24(a) because any legally protectable interest they have in "obtaining parole under the . . . Rule so that they may be lawfully present in and work in this country" would be adequately represented by the federal government in this case. ROA.696-97. After all, both Appellants and the federal government share the same "ultimate objective": "avoiding or defeating plaintiffs' request for judicial relief that impedes the rule's implementation." ROA.697. And because Appellants could show no "adversity of interest, collusion, or nonfeasance" on the part of the federal government, the presumption that the federal government will adequately defend its own rule was dispositive. ROA.697-700.

The district court also held that Appellants were not entitled to permissive intervention under Federal Rule of Civil Procedure 24(b). ROA.700-02. Once again, the court concluded that the federal government adequately represented Appellants' interests. ROA.701. Rejecting Appellants' argument that their intervention would "contribute to the full development of facts pertaining to the benefits of parole under the rule," the district court noted that "review of federal agency action under the Administrative Procedure Act turns on the administrative record compiled by the agency." ROA.701. As a result, the court held, "any adjudicative facts developed in litigation about the claim of significant public benefit from . . . parole would not affect

the merits of the APA claims." ROA.701. The court also noted that it saw "no indication that the [defendants] would not welcome [Appellants'] assistance" in "highlighting any evidence" related to the "full development of facts related to the equitable-relief factors." ROA.701-02. And further to that observation, the court later allowed Appellants to participate as amici—an opportunity of which they have already taken full advantage by filing a brief in support of the federal government's motion to vacate the administrative stay. *See* ROA.706-31.

Nevertheless, Appellants immediately noticed an appeal of the order denying their motion to intervene, ROA.703, and asked this Court to expedite the appeal three days later, ECF 5. A motions panel of this Court later granted that motion, ECF 54, setting an aggressive schedule under which the entire appeal would be fully briefed in less than 10 days, ECF 55, and argued on October 10, ECF 66. Notwithstanding this extraordinary expedition, the Court was also forced to administratively stay the district-court proceedings to avoid mooting the dispute. ECF 68. As a result, this Court will not even hear argument on intervention until three weeks after the district court had set the case for trial. *Compare* ECF 66, *with* ROA.738.

## Summary of the Argument

**I.**    The district court properly denied Appellants' motion to intervene by right under Federal Rule of Civil Procedure 24(a). Under that rule, an applicant seeking intervention must show, among other factors, that existing parties "inadequately represent" the applicant's interest. Fed. R. Civ. P. 24(a). Here, Appellants have sought to intervene on the federal government's behalf, but they share the same "ultimate objective": to preserve a program that would allow Appellants and individuals

who are similarly situated to adjust their status from undocumented alien to lawful permanent resident. *See Edwards*, 78 F.3d at 1005. Indeed, Appellants admit as much (at 43), stating that they "share a high-level goal of defending" the rule *in this litigation*. Appellants cannot avoid that conclusion by arguing that the federal government offered a broader set of policy reasons to support the rule's *promulgation*. Indeed, it is entirely unclear why Appellants think that the federal government is *less* likely to vigorously defend this lawsuit because it has *more* reasons for wanting to win it. As a result, this Court presumes that the named defendant will represent their interests absent evidence of "adversity of interest, collusion, or nonfeasance." *Edwards*, 78 F.3d at 1005.

Neither of the concerns that Appellants raise overcome this presumption that the named defendant will adequately represent their shared interests. *First*, Appellants attempt to argue (at 36-38) "adversity of interest" by suggesting that the federal government has taken positions in this litigation that are "directly adverse" to them. Even if true (which is dubious) even a cursory inspection reveals that such disagreement relates to topics that are not "germane to the case." *Texas v. United States*, 805 F.3d 653, 662 (5th Cir. 2015) ("*DAPA I*"). *Second*, Appellants contend (at 38-43) that they intend to present additional arguments and evidence challenging the States' standing, as well as on the injunctive-relief equitable factors. But as this Court's sister circuit has noted, "[a] proposed intervenor's desire to present an additional argument or a variation on an argument does not establish inadequate representation." *SEC v. LBRY, Inc.*, 26 F.4th 96, 99-100 (1st Cir. 2022). And as this Court has itself explained, a "[d]ifference[] of opinion regarding an existing party's

litigation strategy or tactics used in pursuit thereof, without more, do[es] not rise to adversity of interest." *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022) (per curiam).

Appellants' arguments ring particularly hollow here because the named defendant is the federal government, giving rise to a separate (or, at least, a stronger) presumption of adequate representation. Here the DHS and several of its senior officials—the named defendants—constitute "a governmental body or officer," *Edwards*, 78 F.3d at 1005, or "governmental agency," *Hopwood v. State of Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (per curiam), to whom the presumption attaches. Likewise, this suit involves a "sovereign interest" of the federal government because it involves a challenge to the legality of policies crafted in part pursuant to its sovereign powers over immigration and naturalization. *Edwards*, 78 F.3d at 1005. And Appellants have been unable to overcome this presumption by showing "'that [their] interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it].'" *Edwards*, 78 F.3d at 1005 (quoting *Hopwood*, 21 F.3d at 605). Indeed, the federal government and the Appellants share both the broad interest in preserving the PIP program and the narrower interest in family unity and stability that Appellants champion; Appellants have not identified how the federal government will not represent those interests in the context of this litigation.

