No. 24-40571

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

State of Texas; State of Alabama; State of Arkansas; State of Florida; State of Georgia; State of Iowa; State of Kansas; State of Louisiana; State of Missouri; State of North Dakota; State of Ohio; State of South Carolina; State of South Dakota; State of Tennessee; State of Wyoming; State of Idaho,

Plaintiffs - Appellees

v.

United States Department of Homeland Security; Alejandro Mayorkas, in his official capacity as Secretary for DHS; Ur Mendoza Jaddou, in her official capacity as Director of USCIS; Troy Miller, in his official capacity as the Acting Commissioner of CBP; Patrick J. Lechleiter, in his official capacity as the Acting Director of ICE; Office of Management and Budget; Shalanda Young, in her official capacity as the Director of the Office of Management and Budget,

Defendants - Appellees

Oscar Silva Perez; Natalie Taylor; Salvador Doe; Justin Doe; Carmen Miranda Zayas; Ricardo Ocampo Hernandez; Jessika Ocampo Hernandez; Foday Turay; Jaxhiel Turay; Genaro Vicencio Palomino; Cindy Siqueiros Maduena; Coalition for Humane Immigrant Rights,

Movants – Appellants

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, TYLER DIVISION NO. 6:24-CV-00306

# REPLY BRIEF OF APPELLANTS COALITION FOR HUMANE IMMIGRANT RIGHTS, JUSTIN DOE, SALVADOR DOE, CINDY MADUENA, JESSIKA OCAMPO HERNANDEZ, RICARDO OCAMPO HERNANDEZ, GENARO PALOMINO, OSCAR SILVA PEREZ, NATALIE TAYLOR, FODAY TURAY, JAXHIEL TURAY, AND CARMEN ZAYAS

*Esther H. Sung, Karen C. Tumlin, Hillary Li, Laura Flores-Perilla, Brandon Galli-Graves, Vanessa Rivas-Bernardy*
*Justice Action Center*
*P.O. Box 27280*
*Los Angeles, CA 90027*
*(323) 450-7272*

*Paige Austin, Harold Solis*
*Make the Road New York*
*301 Grove St.*
*Brooklyn, NY 11237*
*(718) 418-7690*

*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES .................................................................iv

INTRODUCTION ..................................................................................1

ADDITIONAL BACKGROUND ...........................................................2

ARGUMENT .........................................................................................4

   I.   The district court erred in denying intervention as of right based on its holding that Federal Defendants will adequately represent Appellants' interests..................................................................................4

     *A.*    *The presumption of adequate representation based on the "same ultimate objective" does not apply.* ...........................................6

     *B.*    *Even if the presumption of adequate representation based on the "same ultimate objective" applies, Appellants have rebutted it.* ...9

     *C.*    *The district court correctly declined to apply a presumption of adequate representation based on the Federal Defendants' status as governmental agencies.*........................................................................16

     *D.*    *Even if the presumption of adequate representation based on the Federal Defendants' status as governmental entities applies, Appellants have rebutted it.* .............................................................19

   II.  The district court abused its discretion in denying permissive intervention. .........................................................................................22

     *A.*    *The district court committed legal error in holding that Federal Defendants' representation is adequate.* ...........................................22

     *B.*    *The district court also committed legal error in holding that the record rule would prevent Appellants' contributions to the record and its development.* ..............................................................................23

     *C.*    *The district court abused dts discretion in failing to consider factors crucial to the permissive intervention analysis.* ....................26

CONCLUSION ....................................................................................31

CERTIFICATE OF SERVICE.............................................................33

CERTIFICATE OF COMPLIANCE ....................................................34

# TABLE OF AUTHORITIES

## Cases

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014)............................ passim

*Buck v. Gordon*, 959 F.3d 219 (6th Cir. 2020)...................................32, 36

*Bush v. Viterna*, 740 F.2d 350 (5th Cir. 1984).........................................34

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267 (2022) 32, 33, 36

*Cawthorn v. Amalfi*, 35 F.4th 245 (4th Cir. 2022) ..................................36

*Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312 (D.C. Cir. 2015) .....................................................................25

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996).......5, 19, 21, 23

*Entergy Gulf States La., LLC v. EPA*, 817 F.3d 198 (5th Cir. 2016) 19, 22

*Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536 (5th Cir. 2022) 12, 13

*Hopwood v. State of Texas*, 21 F.3d 603 (5th Cir. 1994) .........................34

*In re Volkswagen of Am., Inc.*, 545 F.3d 304 (5th Cir. 2008) ..................26

*Int'l Union v. Scofield*, 382 U.S. 205 (1965) ...........................................35

*Kneeland v. NCAA*, 806 F.2d 1285 (5th Cir. 1987) .............................9, 33

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185 (5th Cir. 1989) .....................................................................33

*Miller v. Vilsack*, No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022).......................................................................................................19

iv

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984)...............................................................27, 34

*NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, No. 20-50168, 2022 WL 17492273 (5th Cir. Dec. 7, 2022)......................................11, 19, 22

*SEC v. LBRY, Inc.*, 26 F.4th 96 (1st Cir. 2022).....................................11

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) .................................34

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472 (1st Cir. 2015) ........................................................9

*Texas v. Biden*, No. 3:22-CV-00780-M, 2022 WL 22858891 (N.D. Tex. May 26, 2022) ........................................................................21

*Texas v. U.S. Dep't of Energy*, 754 F.2d 550 (5th Cir. 1985)..................20

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ..............................5

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) ............................28