**II.** Because the district court also did not abuse its discretion by denying Appellants' request for permissive intervention under Federal Rule of Civil Procedure 24(b), this aspect of the appeal must be dismissed. "Permissive intervention is wholly discretionary with the district court even though there is a common question

of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Viterna*, 740 F.2d at 359. A district court order denying permissive intervention will be reversed "solely for an abuse of discretion"—a disposition "so unusual as to be almost unique." *Id.* Here, no abuse of discretion is in view: the district court applied the factors this Court has instructed it to consider—including adequacy of representation and whether the proposed intervenors are likely to contribute significantly to the development of the underlying factual issues—and it determined that intervention was not warranted but that Appellants could participate in the proceedings as amici. ROA.700-02. Appellants plainly disagree with that assessment, but that disagreement does not amount to an abuse of discretion.

## Standard of Review

"A ruling denying intervention of right is reviewed de novo." *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 973 (5th Cir. 2019) (quoting *Edwards*, 78 F.3d at 995). "Denial of permissive intervention, on the other hand, is reviewed for clear abuse of discretion," and "[u]nder this standard, the Court will reverse a district court decision only under extraordinary circumstances." *Id.*

## Argument

### I. Appellants Were Not Entitled to Intervention by Right Because the Federal Government Adequately Represents Their Interests.

Under Federal Rule of Civil Procedure 24(a)(2), courts "must permit anyone to intervene" in a pending case only if the putative intervenor meets four factors.[1] *First*, "the application for intervention must be timely." *St. Bernard Par.*, 914 F.3d at 974 (quoting *Sommers*, 835 F.3d at 512). *Second*, "the applicant must have an interest relating to the property or transaction which is the subject of the action." *Id. Third*, "the applicant must be so situated that the disposition of the action may, as a practical matter, impair his ability to protect that interest." *Id.* And *fourth*, "the applicant's interest must be inadequately represented by the existing parties to the suit." *Id.* "Failure to satisfy any one requirement precludes intervention by right," but here only the fourth factor is at issue. *Id.* (quoting *Edwards*, 78 F.3d at 999).

It is black-letter law that "[t]he burden of establishing inadequate representation is on the applicant for intervention." *Edwards*, 78 F.3d at 1005. True, that burden has been described as "minimal"—that is, "satisfied if the applicant shows that representation of his interest 'may be' inadequate.'" *Id.* (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Yet "it cannot be treated as so minimal as to write the requirement completely out of the rule." *Id.* (quoting *Cajun Elec. Power Co-op., Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 120 (5th Cir. 1991)).

---

[1] Appellants do not claim that they have "an unconditional right to intervene by a federal statute," which is the only other ground for intervention by right. *See* Fed. R. Civ. P. 24(a)(1).

That is, something "more than speculation" is required. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 475 (1st Cir. 2015) (internal quotation marks omitted).

To ensure that this requirement "ha[s] some teeth," *Veasey v. Perry*, 577 F. App'x 261, 263 (5th Cir. 2014) (per curiam), this Court's "jurisprudence has created two presumptions of adequate representation," *Edwards*, 78 F.3d at 1005. The first applies to all defendants and "arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Id.* "In such cases, the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.* (citing *United States v. Franklin Par. Sch. Bd.*, 47 F.3d 755, 757 (5th Cir. 1995)). The second is that "when the putative representative is a governmental body or officer charged by law with representing the interests of the absentee, a presumption of adequate representation arises whether the would-be intervenor is a citizen or subdivision of the governmental entity." *Id.* "To overcome this presumption, the applicant must show 'that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it].'" *Id.* (quoting *Hopwood*, 21 F.3d at 605). In this instance, each presumption bars Appellants' attempt to show that the federal government is an inadequate representative. Appellants' counterarguments lack merit.

13

**A. Because Appellants share the same "ultimate objective" as the named defendants, the defendants' representation is presumed adequate.**

**1. Appellants share the same objective as the federal government.**

At the outset, there can be little doubt that Appellants and the federal government share the same "ultimate objective." *Edwards*, 78 F.3d at 1005. Both the federal government and the Appellants are fully aligned insofar as their overriding aim is to preserve the PIP program and defeat the States' claims in this lawsuit. *See* ROA.256 (Appellants arguing that "[t]hey have concrete, personalized interests in the outcome of this litigation, which seeks to terminate KFT Parole, thereby obstructing their access to its benefits"). Indeed, Appellants admit as much, unequivocally stating that they "share a high-level goal of defending" the rule with the federal government. Appellants' Br. 43. The district court was therefore entirely correct to hold that the federal government's "ultimate objective in this case is avoiding or defeating [the States'] request for judicial relief that impedes the rule's implementation" and "[t]hat is the same objective of the proposed intervenors." ROA.697.