*Texas v. United States*, No. 6:21-CV-00003, 2021 WL 411441 (S.D. Tex. Feb. 6, 2021)........................................................................22

*Texas v. United States*, No. 6:23-CV-00007, 2023 WL 3025080 (S.D. Tex. Apr. 19, 2023) ........................................................................21

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) .......24

*U.S. Postal Serv. v. Brennan*, 579 F.2d 188 (2d Cir. 1978)....................30

*United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571 (5th Cir. 2023) ........................................................................36

*United States v. Texas*, 599 U.S. 670 (2023)..............................................4

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562 (5th Cir. 2016) .................................................................. 10, 19, 22, 31

**Statutes**

8 U.S.C. § 1182(a)(9)(B)(v) ......................................................... 2

8 U.S.C. § 1182(d)(5)(A) .............................................................. 3

8 U.S.C. § 1225(a)(1) ................................................................... 3

**Other Authorities**

Andrew R. Arthur, *Why Is 'Parole in Place' in the NDAA?*, CENTER FOR IMMIGRATION STUDIES (Dec. 26, 2019) .................................... 3

Implementation of Keeping Families Together ("KFT FRN"), 89 Fed. Reg. 67459 (Aug. 20, 2024) ...................................................... 17

Mem. in Supp. of Mot. to Intervene, *Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec'y*, No. 1:24-cv-01702-RC (D.D.C. July 19, 2024) ..................................................................... 21

National Defense Authorization for Fiscal Year 2020, Pub. L. No. 116-92, § 1758, 133 Stat. 1198 ....................................................... 3

Rep. in Supp. of Mot. to Intervene, *Las Americas Immigrant Advocacy Center v. DHS*, No. 1:24-cv-01702 (D.D.C. Aug. 9, 2024) ................... 30

Transcript of Final Pretrial Conference, *Texas v. DHS*, No. 6:23-cv-00007, 2024 WL 1021068 (S.D. Tex. Mar. 8, 2024) (ECF No. 276) ..... 15

**Rules**

Fed. R. Civ. P. 24(a) ........................................................... 11, 24

Fed. R. Civ. P. 24(b)(3) ....................................................... 30, 31

# INTRODUCTION

The Brief for Plaintiffs-Appellees, ECF. No. 77, confirms that the district court must be reversed for its failure to adhere to this Court's precedent when it denied Appellants' timely motion to intervene in Texas's lawsuit seeking to end Keeping Families Together ("KFT"). Like the district court, Texas puts all of its eggs into the supposed "presumption" that the federal government adequately represents Appellants' interests merely because they share the "ultimate objective" of defeating Texas's suit—but this Court has already rejected that very argument in materially indistinguishable circumstances, including in *Brumfield* and *Texas*.

Rather than trying to reconcile the controlling weight the district court gave a legal fiction (the presumption) rejected by this Court in recent decades, Texas invites the Court to contradict controlling precedent *sub silentio*, citing out-of-context quotations from older cases, while offering no legitimate reason to do so. Since no presumption of adequacy applied, Appellants were not required to show adversity of interests to be entitled to intervene as of right. The fact that Appellants have *also* shown that their interests are not aligned with the Federal

Defendants makes their right to intervention doubly clear. Were that not enough, the district court's permissive intervention analysis was laced with legal error, making it a *per se* abuse of discretion.

The district court erred and must be reversed.

## ADDITIONAL BACKGROUND

Because the merits of Texas's challenge to the KFT parole process are not before this Court, Appellants have not wasted this Court's time with explanations of the process, the lack of merit to Texas's claims, or the various reasons why Texas lacks standing. For the same reason, Appellants have not addressed the inaccuracies in Texas's description of the KFT parole process or the litigation in the district court to date (including but not limited to Texas's "Statement of the Case"), but Appellants feel compelled to address one issue.

Texas's central argument about the KFT parole process is that Congress allegedly requires individuals who entered without inspection to "leave the country and observe a waiting period before applying for admission or a visa." ECF No. 77 at 10. That is not true: Congress made this "waiting period" waivable, *see* 8 U.S.C. § 1182(a)(9)(B)(v), and the plain text of the Immigration and Nationality Act ("INA") makes clear

that individuals already present in the United States who have not previously been admitted are applicants for admission, 8 U.S.C. § 1225(a)(1), and therefore eligible for parole, 8 U.S.C. § 1182(d)(5)(A). Indeed, in 2019 Congress specifically "reaffirmed" "the parole in place authority of the Secretary of Homeland Security," recognizing that it pre-existed Congress's enactment of a provision that authorized the use of parole-in-place to permit individuals who have entered without inspection to adjust status without the alleged "waiting period" and without seeking a waiver. *See* National Defense Authorization for Fiscal Year 2020, Pub. L. No. 116-92, § 1758, 133 Stat. 1198, 1860-61. Even the anti-immigrant Center for Immigration Studies—usually in lockstep with Texas's legal positions on immigration—has conceded that Congress's legislation in 2019 "takes what had heretofore been an administrative interpretation of the INA and incorporates it into statute," and that future agency action based thereon "will set firmly on the rock of Congress's recognition of the authority of' DHS to grant "parole in place."'[1] In other words, there is nothing unlawful here, even

---

[1] Andrew R. Arthur, *Why Is 'Parole in Place' in the NDAA?*, CENTER FOR IMMIGRATION STUDIES (Dec. 26, 2019), https://cis.org/Arthur/Why-Parole-Place-NDAA.

assuming Texas has standing, which is wholly predicated on Texas's specious contention that it would be injured if some of its currently undocumented, longtime residents married to U.S citizens obtain green cards under the INA. *But see United States v. Texas*, 599 U.S. 670, 674 (2023) (holding that Texas "lack[s] Article III standing" to challenge the federal government's guidelines for immigration enforcement).