Nevertheless, Appellants briefly argue (at 32-34) that their shared desire for the States to lose in this litigation does not mean they share the same "ultimate objective" because the federal government has "many more interests to balance." In particular, Appellants point (at 33) to the federal government's stated goals of promoting accessibility and efficiency in the immigration system, foreign policy objectives, and national security, public safety, and border security. *See* 89 Fed. Reg. at 67,460, 67,465. By contrast, Appellants are narrowly concerned with "keeping their families

together in the United States and obtaining work authorization." Appellants' Br. 33. But there is no dispute that the federal government's reasons for promulgation of this rule include the narrower set of interests championed by Appellants. *See* ROA.698 (citing 89 Fed. Reg. at 67,460); *see also* 89 Fed. Reg. at 67,462.

That the federal government has *additional* reasons to want the PIP program to survive hardly means that its "ultimate objective" for the *defense of this litigation* is "[im]precisely" aligned with Appellants. *Contra* Appellants' Br. 33. True, one definition of the term "objective" is "strategic position to be attained, the purpose to be satisfied." *Objective*, Webster's Third International Dictionary 1556 (2002). But when this Court has spoken of litigants' sharing the same "ultimate objective," it has meant something more specific: that the litigants seek the same ultimate *judgment*, whether that judgment upholds the constitutionality of statute, *see, e.g.*, *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 308 (5th Cir. 2022); *Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at*3 (5th Cir. Mar. 22, 2022) (per curiam);[2] "prevents disclosure of documents," *Kneeland v. NCAA*, 806 F.2d 1285, 1288 (5th Cir.

---

[2] *See also, e.g.*, *Students for Fair Admissions*, 807 F.3d at 475 ("The interests they claim (increasing their chances of gaining admission and/or being educated 'among a critical mass of students who can relate to their racial identities') lead them to adopt four-square Harvard's goals of 'defend[ing] Harvard's right to consider race and [ ] defeat[ing] SFFA's request for declaratory judgment.'"); *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 659 (7th Cir. 2013) ("Here, the Employees and the state share the same goal: protecting Act 10 against the Unions' constitutional challenge."); *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (proposed intervenor and federal defendants share the "ultimate objective [of] uphold[ing] the constitutionality of the challenged statutes").

1987); or "upholds the present standards and practices of [an administrative] Commission" against "changes in those standards and practices sought by the plaintiffs," *Viterna*, 740 F.2d at 356.

The States are unaware of any case holding that a precise identity of interests *outside* the courtroom is relevant to this inquiry. Indeed, it is doubtful that such a thing is even possible when the named defendant is a sovereign entity who is occasionally offered additional latitude in litigation precisely because it must always advance more than one interest at the same time. *Cf., e.g.*, *United States v. Mendoza*, 464 U.S. 154, 159 (1984).

Nor should this Court be the first to adopt such a rule. Nowhere do Appellants explain how the federal government's broader set of interests in the underlying rule will cause imprecision or misalignment in achieving the admittedly shared "ultimate objective" of preserving the PIP program. And if Appellants were correct that the government's broader set of interests in a regulatory program were enough to render its ultimate litigation objectives misaligned with the program's beneficiaries, then it is hard to see how a government could *ever* be an adequate representative of a program's beneficiary. *See* ROA.699. The law is precisely the opposite. Courts—including this one—routinely hold that "a private group does not always satisfy this [inadequate-representation] prong just because a governmental entity is on the same side of an issue," *Brumfield v. Dodd*, 749 F.3d 339, 346 (5th Cir. 2014), and "[t]he general notion that the [government] represents 'broader' interests at some abstract level is

not enough," *Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 112 (1st Cir. 1999).[3]

*Brumfield*, Appellants' primary case (at 32-33), is not to the contrary. There, the Court found that Louisiana's interest in defending a school-voucher program did "not align precisely" with parents who were beneficiaries of that program because the State had to take into account not only its interest in "oppos[ing] dismantling the voucher program" but also its somewhat divergent interest in maintaining "its relationship with the federal government and with the courts that have continuing desegregation jurisdiction." *Brumfield*, 749 F.3d at 345, 346. Indeed, the State's "more extensive interests"—which did not necessarily point in the same direction even from the government's perspective—had *already* ripened into a conflict after the State "conceded the continuing jurisdiction of the district court" over the school-voucher program, which was "a position significantly different from that of" the parents. *Id.* at 346. Here, by contrast, Appellants have presented no argument that the federal government's interest are internally contradictory, or that the federal government will sacrifice their interest in "keeping their families together in the United States and obtaining work authorization," Appellants' Br. 33, in pursuit of