## ARGUMENT

### I. The district court erred in denying intervention as of right based on its holding that Federal Defendants will adequately represent Appellants' interests.

The district court erroneously denied Appellants' motion for intervention as of right based on its holding that Federal Defendants will adequately represent Appellants' interests in the litigation. As explained *infra*, the district court's ruling is at odds with this Court's precedent.

Texas argues that a presumption of adequate representation applies because both because Appellants and Federal Defendants share the same ultimate objective and because the existing representative is the government. Neither presumption applies. While Texas contends Appellants and Federal Defendants have the same ultimate objective because they share the goal of defending Keeping Families Together,

4

Appellants have made clear their interests "may not align precisely" with Federal Defendants'. *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014). And because Federal Defendants are not "a governmental body or officer charged by law with representing" Appellants' interests, *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015) (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)), the district court was correct to decline to apply the governmental-representation presumption.

Even if either presumption were to apply, Appellants have rebutted them. Appellants have met their minimal burden of showing that Federal Defendants' representation of Appellants *may* be inadequate because of "[t]he lack of unity in all objectives, combined with real and legitimate additional or contrary arguments." *Texas*, 805 F.3d at 663 (quoting *Brumfield*, 749 F.3d at 346).

In arguing that Federal Defendants adequately represent Appellants' interests, Texas seeks to avoid addressing the arguments and evidence Appellants would bring to this case to preserve *their* unique and deeply held interests in maintaining KFT. Irrespective of Texas's disinclination for Appellants' exercise of intervention to protect their

interests in the outcome of this litigation, such a preference cannot justify denying Appellants intervention as of right.

**A. *The presumption of adequate representation based on the "same ultimate objective" does not apply.***

Texas has failed to show that Appellants have the "same ultimate objective" as Federal Defendants. While it contends that the "same ultimate objective" presumption applies any time a proposed intervenor and existing party seek the same judgment in a case, ECF No. 77 at 24, such a rule is incompatible with this Court's ruling in *Brumfield.* In *Brumfield*, "[a]lthough both the state and parents vigorously oppose[d] dismantling the [school] voucher program," this Court found the presumption of adequate representation did not apply because "their interests may not align precisely," *Brumfield*, 749 F.3d at 345.

Here, just like the state and parents in *Brumfield*, Appellants and Federal Defendants share a goal—defending KFT—but their interests do not align precisely because Federal Defendants have many more interests to balance, including broad institutional ones related to the immigration system, foreign policy, national security, public safety, and border security. Opening Br. of Appellants, ECF No. 60 at 45. These interests that Texas tries to sweep away as "outside the courtroom"

interests, ECF No. 77 at 25, are precisely the types of interests this Court previously has recognized as creating a divergence of interests and therefore an inadequacy of representation. *See Texas*, 805 F.3d at 663 (recognizing the government's interests in "securing an expansive interpretation of executive authority, efficiently enforcing the immigration laws, and maintaining its working relationship with the States"). In contrast, Appellants have narrow interests in keeping their families together here and becoming eligible for work authorization.[2] *See* ECF No. 60 at 35-41.

Texas's attempt to distinguish *Brumfield* is unavailing. It argues that in that case "the State's 'more extensive interests' . . . had *already* ripened into a conflict," and suggests that Appellants therefore must show that "the federal government *will* sacrifice their interest." ECF No. 77 at 17 (emphasis added). But *Brumfield* requires no such thing. There, this Court found that no presumption of adequate representation applied because the parents' "only concern" was retaining a benefit—keeping

---

[2] *See, e.g.*, *infra* Section I.C.2 (discussing how Federal Defendants' interests in maintaining good relations with the States have led them to take a position on the States' ability to refuse to provide public higher education and other benefits to paroled noncitizens that is not aligned with Appellants' interests); *Texas*, 805 F.3d at 663 (the federal government taking a similar position on the issue of driver's licenses); *see also* ECF No. 60 at 48-49.

their school vouchers—and they did not share the government's additional interests. *Brumfield*, 749 F.3d at 346. This Court found that "all that the rule requires" is that Federal Defendants' more extensive interests *may* result in inadequate representation—not that they "will *in fact*" do so. *Id.* Particularly at this early stage in the proceedings— Appellants moved to intervene the first business day after the complaint was filed, less than a month ago—Appellants need not produce evidence that the interests *will* certainly come into conflict, nor must Appellants "explain how the federal government's broader set of interests . . . *will* cause imprecision or misalignment . . . ." ECF No. 77 at 25 (emphasis added). Indeed, in many of Texas's cited cases, intervention was decided at a later stage in the litigation, at which point the parties' arguments and evidence were more developed than they are here given the posture and timing of this case.[3] It is sufficient that Appellants have shown that

---

[3] *See, e.g.*, *Kneeland v. NCAA*, 806 F.2d 1285, 1287 (5th Cir. 1987) (affirming denial of first proposed intervenor's motion for intervention—filed over a month and a half after the complaint—because it would "cause undue and unnecessary delay in resolving the case," and affirming denial of another proposed intervenor's intervention—filed over four months after the complaint—because allowing such intervention eight days before the end of discovery and twenty days before the first phase of trial would "unduly delay the proceedings."); *see also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 474 (1st Cir. 2015) (denying intervention after motion was filed during the early stages of discovery). Where, like here, intervention is sought at the beginning of a case, conflicts between or misalignment of interests may not yet have arisen.

the Federal Defendants have "more extensive interests to balance than do [Appellants]." *Brumfield*, 749 F.3d at 346; *see also Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) ("Because intervention necessarily occurs before the litigation has been resolved, the [proposed intervenor] need only show that 'the representation *may* be inadequate.'") (quoting *Texas*, 805 F.3d at 662).