---

[3] *See also*, *e.g.*, *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 508 (7th Cir. 1996) (Posner, J.) (explaining that if it were sufficient to point to the DOJ's "unique status as the lawyer for the entire federal government," "then in no case brought or defended by the Department could intervention be refused on the ground that the Department's representation . . . was adequate").

some other unarticulated "institutional" foreign policy, national security, or efficiency-based interest.[4]

Indeed, far from identifying a position that the named defendants have or will take that is "significantly different from" theirs, *Brumfield*, 749 F.3d at 346, the upshot of their intervention argument is that they want to provide "additional" arguments to the ones the federal government is already making on standing and the injunctive-relief equitable factors. *See* Appellants' Br. 38-43. The desire to *bolster* existing arguments demonstrates alignment with, not adversity to, the ultimate objective of this litigation.

### 2. Appellants failed to identify any adversity of interest sufficient to overcome the ultimate-objective presumption of adequacy.

Because Appellants and the federal government share the same "ultimate objective" in this litigation, as the named defendant the federal government is presumptively an adequate representative. *See Edwards*, 78 F.3d at 1005. To overcome this presumption of adequate representation, Appellants were required to "show evidence of adversity of interest, collusion, or nonfeasance." *Id.* Only the first category is at issue here.

"[T]o show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *DAPA I*, 805 F.3d at 662. It must then "connect the allegedly divergent

---

[4] In mathematical terms, Appellants' argument appears to be that because their interests are "A+B," they are not aligned with the federal government's interests of "A+B+C+D+E." That makes no sense, and *Brumfield* does not say otherwise.

interests with . . . concrete effects on the litigation." *Id.* To make this showing, this Court's cases require a genuine "incongruity of interests." *Veasey*, 577 F. App'x at 262-63. Such is the case where, for example, the existing party had announced that it "would be acting contrary to the interests of the [proposed intervenors]," *Brumfield*, 749 F.3d at 345 (discussing *Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994)); where the existing party contradicted its previous position, failed to contest a TRO or preliminary injunction, and did not object to the admission of questionable evidence, *John Doe No. 1 v. Glickman*, 256 F.3d 371, 380-81 (5th Cir. 2001); where there were "substantial doubts about the [existing party's] motives and conduct in its defense" because the party had an incentive to settle in a way that would harm the intervenor, *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012); and where the proposed intervenor was free to make an argument that was unavailable to the existing party because it was "bound by a prior court judgment," *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (per curiam). None of these circumstances, or anything akin to them, is present here.

**a.** Nevertheless, Appellants argue (at 36-38) that the federal government has taken at least three positions "directly adverse" to them and contend that they intend to provide additional arguments and evidence on standing and the injunctive-relief equitable factors to bolster arguments the federal government is already making. But the first two of these arguments are not "germane to th[is] case," *DAPA I*, 805 F.3d at 662, and the third and fourth identify no adversity at all.

*First*, Appellants cannot manufacture adversity (at 36-37) by pointing out that, in opposing the States' standing, the federal government argued that "the States

may refuse to provide public higher education or other benefits to paroled nonciti-zens"—even if some of the Appellants "may be eligible for, and rely on, such edu-cation and other benefits." As an initial matter, that the federal government is vig-orously disputing the States' standing on the ground that there is no injury to the States from increased costs due to public-benefits expenditures because such ex-penditures are self-inflicted and therefore not traceable to the federal government, *see* ROA.655, is irreconcilable with Appellants' suggestion that their intervention is necessary to ensure that someone adequately disputes the States' standing, Appel-lants' Br. 39-42. Regardless, because the question of the availability of public benefits for noncitizens is not at issue in this case, any dispute between Appellants and the federal government about whether they should be eligible for state-provided public benefits is simply "not germane to the case" about the lawfulness of the PIP program and thus not relevant to the question of intervention. *DAPA I*, 805 F.3d at 662.[5]

*Second*, Appellants assert (at 37-38) that adversity exists because the federal gov-ernment has made various statements that it "retains its right to take enforcement actions against noncitizens 'notwithstanding a noncitizen's intent to request parole in place, eligibility to request parole in place, filing of a request for parole in place, or grant of parole in place under this process.'" But again, any purported adversity is

---

[5] Incidentally, it is also far from clear that there *is* a conflict of positions. In *DAPA I*, the federal government affirmatively took "the position that the States may refuse to issue driver's licenses to deferred action recipients." 805 F.3d at 663. Here, the federal government conspicuously does *not* opine on whether States can legally deny benefits to undocumented aliens.

not "germane to the case," *DAPA I*, 805 F.3d at 662, which turns only on the continued existence of the PIP program. Nothing in the States' complaint puts at issue the scope or nature of the federal government's parole authority *outside* of the context of the PIP program. As a result, any quibble Appellants have with whether the federal government retains the right to enforce existing immigration laws against noncitizens notwithstanding the existence of the PIP program (and it demonstrably does) can and should be litigated elsewhere.