### B. *Even if the presumption of adequate representation based on the "same ultimate objective" applies, Appellants have rebutted it.*

Texas's contention that Federal Defendants adequately represent Appellants' interests comprises two main points: (1) the existence of additional arguments from Appellants cannot establish inadequate representation, and (2) none of the numerous adverse interests Appellants have raised are "germane to the case." ECF No. 77 at 18. Both are false.

**1.** Although Texas recognizes Appellants "intend to present additional arguments and evidence challenging [Texas's] standing, as well as on the injunctive-relief equitable factors," *id.*, Texas seems to suggest that additional arguments can *never* be sufficient to overcome the presumption of adequate representation, *see id.* at 18, 31 (quoting

*SEC v. LBRY, Inc.*, 26 F.4th 96, 99-100 (1st Cir. 2022)). But that is not *this* Circuit's law. As this Court has repeated time and again, "[t]he lack of unity in all objectives, combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate that the representation *may* be inadequate, so this requirement of Rule 24(a) is met." *Texas*, 805 F.3d at 663 (quoting *Brumfield*, 749 F.3d at 346); *accord, e.g., NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, No. 20-50168, 2022 WL 17492273, at *5 (5th Cir. Dec. 7, 2022). Texas is forced to rely on an out-of-circuit case to attempt to make its point because Fifth Circuit precedent stands in its way.

Texas also passingly cites *Guenther* for the proposition that a "[d]ifference[ ] of opinion regarding an existing party's litigation strategy or tactics used in pursuit thereof, without more, do[es] not rise to adversity of interest." ECF No. 77 at 18-19 (quoting *Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 543 (5th Cir. 2022)). But this is hardly the clincher Texas wishes it to be. For the reasons explained *supra* Section I.A., Appellants do not merely have "differing opinions" on trial strategy, but a host of divergent interests in defending KFT, different arguments they would advance if granted intervention, and distinct

impacts they would either suffer or stand to gain from the outcome of Texas's litigation. *See* ECF No. 60 at 44-60. Unlike Federal Defendants, Appellants' very lives, livelihoods, and families are on the line.

*Guenther* is inapposite for several other reasons. First, unlike here—where Appellants moved to intervene at the district court at the earliest possible opportunity, one business day after the complaint was filed—the *Guenther* proposed intervenors had "separately been engaged in an action against Defendant-Appellants," and waited through "five years of litigation, and on the eve of class certification . . . to intervene." *Guenther*, 50 F.4th at 539. Both parties "agreed that [the] motion should be denied." *Id.* That is not the case here, where Federal Defendants have taken no position on Appellants' intervention, and where this litigation presents Appellants' *only* chance to defend their interests in a case that may profoundly affect them for the remainder of their lives. Indeed, due to the district court's administrative stay that this Court recently extended, the case already is having such profound effects on Appellants.

Moreover, all *Guenther* appellants could muster was a "slew of negligible or spurious differences . . . ." *Id.* at 544. They could not "point to an interest of theirs that is unique to and—at a minimum— *potentially*

in conflict with those of the [existing] plaintiffs." *Id.* at 545. In contrast, Appellants here—potential beneficiaries of the challenged immigration process—have largely identical interests as the potential immigrant beneficiary-appellants in *Texas*, which this Court found sufficient to support intervention. *Compare Texas,* 805 F.3d at 663, *with* ECF No. 60 at 19, 29-30, *and* ROA.265-272.

As much as Texas may wish to rewrite the longstanding precedent that applies to the Appellants in this case, this Court's law is clear: either additional *or* contrary arguments are sufficient to demonstrate inadequacy of representation. Appellants have more than met this burden.

**2.** Texas additionally argues that various of Appellants' adversities of interest are not "'germane to th[is] case.'" ECF No. 77 at 28 (quoting *Texas*, 805 F.3d at 662). First, Texas takes issue with Appellants' adversity with the federal government over the States' ability to refuse to provide public higher education and other benefits to paroled noncitizens. ECF No. 77 at 28-29; *see also* ECF No. 60 at 48-49. Specifically, Texas contends that "because the question of the availability of public benefits for noncitizens is not at issue in this case, any dispute

between Appellants and the federal government about whether they should be eligible for state-provided public benefits is simply not germane to the case . . . and thus not relevant to the question of intervention." ECF No. 77 at 29 (quotations omitted).

But Texas itself has injected the question of public benefits into this case, by claiming harm due to the cost of such benefits it must provide to undocumented individuals eligible for Keeping Families Together. The Federal Government has responded in turn, making this a legitimate dispute in the case. The question of in-state tuition and other similar benefits is therefore just as much at issue in this case as was the question of availability of driver's licenses in *Texas*. *See Texas*, 805 F.3d at 663. In *Texas*, the "Government ha[d] taken the position that the States may refuse to issue driver's licenses to deferred action recipients." *Id.* Federal Defendants have charted an identical path here, arguing that "to the extent there are any costs for public higher education or other benefits provided to paroled noncitizens, those costs are attributable to the States' own choices concerning eligibility for in-state resident tuition or participation in certain benefit programs." ROA.655. It is hard to imagine how this issue *couldn't* meet the low bar of "relevance" to the case, when

Texas raised the issue, and Federal Defendants have taken their position "[i]n order to undermine the States' standing argument." *Texas*, 805 F.3d at 663. It is already a point of contention between the parties, and "[Federal Defendants'] position is directly adverse to [Appellants]," whose eligibility is at stake. *Id.*

Next, Texas argues that any adversity evident in Federal Defendants' statements that it retains the right to take enforcement actions against KFT-eligible noncitizens is likewise not germane to the case. ECF No. 77 at 29-30. Texas is wrong for the same reasons it is wrong regarding the issue of public higher education benefits: Federal Defendants' claim runs directly contrary to Appellants' interests in being protected against deportation and remaining with their families in the United States, and it could easily lead to differences in how Appellants and Federal Defendants advance arguments in this case.