*Third*, Appellants take issue (at 38) with the federal government's "alternative" argument that, if the Court does issue injunctive relief, it should be limited to the plaintiff-States and not a nationwide injunction. *See* ROA.689. Specifically, Appellants insist (at 38) that this "alternative relief" would be "directly contrary to the interests of Appellants who live in Texas." But the Court will only get to this *alternative* argument if it has already rejected the federal government's primary argument that no injunctive relief should issue *at all*—that is, if the Court has already determined that the federal government has lost on the merits. *See, e.g.*, ROA.687-88. True, Appellants have not taken a position on this question, arguing only that injunctive relief should not issue at all. *See* ROA.728-29. But that is not actually in conflict with the federal government's argument that if the Court concludes it "could issue injunctive relief" it should "limit[]" it "to the Plaintiff States" rather than extend it "nationwide." ROA.689-90. To the extent that Appellants are suggesting that the federal government should not be making an alternative argument at all, that is simply a "[d]ifference[] of opinion regarding an existing party's litigation strategy or tactics used in pursuit thereof," which "without more, do[es] not rise to an adversity

of interest." *Guenther*, 50 F.4th at 543. Nor does "[a] difference of opinion concerning . . . individual aspects of a remedy." *Jenkins ex rel. Jenkins v. Missouri*, 78 F.3d 1270, 1275 (8th Cir. 1996).

*Fourth*, Appellants argue (at 38-43) that they have rebutted the presumption of adequate representation because they intend to offer "additional or contrary arguments" than the federal defendants relating to Texas's standing and to the equitable factors bearing on the issuance of injunctive relief. Specifically, Appellants contend that they aim to present "a manifestly distinct theory of Texas's (lack of) standing," "additional evidence refuting standing" that they suggest the federal government is "unlikely to introduce," and "'a more vigorous presentation of arguments' regarding both the balance of harms and public interest elements for injunctive relief." Appellants' Br. 39, 41, 42.

None of these arguments is "contrary" to any argument that the federal government intends to make, which is also vigorously challenging Texas's standing and arguing that neither the balance of harms nor the public interest supports the issuance of injunctive relief. *See, e.g.*, ROA.645-58, 687-89. Appellants merely hope to offer additional arguments and evidence to *bolster* ones that are already being made by the federal government. Yet "[a] proposed intervenor's desire to present an additional argument or a variation on an argument does not establish inadequate representation." *LBRY, Inc.*, 26 F.4th at 99-100. And a failure to "make all the arguments [Appellants] would make if [they] had [their] druthers" does not render the federal government an inadequate representative. *Ruiz v. Collins*, 981 F.2d 1256 (5th Cir. 1992) (per curiam); *see also Guenther*, 50 F.4th at 543.

**b.**    Perhaps recognizing that the federal government is, in fact, fully supportive of their cause, Appellants briefly argue that they need not show "adversity of interest" at all—only that they intend to "make a more vigorous presentation of arguments than existing parties." Appellants' Br. 42 (quoting *Viterna*, 740 F.2d at 357); *see id.* at 34-35. The States do not quarrel with Appellants' observation (at 34-35) that this Court and its sister circuits have noted that adversity of interest, collusion, and nonfeasance are not "the *only* three ways to demonstrate inadequacy of representation." *DAPA I*, 805 F.3d at 662 n.5 (emphasis original). But this Court's precedent does not support the notion that merely stating that one intends to make a "more vigorous" presentation of arguments already being made renders an existing party's representation inadequate.

For the proposition that inadequate representation might be established when an "applicant will make a more vigorous presentation of arguments than existing parties," *Viterna* cited *New York Public Interest Research Group, Inc. v. Regents of University of State of New York*, 516 F.2d 350 (2d Cir. 1975) (per curiam). 740 F.2d at 357. Yet in *New York Public Interest Research Group*, the Second Circuit did not hold that the Regents of the University of the State of New York inadequately represented the interests of pharmacists in defending a regulation prohibiting the advertising of the price of prescription drugs merely because "the pharmacists will make a more vigorous presentation of the economic side of the argument [defending the regulation] than would the Regents." 516 F.2d at 352. Instead, it was because "their interests 'may significantly differ,'" including regarding the incentives or ability of the Regents to press the case for a defense of the regulation on economic grounds. *Id.* Here,

however, the interests of Appellants and that of the federal government do not "significantly differ," *id.*, with regard to the defense of the PIP program in any way germane to the case. *Supra* at 19-22. And Appellants' bare desire to provide additional support to the federal government's arguments does not render that defendant an inadequate representative. *Supra* at 22.