Besides, Texas's assertion that "[n]othing in the States' complaint puts at issue the scope or nature of the federal government's parole authority *outside* of the context of [KFT]" is disingenuous, to say the least. ECF No. 77 at 30. *Any* ruling holding a parole process unlawful could prescribe limits on the authority generally, outside the scope of

KFT. Indeed, in other recent litigation challenging the parole process for individuals from Cuba, Haiti, Nicaragua, and Venezuela ("CHNV"), Texas readily admitted as much. When questioned in court as to why it had not challenged the Uniting for Ukraine parole process even though it was functionally identical to the CHNV process, Texas replied, "[W]e don't have to challenge everything, right? We create precedent. And if the precedent we create would show later that the program is also unlawful for the same reasons, we don't have to actually file litigation, right?" Transcript of Final Pretrial Conference at 91, *Texas v. DHS*, No. 6:23-cv-00007, 2024 WL 1021068 (S.D. Tex. Mar. 8, 2024) (ECF No. 276).

Notably, Texas does not argue that Appellants' additional or contrary arguments regarding standing, the balance of harms and public interest elements for injunctive relief, nor the substantively different discovery Appellants would take from the parties are not "germane" to the case. As to both standing and the equitable factors, Texas merely alleges these arguments are not "contrary" to the federal government's arguments, and thus not cognizable. ECF No. 77 at 31. This is overly reductive and wrong as a matter of law for the reasons outlined *supra* at

pages 9-12. And Texas makes *no* mention of Appellants' argument on discovery. For all these reasons, Texas's arguments fail.

Because Appellants have pointed to numerous adverse interests, raised "real and legitimate" additional *and* contrary arguments to those Federal Defendants have made, and connected these diverse interests and arguments to "concrete effects on the litigation," *Texas*, 805 F.3d at 662, this Court should reverse the district court's denial of intervention as of right.

### C. *The district court correctly declined to apply a presumption of adequate representation based on the Federal Defendants' status as governmental agencies.*

The district court properly declined to apply a presumption of adequate representation simply because federal agencies and officers are the defendants. This is consistent with this Court's recent precedent, which has held that such a presumption applies only "when the putative representative is a governmental body or officer *charged by law with representing the interests of the [intervenor].*" *Texas*, 805 F.3d at 661 (quoting *Edwards*, 78 F.3d at 1005) (emphasis added).[4] Texas cites no

---

[4] *Accord NextEra Energy*, 2022 WL 17492273, at *4 (holding that a presumption of adequate representation applies when "the putative representative[] . . . is a governmental body or officer *charged by law with representing the interests of the*

16

law charging the federal government with representing Appellants'
interests. To the contrary, Federal Defendants represent the interests of
the agencies, which not only have the authority to grant or deny
Appellants' applications under KFT, but also to terminate "at any time"
any parole granted through KFT, Implementation of Keeping Families
Together ("KFT FRN"), 89 Fed. Reg. 67459, 67463 (Aug. 20, 2024), and
"to take enforcement actions in accordance with the INA" against
individuals such as Appellants. *Id.* at 67465. Such actions are
indisputably adverse to Appellants' interests in remaining with their
families, maintaining safety and stability in the United States,
requesting employment authorization, and building their families and
futures without fear that removal will tear it all away.

Texas now asks this Court to apply the "government-
representative" presumption on appeal by citing decades-old cases, or
otherwise selectively and misleadingly quoting from this Court's
precedent to suggest that the presumption applies whenever a

---

*intervenor*" (emphasis added) (internal punctuation and citation omitted)); *Miller v.
Vilsack*, No. 21-11271, 2022 WL 851782, at *2 (5th Cir. Mar. 22, 2022) (same); *Wal-
Mart Stores,* 834 F.3d at 569; *see also Entergy Gulf States La., LLC v. EPA*, 817 F.3d
198, 203 (5th Cir. 2016) (holding that the presumption "arises where one party *is a
representative of the absentee by law*." (emphasis added) (internal citation omitted));
*Brumfield*, 749 F.3d at 345 (same).

governmental entity or officer is involved in a lawsuit. *See* ECF No. 77 at 33 (suggesting that the presumption applies "in cases where 'the existing representative in the suit is the government.'") (quoting *Texas v. U.S. Dep't of Energy*, 754 F.2d 550, 553 (5th Cir. 1985)); *see also id.* at 34 (omitting the language "charged by law with representing the interests of the absentee" when quoting *Edwards*, 78 F.3d at 1005, for the proposition that "the presumption applies 'when the putative representative is *a governmental body or officer*'" (Texas's emphasis)).