### B. The governmental-representative presumption of adequate representation also precludes intervention.

Independent of (or at least in addition to) the ultimate-objective presumption of adequate representation, which applies in some form even to non-governmental entities, *Students for Fair Admissions*, 807 F.3d at 475, this Court has also held that "there is a presumption of adequate representation" in cases where "the existing representative in the suit is the government." *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 553 (5th Cir. 1985) ("*DOE*"); *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989) ("*LULAC*") (referring to "the Texas Attorney General's presumed representation of common interests"). Although this Court has not fully elucidated how these two presumptions interact, it is clear that "where the party whose representation is said to be inadequate is a governmental agency, a much stronger showing of inadequacy is required." *Hopwood*, 21 F.3d at 605. The United States, in particular, has been presumed to be an adequate representative of the public interest, "in the absence of a very compelling showing to the contrary," in a variety of cases. 7C Charles Alan Wright et al., Federal Practice & Procedure § 1909 (3d ed. June 2024 Update) ("Wright & Miller").

True, "[t]his presumption, and the heightened showing required to overcome it, is restricted . . . to those suits involving matters of sovereign interest." *Edwards*, 78 F.3d at 1005. But when it applies, "[t]o overcome this presumption, the applicant must show 'that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it].'" *Id.* (quoting *Hopwood*, 21 F.3d at 605). For example, this presumption might be overcome if the governmental entity announces that it will not defend its prior policy. *See, e.g.*, *Cameron v. EMW Women's Surgical Ctr. P.S.C.*, 595 U.S. 267, 277-79 (2022). That makes sense as, by definition, "no representation constitutes inadequate representation." *Yniguez v. State of Arizona*, 939 F.2d 727, 737 (9th Cir. 1991).

The governmental-representative presumption applies here. The United States Department of Homeland Security and several of its senior-most officials are named as defendants. ROA.30. Although this Court has, in dicta, queried whether this presumption applies when agencies, rather than the sovereign itself, is the named defendant, *see Entergy Gulf States La., LLC v. U.S. E.P.A.*, 817 F.3d 198, 203 n.2 (5th Cir. 2016); *Miller*, 2022 WL 851782, at *3 n.4, this Court's binding precedents leave little doubt that it does, *see DOE*, 754 F.2d at 553 (applying presumption where existing defendant was the U.S. Department of Energy); *see also Edwards*, 78 F.3d at 1005 (stating that the presumption applies "when the putative representative is *a governmental body or officer*"); *Hopwood*, 21 F.3d at 605 (stating that presumption applies "where the party whose representation is said to be inadequate is a *governmental agency*"). Indeed, if it did not, the presumption would rarely apply as often the only relevant waiver of sovereign immunity requires suit against an agency or official. *See*

5 U.S.C. § 702 (requiring that "any mandatory or injunctive decree shall specify the Federal officer or officers . . . personally responsible for compliance").

Likewise, this is a "suit[] involving matters of sovereign interest," with the federal government "appear[ing] in the present litigation . . . in its capacity as a sovereign." *Edwards*, 78 F.3d at 1005. After all, this case involves the federal government's defense of policies enacted pursuant to its powers over immigration and naturalization, which flow in part from its powers as a sovereign. *See Arizona v. United States*, 567 U.S. 387, 395 (2012). On the other side of the ledger, the federal government's enactment of the PIP program implicates the States' "quasi-sovereign interests" in protecting its citizens and lawful permanent residents from crime, accidents, and other social costs associated with illegal immigration. *See* ROA.57-60, 154.

Nor have Appellants overcome this presumption of adequate representation. As described above, Appellants and the federal government do not have "different" interests, *Edwards*, 78 F.3d at 1005, but share the same ones. As Appellants have already conceded (at 43), they both "share a high-level goal of defending" the rule. And at a more granular level, the federal government also shares Appellants' narrower interest in ensuring "familial integrity," facilitating "work authorization," and freeing eligible aliens from "the fear of removal." Appellants' Br. 35. Indeed, the rule, identifies "family unity," "enabling paroled noncitizens to work lawfully," and "promoting stability and preventing avoidable disruptions to these families" as among the goals of the PIP program. 89 Fed. Reg. at 67,462. Nor have Appellants identified any way in which other, broader goals of the federal government might conflict with this narrower goal in the context of this litigation. *Supra* at 14-17. Thus,

Appellants have not shown that their "interest[s] will not be represented by" the federal government in the context of this litigation. *Edwards*, 78 F.3d at 1005.

## II. The District Court Did Not Abuse its Discretion in Denying Appellants Permissive Intervention.

Because the district court also acted well within the bounds of its capacious discretion by denying Appellants permissive intervention, the remainder of this appeal must be dismissed. Under Federal Rule of Civil Procedure 24(b)(1)(B), the district court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." "Permissive intervention is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Viterna*, 740 F.2d at 359. As a result, when the Court is "asked to review a denial of permissive intervention, the question on appeal is not whether 'the factors which render permissive intervention appropriate under Federal Rule of Civil Procedure 24(b) were present,' but it is rather 'whether the trial court committed a clear abuse of discretion in denying the motion.'" *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471 (5th Cir. 1984) (en banc) ("*NOPSI*") (quoting *Korioth v. Brisco*, 523 F.2d 1271, 1278 (5th Cir. 1975)).