In addition to being contrary to this Court's precedent, Texas's argument creates absurd results. If Texas's interpretation of the law controlled, then intervention—either as of right or permissive—would never be warranted whenever a governmental entity is a party to a lawsuit. But this Court's precedent permitting intervention in lawsuits involving local, state, and federal government entities, as well as multiple recent district court cases applying Fifth Circuit law to do the same, shows that Texas's gloss on the law is incorrect. *E.g.*, *Texas*, 805 F.3d at 658; *Texas v. United States*, No. 6:23-CV-00007, 2023 WL 3025080 (S.D. Tex. Apr. 19, 2023); *Texas v. Biden*, No. 3:22-CV-00780-M, 2022 WL 22858891 (N.D. Tex. May 26, 2022); *Texas v. United States*, No.

6:21-CV-00003, 2021 WL 411441, at *4 (S.D. Tex. Feb. 6, 2021); *see also NextEra Energy*, 2022 WL 17492273, at *4-5; *Entergy*, 817 F.3d at 203; *Brumfield*, 749 F.3d at 345; *cf. Wal-Mart Stores*, 834 F.3d at 569 (noting "the broad policy favoring intervention in our precedent"). No law charges the Federal Defendants with representing Appellants' interests, and thus no presumption of adequate representation applies. *See, e.g.*, *Entergy*, 817 F.3d at 203 (holding that the governmental-representative presumption does not apply because "[i]n this case, there is no suggestion that EPA is a representative of Sierra Club [the proposed intervenor] by law").

**D. *Even if the presumption of adequate representation based on the Federal Defendants' status as governmental entities applies, Appellants have rebutted it.***

To the extent this Court agrees with Texas that a presumption of adequate representation applies whenever a government entity is a party, Appellants have overcome that presumption by showing "that [their] interest is in fact different from that of the governmental entity and that the interest will not be represented by it." *Texas*, 805 F.3d at 662 (cleaned up) (quoting *Edwards*, 78 F.3d at 1005). Appellants' narrow and personal interests in keeping their families together, seeking work

authorization, building their futures in the states they call home, and being free of the fear of removal do not align with, and in fact diverge from, the Federal Defendants' broader, institutional interests. *See supra* Sections I.A-I.B; *see also* ECF No. 60 at 47-48. Appellants have also shown how Federal Defendants' interests in "securing an expansive interpretation of executive authority, efficiently enforcing the immigration laws, and maintaining its working relationship with the States," *Texas*, 805 F.3d at 663, have already led to divergent legal positions by Federal Defendants that Appellants would not take. *See supra* Section I.B; *see also* ECF No. 60 at 48-49 (highlighting Federal Defendants' emphasis on their enforcement authority and describing how Federal Defendants suggest the States may refuse to provide in-state resident tuition to noncitizens). As the Supreme Court noted in *Trbovich v. United Mine Workers of America*, the multiple interests that a government entity serves "may not always dictate precisely the same approach to the conduct to the litigation." 404 U.S. 528, 539 (1972). Accordingly, even if a government entity "is performing [its] duties, broadly conceived, as well as can be expected," a proposed intervenor with a protectable interest in the litigation "may have a valid complaint about

the performance" of that government entity in the litigation—and that complaint "should be regarded as sufficient to warrant relief in the form of intervention under Rule 24(a)(2)." *Id.*

Indeed, as Texas itself acknowledged two months ago in a case where it was the would-be intervenor, courts "look skeptically on government entities serving as adequate advocates for private parties."[5] Mem. in Supp. of Mot. to Intervene at 26, *Las Americas Immigrant Advoc. Ctr. v. U.S. Dep't of Homeland Sec'y*, No. 1:24-cv-01702-RC (D.D.C. July 19, 2024) (ECF No. 19-1) (quoting *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 321 (D.C. Cir. 2015)). Here, Federal Defendants have multiple interests to balance in its litigation of this case, most of which interests Appellants do not share. "We cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, but surely they might, which is all that the rule requires." *Brumfield*, 749 F.3d at 346.

---

[5] Indeed, Texas cites that precedent to argue that it is entitled to intervene even while conceding it has the same goal as the federal government—defending the legality of the asylum ban challenged there. *See* Mem. in Supp. of Mot. to Intervene at 6, 26, *Las Americas Immigrant Advoc. Ctr*, No. 1:24-cv-01702-RC.

## II. The district court abused its discretion in denying permissive intervention.

If this Court does not reverse (or reach) the district court's conclusion regarding intervention as of right, this Court should reverse the denial of permissive intervention. In urging otherwise, Texas relies on decades-old caselaw to argue such reversal is vanishingly rare. But this Court, other Courts of Appeals, and even the Supreme Court have reversed denials of permissive intervention, including for the reasons presented here.

### A. The district court committed legal error in holding that Federal Defendants' representation is adequate.

The district court denied permissive intervention in part based on its same faulty legal conclusion that Appellants had not met their minimal burden to show that Federal Defendants may not adequately represent their interests. *See supra* Section I. This was an abuse of discretion. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir.

2008) (stating that reliance on "erroneous conclusions of law" or misapplication of law to facts constitutes an abuse of discretion).

### B. The district court also committed legal error in holding that the record rule would prevent Appellants' contributions to the record and its development.

The district court also abused its discretion in concluding that Appellants will not significantly contribute to factual development of the record. *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984). The district court dismissed Appellants' crucial contributions to the record as legally barred by the "record rule," which restricts aspects of APA review to the administrative record, or as redundant of the Federal Defendants' evidence. ROA.701-702. Neither conclusion is correct: the district court misconstrued the record rule and Appellants have set forth specific evidence they intend to introduce that Federal Defendants will not.