**A.** This is an exceedingly high standard, requiring the existence of "extraordinary circumstances"—so much so that "a decision by any federal appellate court" reversing the denial of permissive intervention "is so unusual as to be almost unique." *Id.* In *United States Postal Service v. Brennan*, 579 F.2d 188 (2d Cir.1978), the court recited that it "ha[d] not found a single case in which a denial of permissive

intervention under Rule 24(b) was reversed solely for an abuse of discretion, and "s[aw] no reason to start with this case." *Id.* at 192. In the subsequent two decades, "there were apparently only two reported cases in which reversal was based solely on the district court's abuse in denying permissive intervention." Wright & Miller, *supra* § 1923 (citing *EEOC v. Nat'l Child.'s Ctr.*, 146 F.3d 1042 (D.C. Cir. 1998), and *Crumble v. Blumthal*, 549 F.2d 462 (7th Cir. 1977)).

Although it has become slightly more common in recent years for an appellate court to overturn the denial of permissive intervention, they have done so where the district court has made a legal error—not based on disagreement regarding how the court exercised its discretion. *Id.* § 1923 & n.19. For example, in *Cameron*, the Attorney General moved to intervene as a party after the State executive official named as a defendant abruptly decided to withdraw from defending the constitutionality of a state statute while it was on appeal. 595 U.S. at 272-73. The court of appeals denied leave to intervene because it was untimely and because the Attorney General had no interest in defending the law once the defendant had acquiesced. *Id.* The Supreme Court found that to have been an abuse of discretion because it was based "on an erroneous view of the law" regarding when a sovereign has an interest to defend its laws. *Id.* at 278-79 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, (1990)); *see also United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023) (reversing order denying permissive intervention where the district court's analysis was "expressly rejected" by binding precedent on timeliness); *accord Cawthorn v. Amalfi*, 35 F.4th 245, 255 (4th Cir. 2022) (allowing intervention only once "[t]he state board defendants' time to appeal ha[d] elapsed," leaving "no

party currently represent[ing the intervenor's] interest"). Likewise, in *Buck v. Gordon*, 959 F.3d 219 (6th Cir. 2020), the district court "applied the wrong standard" by "treat[ing] as dispositive" whether the parties and intervenors' "interests were 'aligned,'" without any consideration of whether there was any "risk of undue delay or prejudice to the existing parties." *Id.* at 225.

**B.**   As this Court has explained, the district court's consideration of a request for permissive intervention, should be guided by "among other factors, whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." *LULAC*, 884 F.2d at 189 (citing *NOPSI*, 732 F.2d at 472). It is likewise "proper for the court to consider the fact that the [proposed intervenor] has been granted *amicus curiae* status in th[e] case." *Viterna*, 740 F.2d at 359.

Here, the district court considered each of these factors. It first held that the "same presumption of adequate representation discussed above applies to the permissive-intervention analysis," citing this Court's decision in *LULAC*. ROA.701 (citing 884 F.2d at 189). It then turned to, and rejected, Appellants' argument "that their permissive intervention will significantly contribute to the full development of facts pertaining to the benefits of parole under the rule." ROA.701. As the court explained, any evidence they might wish to marshal and present on the merits would not be properly considered by the district court in assessing any of the eight APA claims brought by the States if that evidence is not already contained in DHS's administrative record. ROA.701. Appellants appear to concede (at 49-50) this to have been correct. They have little choice: It is black-letter law that "a court is

ordinarily limited to evaluating the agency's contemporaneous explanation in light of the existing administrative record." *Biden*, 597 U.S. at 811 (quoting *Dep't of Com. v. New York*, 588 U.S. 752, 780 (2019)); *see* ROA.701.

As to standing, it is *Texas* that has the burden to prove standing—not the federal government and not any intervenor—which it meets so long as it proves "a loss of even a small amount of money" that is traceable to the PIP program and redressable by an order setting that program aside. *Texas v. United States*, 50 F.4th 498, 518 (5th Cir. 2022). Although such evidence is solely in the hands of Texas, the federal government is hardly likely to allow such assertions to stand unchallenged. *See, e.g.*, *Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-cv-00007, 2024 WL 1021068 (Mar. 8, 2024) (appeal pending). To the extent that Appellants think they have unique evidence about the benefits Texas supposedly stands to gain from the program, it is legally irrelevant. *See Texas v. United States (DAPA II)*, 809 F.3d 134, 156 (5th Cir. 2015), *aff'd by an equally divided court*, 579 U.S. 547 (2016); *see also, e.g.*, *United States v. Texas (Priorities)*, 599 U.S. 670, 683 (2023) (citing *DAPA II*, 809 F.3d at 154, with favor); *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 26 (2020) (citing *DAPA II*, 809 F.3d at 155, with favor).