Texas does not dispute that the litigation will draw on facts outside the administrative record, particularly as to standing, nor that Appellants stand ready to adduce new record evidence. ECF No. 77 at 38-39. Instead, it repeats its self-serving and patently false claim that evidence of standing "is solely in the hands of Texas." *Id.* at 30. As

Appellants already pointed out, *see* Appellants' Mot. to Expedite, ECF No. 51 at 3 n.2, that is nonsense. The declarations Texas provided in support of its request for preliminary relief contain no reference nor even relevance to the KFT-eligible population in Texas, suggesting the state has virtually no idea how it may be impacted by the process. *See* ROA.163-192. Appellants, meanwhile, seek to introduce evidence undercutting Texas's showing—none of which is barred by the record rule.

Next, Texas attempts to dismiss any evidence that Appellants would adduce of the benefits of KFT parole as "legally irrelevant." ECF No. 77 at 39 (citing *Texas v. United States*, 809 F.3d 134, 156 (5th Cir. 2015)). But Texas bases its standing largely on healthcare and education costs, which it claims *will not decrease* as they might in the absence of KFT parole. *See* ECF No. 60 at 52. The impact of KFT parole on those very costs—evidence that Appellants, but likely not Federal Defendants, stand ready to introduce—is squarely relevant and, indeed, likely dispositive. Appellants' evidence also goes to questions of remedy, *id.* at 63, and other injunctive factors that require more than mere legal

argument. *Cf.* ROA.702 (stating that Appellants can instead assist the Federal Defendants in "highlighting any evidence").

Recognizing that factual disputes will go to the heart of this litigation, Texas now offers that "the federal government is hardly likely to allow [the state's] assertions to stand unchallenged," ECF No. 77 at 39. Such faint praise for defendants is hardly responsive to whether Appellants would significantly contribute to the record. *Cf.* ECF No. 60 at 53 (noting that in a recent case with overlapping counsel, intervenors "introduced more than twenty fact and expert declarations on issues of standing, relief, and the historical use of the statutory parole authority"). Appellants have identified several ways they and they alone will significantly develop the record—all of it highly relevant and admissible, the record rule notwithstanding.

This Court should not accept Texas's attempt to insulate its tenuous assertions of harm from judicial inquiry and scrutiny. Appellants' evidence is not barred by the record rule and the court committed legal error in holding otherwise. *Cf.* ROA.701.

**E. *The district court abused its discretion in failing to consider factors crucial to the permissive intervention analysis.***

The district court also failed to utilize the proper legal standard in denying permissive intervention. *See* ROA.701-702. In defending the district court's reasoning, Texas attempts to dress up the opinion with lipstick of its own—but it cannot conjure the necessary analysis where none exists. ECF No. 77 at 41-42. Despite Texas's best attempt at rewriting the decision below, the district court committed legal error by ignoring factors favorable to Appellants and relying solely (if erroneously) on factors it found counter to permissive intervention. The cases cited by Texas only underscore the error.

Presented with a motion for intervention, courts are required to consider whether intervention would cause prejudice. Fed. R. Civ. P. 24(b)(3); *see also U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (calling this the "principal consideration" for intervention). This factor is critical, both because (i) it is the only explicit factor listed as controlling permissive intervention under Rule 24(b), and (ii) it matters not only to the parties but also to Appellants, whose efforts at timeliness and mitigation of prejudice may undercut their ability to predict the

contours of future litigation. *See Wal-Mart Stores*, 834 F.3d at 569 ("[I]ntervention necessarily occurs before the litigation has been resolved").

Since Appellants filed one business day after the case began, and complied with an extremely expedited schedule thereafter, that factor clearly cuts in their favor. Yet the district court ignored it, instead obliquely suggesting that intervention necessarily slows litigation, even though Appellants have given every indication they will meet the court's tight deadlines to minimize delay. ROA.702. That turns this Court's "broad policy favoring intervention" on its head. *Cf. Wal-Mart Stores*, 834 F.3d at 569. It is hard to imagine intervenors acting more diligently than Appellants have here and thereby doing more to avoid prejudice to the parties. Ignoring that, much less inverting the standard to assume prejudice from *any* intervention, is legal error. *Cf. Buck v. Gordon*, 959 F.3d 219, 225 (6th Cir. 2020) (reversing denial of permissive intervention because in failing to analyze "the risk of undue delay or prejudice to the existing parties, which plainly favored the [proposed intervenors], the district court applied the wrong standard").

The court also must consider the extent and nature of the proposed intervenors' interest—another factor strongly in Appellants' favor. Indeed, in another case on which Texas relies, ECF No. 77 at 37, the Supreme Court held that failure to consider "the strength of [the intervenor's] interest" in adjudicating a motion for permissive intervention is an abuse of discretion. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 278-79 (2022).

Yet that is precisely what the district court did here. A week after KFT parole began, every appellant family had already submitted an application, the culmination of months of planning for what each described as a life-changing opportunity. The district court mentioned none of that. Texas hopes to mask this omission by pointing to the court's glancing concession that Appellants have a protectible interest for purposes of intervention as of right. ECF No. 77 at 41 (citing ROA.696).[6] But the two forms of intervention are distinct, with discrete legal requirements—and nowhere did the court consider the "strength" of

---

[6] Texas cites two cases to suggest this is permissible. But in neither case did an appellate court infer from the lower court's discussion of a protectible interest, for purposes of intervention as of right, an adequate consideration of the interest in permissive intervention. ECF No. 77 at 41 (citing *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989); *Kneeland*, 806 F.2d at 1289-90).

Appellants' interest when it denied permissive intervention. *Cf. Cameron,* 595 U.S. at 278.