As for the "full development of facts related to the equitable-relief factors," the court concluded that Appellants' participation as a *party* "would not significantly amplify development of such facts," but that participation as *amici* to highlight those facts would be appropriate. ROA.702 (quoting *Hopwood*, 21 F.3d at 606). Appellants have already taken advantage of that opportunity once and submitted a lengthy brief in support of the federal government's effort to lift the administrative stay,

ROA.706-31—a stay that, ironically, this Court had to extend yet further to adjudicate whether Appellants should have been permitted to participate as parties rather than amici. *Compare* ECF 66, *with* ROA.738.

**C.**  Appellants clearly disagree with this analysis, but none of it constitutes an abuse of discretion—*i.e.*, "an erroneous view of the law or . . . a clearly erroneous assessment of the evidence." *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002). Appellants offer three arguments to the contrary, but none has merit.

*First*, Appellants rehash (at 46-47) their argument that they lack the same "ultimate objective" as the federal government because the federal government had a broader set of policy objectives in promulgating the rule, and that the district court's conclusion to the contrary runs afoul of *Brumfield*. This argument is wrong for the reasons already explained. *Supra* at 14-18. Namely, Appellants' *do* share the same "ultimate objective," as binding precedent defines it, as the federal government in ensuring survival of the PIP program. *Supra* at 14-16. Appellants fail to identify how the federal government's broader interests in *promulgating* the rule will lead to any misalignment in achieving the "ultimate objective" in this litigation of *defending* the rule. *Supra* at 16-17. And *Brumfield* is not to the contrary because that case involved a circumstance, unlike here, where the existing party intended to make an argument that was "significantly different from," and at odds with the position of, the proposed intervenors. *Supra* at 17-18 (quoting *Brumfield*, 749 F.3d at 346). Furthermore, although Appellants now define their "ultimate objective" (at 46) in this litigation as "protect[ing] themselves and their families from undue separation and familial hardship," that can only be obtained by obtaining parole, and nothing about the

claims or defenses in this litigation will bring about the grant of parole for any appellant.

*Second*, Appellants argue that (at 48-49) that the district court "erred when it proceeded under the misconception that there are only three relevant factors for permissive intervention" and "reli[ed] solely on" adequacy of representation to deny permissive intervention. But they cannot deny that this is a relevant consideration: This Court has, for decades, instructed district courts to consider "whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." *LULAC*, 884 F.2d at 189 (citing *NOPSI*, 732 F.2d at 472). Here, the district court did not rely "solely" on the adequacy-of-representation factor but also considered whether intervention "will significantly contribute to the full development of the facts pertaining to the benefits of parole under the rule." ROA.701-02. And it *did* consider "the extent of Appellants' interest" in the context of the intervention-by-right analysis, which properly informed the court's permissive-intervention analysis. *See* ROA.696; *see also LULAC*, 884 F.2d at 189 (assessing permissive-intervention request in the light of conclusions on intervention-by-right); *Kneeland*, 806 F.2d at 1289-90 (same). The court merely determined that Appellants had "an alternative means for protecting those interests," Appellants' Br. 49, via amicus participation. ROA.702 (quoting *Hopwood*, 21 F.3d at 606). Appellants' bare disagreement with these conclusions does not remotely resemble the few instances in which a federal appellate court has overturned the denial of permissive intervention in the last seven decades. *See supra* at 28-29.

*Finally*, Appellants argue (at 49-53) that the district court misapplied the "record rule," which is limited to the States' APA claims—not to questions of standing or remedy. This misstates the district court's order. The court quite plainly invoked the record rule as to the "adjudicative facts" relating to "*the merits of the APA claims.*" ROA.701 (emphasis added). As for other issues, such as "development of facts related to the equitable relief factors," the court determined that amicus participation was the more appropriate role for Appellants. ROA.701-02. Such a conclusion hardly constitutes an abuse of discretion, as it is a conclusion this Court frequently endorses. *See Hopwood*, 21 F.3d at 605-06; *Viterna*, 740 F.2d at 359; *NOPSI*, 732 F.2d at 473.

Precisely because Appellants can participate as amici in the district court—and, indeed, already have, *see* ROA.706-31—there is no merit to their argument (at 36, 53) that "the voices and experiences of Appellants will be left out altogether" and "families whose futures are directly at stake in this lawsuit[] will effectively be forced to watch from the sidelines as their lives are shaped by the outcome of this case." Appellants remain free to submit those views and evidence via an amicus brief, just as the district court indicated. *See* ROA.702.

## Conclusion

The Court should affirm the district court's order denying Appellants' motion for intervention by right. In all other respects—and particularly regarding the denial of the motion for permissive intervention—the appeal should be dismissed for lack of jurisdiction.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General


Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General

/s/ Lanora C. Pettit
Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

William F. Cole
Deputy Solicitor General

Counsel for Plaintiffs-Appellees

## Certificate of Service

On September 12, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
LANORA C. PETTIT

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,075 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
LANORA C. PETTIT