Nor did the district court consider whether Appellants have an alternative method of protecting their interests. Texas seeks to rewrite the district court's decision by suggesting that "court determined that amicus participation was the more appropriate role for Appellants." ECF No. 77 at 42. But the district court never actually drew this conclusion. ROA.701-702. Even if Texas's conclusion-by-allusion is permissible, the district court never explained how amicus status would protect appellants' interests, given the limitations normally imposed on amici rather than intervening parties.[7] *Cf. Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994) (reviewing "the legal rights associated with formal intervention, namely the briefing of issues, presentation of evidence, and

---

[7] By contrast, in cases Texas cites to urge this Court to find Appellants' status as amicus curiae sufficient, ECF No. 77 at 42, intervenors did not purport to help develop the record. *Bush v. Viterna*, 740 F.2d 350, 357 (5th Cir. 1984) (intervenor has "not demonstrated that it has anything to contribute to this lawsuit beyond underlining the positions already taken by the Commission"); *New Orleans Pub. Serv., Inc.*, 732 F.2d at 473 (intervenors "will not add to the relevant factual development of the case"). And in *Hopwood v. State of Texas*, intervenors were in a materially different position, having moved only after nearly a year and a half of litigation, leading the district court to conclude "adding them to the lawsuit would needlessly increase costs and delay disposition of the litigation." 21 F.3d 603, 606 (5th Cir. 1994).

ability to appeal"). The distinction is succinctly stated by Texas itself, in recent litigation in which it sought intervention:

> [R]elegation to the status of amicus curiae also would not adequately protect Texas's interests. The role of an amicus curiae is inferior to that of an intervenor. *See Int'l Union v. Scofield*, 382 U.S. 205, 208-09 (1965) (noting that a party was "denied intervention and *relegated* to the status of an amicus curiae"); *id.* at 214–16. For Texas, status as only an amicus curiae would be insufficient for it to adequately participate in the full course of the case and to ensure its interests are protected. To be sure, as an amicus curiae, Texas would be allowed to file a brief. But it would not be allowed to participate in discovery, pretrial hearings, motion practice, oral arguments, offer evidence, file appeals, designate the record, or exercise other rights afforded to intervenors. *Id.* at 215–16.

Rep. in Supp. of Mot. to Intervene at 7 n.3, *Las Americas Immigrant Advocacy Center v. DHS*, No. 1:24-cv-01702 (D.D.C. Aug. 9, 2024) (ECF No. 40).

In failing to consider the lack of prejudice from intervention, the extent of Appellants' interests, or alternatives to their participation as parties, the district court used an erroneous legal standard. The cases Texas cites for the proposition that legal error is typically required to reverse a denial of permissive intervention, *see* ECF No. 77 at 37-38, only prove the point. In *Buck v. Gordon*, the Sixth Circuit found that the district court committed legal error—and thus an abuse of discretion—

when it failed to consider factors relevant to permissive intervention, such as lack of prejudice. 959 F.3d at 225;[8] *see also Cameron*, 595 U.S. at 278-79 (reversing for failure to consider intervenors' interest).[9] So too here.

## CONCLUSION

For the foregoing reasons and those stated in Appellants' opening brief, this Court should reverse the district court order denying Appellants' intervention motion and issue the mandate forthwith.

In addition, although Appellants may soon move this Court to vacate its *sua sponte* extension of the district court's unreasoned, *sua sponte* issuance and extension of an "administrative stay," Appellants urge the Court to immediately do so *sua sponte*.

---

[8] In *Buck*, the court further noted that the district court's denial of the intervention motion without prejudice "to allow its renewal," just as the court did here, *see* ROA.702, supported its decision to reverse because that conclusion "is difficult to square with Federal Rule of Civil Procedure 24(b). Timeliness of the motion is one of the primary factors. It makes little sense then to invite the [intervenors] to renew their motion for intervention at some unspecified point in the future, when their motion will be less timely, and the case will have progressed to a point where undue delay or prejudice to the existing parties is more probable." 959 F.3d at 225.

[9] Two other cases found error in district courts' conclusion that intervention was untimely. *United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023); *Cawthorn v. Amalfi*, 35 F.4th 245, 255 (4th Cir. 2022). Far from showing reversal is never warranted, these cases demonstrate the significance of timeliness as a consideration. Here, there is no dispute Appellants' motion was timely. ROA.701.

Dated: September 16, 2024          Respectfully submitted,


*/s/ Esther H. Sung*

Esther H. Sung
Karen C. Tumlin
Hillary Li
Laura Flores-Perilla
Brandon Galli-Graves
Vanessa Rivas-Bernardy
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

Paige Austin
Harold A. Solis
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Telephone: (718) 418-7690
Facsimile: (866) 420-9169

*Counsel for Appellants*

## CERTIFICATE OF SERVICE

I, Esther H. Sung, hereby certify that on September 16, 2024, I caused the foregoing Reply Brief of Appellants to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit via the CM/ECF system, which will send a notice of this filing to counsel for Plaintiffs-Appellees and Defendants-Appellees.

/s/ Esther H. Sung
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272

*Counsel for Movants-Appellants*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify the following:

1. The foregoing brief complies with the length limitations of Rule 27(d)(2)(A). The brief contains 6,497 words according to the Microsoft Word word-counting function, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times Century Schoolbook type style.

Dated: September 16, 2024

> */s/ Esther H. Sung*
> Esther H. Sung
> Justice Action Center
> P.O. Box 27280
> Los Angeles, CA 90027
> Telephone: (323) 450-7272
>
> *Counsel for Appellants*