

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 24-40571

| | | |
|---|---|---|
| State of Texas et al. | : | Order to Show Cause |
| *Appellants,* | : | on Petition for Writ of |
| v. | : | Mandamus |
| | : | |
| Department of Homeland Security, | : | September 14, 2024 |
| | : | |
| *Respondent,* | : | |

## MOTION FOR WRIT OF MANDAMUS AGAINST JOHN CAMPBELL BAKER, JUDGE, U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS

## JURISDICTION

As will be discussed below, jurisdiction of this Court over this Motion at this time is set forth in *Evaporated Milk Ass'n v. Roche*, 130 F. 2d 843 (9th Cir. 1942), *reversed on other grounds, Roche v. Evaporated Milk Ass'n.* 319 U.S. 21 (1943).

## PROCEDURAL HISTORY

9/6/2024 Petition for Writ of Error *Coram Nobis* and Motion for Declaratory Judgment that Joseph Bidden and Kamala Harris are Guilty of a Crime Against Humanity and Genocide delivered to District Court.

9/10/2024 This Court Ordered an Expedited Appeal in this case.

9/11/2024 Petitioner advised by the Clerk of the District Court that his Petition for Writ of Error Corum Nobis was received but not filed. Petitioner was further advised the Petition was being held in chambers by Judge Baker.

9/13/2024 Petition for Writ of Error *Coram Nobis* still not filed.

1

# THE FILING OF A PETITION FOR WRIT OF ERROR *CORAM NOBIS* WAS ENTIRELY APPROPRIATE IN THIS CASE

The Writs OF *Quae Coram Nobis Resident* ("Let the record remain before us" when applied to King's Bench) and *Quae Coram Vobis Resident* ("Let the record remain before you" (when applied to the Court of Common Pleas) were created in England by the *Curia Regis* ("Royal Council") which consisted of the King of England and his most loyal advisors) in the Eleventh Century. In English Law, the definition of "*coram nobis*" evolved and is now re-defined as a remedy for a court to correct its own error. Daniel F. Piar, Using *Coram Nobis* to Attack Wrongful Convictions, a New Look at an Ancient Writ, N. Ky. Law Review 505 (2003). As the Supreme Court has stated, "It cannot be questioned that the appropriate use of the writ of error *coram vobis* is to enable a court to correct its own errors -- those errors which precede the rendition of judgment." *Pickett's Heirs v. Legerwood*, 32 U.S.144, 147 (1833

Writs of *Coram Nobis* have also been used in criminal proceedings to re-open or set aside judgments or convictions previously entered. In this regard, Congress has on occasion limited the use of Writs of *Coram Nobis* in criminal proceedings. At one point, Congress put a Statute of Limitations on the Writ in criminal proceedings, The legislation limited the use of a Writ of *Coram Nobis* to five years after the Judgment or conviction in a criminal trial was entered. More recently, Congress banned the use of the Writ in criminal proceedings entirely. Rule 60 (e), Fed. R. Civ. P. This has not, however, limited the use of a Writ of Error *Coram Nobis* in a civil proceeding prior to judgment.

In *Strode v. The Stafford Justices*, 23 F. Cas. 236 (C.C.D. Va 1810) (No. 13,537) a defendant in a civil case attempted to re-open a judgement in a civil case using a Writ of Error *Coram Nobis*. Since more than five years had passed since the civil judgment had entered, the plaintiff defended that the Statute of Limitations bared the Writ of Error *Coram Nobis* filed by the defendant. Supreme Court Chief Justice Marshall, sitting on the Bench of what is now the 4th Circuit Court of Appeals, ruled in favor of the defendant holding that the Writ of Error *Coram Nobis* was not covered by the Statute of Limitations covering Writs of *Coram Nobis*. That same precedent applies to this Court.

A Writ of Error *Coram Nobis* is a step in the original case and not the beginning of a separate proceeding. As a result, district courts must file Petitions for Writs of *Error Nobis* under the original case number. *Telink, Inc. v. U.S.*, 24 F.3d 42, 46 (9th Cir. 1994) Further, when a Petition for a Writ of Error *Coram Novis* is filed with the Court, it must be docketed and the Petition must be ruled upon. This is because district court decisions on Petitions for a Writ of Error *Coram Novis* are reviewable on appeal. *See*, U. S. Circuit Court of Appeals for the Fifth Circuit Rule 4 which provides: (C) An appeal from an order granting or denying an application for a writ of error coram nobis is an appeal in a civil case for purposes of Rule 4(a). Generally, the standard of review is that any district court's determinations on questions of law are reviewed *de novo*, but that district court's determinations on questions of fact are reviewed for clear error (or clearly erroneous error). Under *de novo* review of federal *coram nobis* cases, the appellate court acts as if it were considering the question of

law for the first time, affording no deference to the decision of the district court. Under Clear Error review of federal *coram nobis* cases, the appellate court must have a "definite and firm conviction that a mistake has been committed" by the district court. *Concrete Pipe & Products of Cal. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 622 (1993)

If the Petition and Motion for Declaratory Judgment then Petitioner attempted to file in the District Court are successful, it totally changes the legal landscape of this litigation and brings into question the decisions in prior cases between the United States including, but not limited to, *Biden v. Texas*, 597 U.S.. Once the Petitioner establishes that the Obama and Biden Administrations have violated International Law and the United Nation Conventions, the United States Constitution's Supremacy nrvrddsry Clause no longer necessarily determines the outcomes. That is why it is absolutely necessary for this Court to determine the merits of the Petition and the pending Motion before reaching the merits of the current controversy.

## THE *EVAPORATED MILK ASS'N* LITIGATION

In the action by Evaporated Milk Association and others against Honorable Michael J. Roche, Judge of the District Court of the United States for the Northern District of California, Southern Division for a Writ of Mandamus to compel Judge Roche to try the issue raised by petitioners' plea in abatement. The Circuit Court

after hearing en banc issued the Writ of Mandamus. The rationale of the Circuit Court in issuing the Writ of Mandamus was as follows:

> The law provides that this court can issue a writ of mandamus to the District Court only when such writ is in aid of its appellate jurisdiction. ... Congress, on the 9th day of May, 1942, amended the law concerning criminal appeals by providing that the United States has a right of appeal from a decision of the trial court in a criminal case on a plea in abatement. Public Laws 543, 77th Congress, ch. 295, 2d session. 18 U.S.C.A. § 682. This court is thereby given appellate jurisdiction over a decision of the trial court in the event that the decision is unfavorable to the government. The trial court, by striking out the pleas in abatement, makes it impossible for the decision of the trial court on the issues raised by the pleas to reach this court. The fact that the statute only permits an appeal from a judgment adverse to the government does not circumscribe our power to control the conduct of the trial court, for it may be when properly determined the decision of the trial court would be adverse to the government. The effect of the decision of the trial judge striking out the pleas is to prevent the entry of an appealable judgment. *Ibid.*, 130 F.2d at 844-845

In reaching its conclusion, the Court cited a Supreme Court case directly on point.

> In a recent case, Ex parte United States, 287 U.S. 241, 53 S.CT. 129, 130, 77 L. ED. 285, the Supreme Court issued a writ of mandamus to compel the trial court to issue a warrant upon an indictment notwithstanding the contention that the trial judge had exercised his discretion in refusing the warrant. In determining its jurisdiction to entertain the application the Supreme Court approved the rule in McClellan v. Carland, 217 U.S. 268, 280, 30 S. Ct. 501, 54 L. Ed. 762, laying down a general rule applicable alike to the Supreme Court and the Circuit Court of Appeals, namely: "That the power to issue the writ under R.S. § 716 [28 U.S.C.A. 377] is not limited to cases where its issue is required in aid of a jurisdiction already obtained, but that 'where a case is within the appellate jurisdiction of the higher court a writ of mandamus may issue in aid of the appellate jurisdiction which might otherwise be defeated by the unauthorized action of the court below,'" citing, among other cases, Barber Asphalt Pav. Co. v. Morris, 132 F. 945, 67 L.R.A. 761, supra. *Id.* at 845.

5

In reaching its conclusion, the Circuit Court rejected the Government's argument that the dismissal of the Plea in Abate was a sufficient order to allow an appeal. This is how the Circuit Court justified the rejection of the Governments argument.

> It is contended by the respondent that the order of the trial court striking out the pleas of the petitioners was in effect an adjudication that the pleas did not state facts sufficient to show that the proceeding should abate. Consequently, it is urged that the trial court having decided the matter, its decision should not be controlled or interfered with by mandamus. The fact that the court exercised its judgment in determining that it had nothing before it is not decisive as to our power, because if the trial court erroneously refuses to proceed to trial of the issues of fact and render a decision, this court by mandamus can compel a trial to determine the issue, although in doing so it overrides the decision of the trial judge that he will not do so.

This was the ruling that caused the Supreme to Court reverse the Circuit Court's decision. It is true the Supreme Court reversed the Circuit Court but not on its rationale for issuing the Writ of Mandamus. At no point did the Court criticize the Appellate Court for using the Writ of Mandamus in support of its appellate jurisdiction. Quite the contrary.

> As the jurisdiction of the circuit court of appeals is exclusively appellate, its authority to issue writs of mandamus is restricted by statute to those cases in which the writ is in aid of that jurisdiction. Its authority is not confined to the issuance of writs in aid of a jurisdiction already acquired by appeal but extends to those cases which are within its appellate jurisdiction although no appeal has been perfected. Otherwise, the appellate jurisdiction could be defeated and the purpose of the statute authorizing the writ thwarted by unauthorized action of the district court obstructing the appeal. 319 U.S. at 25

The Supreme Court in order not to infringe upon the use of mandamus in support of appellate jurisdiction limited the issue before it as follows:

Hence the question presented on this record is not whether the court below had power to grant the writ but whether in the light of all the circumstances the case was an appropriate one for the exercise of that power. 319 U.S. at 25-26

. The Court then decide that the use of mandamus in that case was not appropriate. That decision involving a plea in abatement filed in the district court has nothing to do with this case. Here the District Court refused to even file the Petition for a Writ of Error *Coram Nobis* and the supporting pleadings. The District Court thereby totally prevented the appeal of a decision to this Court, an appeal specifically provided for in Rule 4 of the Federal Rules of Appellate Procedure.

## The Fundamental Error in this Case

There is one Fundamental Error presented in this case which, to date, has not been presented to the District Court or this this Court.

### Are Joseph Biden and Kamala Harris acting through the Department of Homeland Security guilty of Crimes against Humanity and Genocide

This Attorney/Petitioner has known since June, 2016, that the Obama Administration was guilty of Crimes against Humanity, Humanity being the American People, and Genocide against Republican families in suburban and rural voting areas. Unfortunately, this Petitioner did not initially have Standing to challenge these international crimes. I first tried to get around the Standing barrier by intervening in an ongoing federal lawsuit, *Texas v. Biden*, No. 04:21-cv-00579-P. If you want a quick read as to why I am comfortable alleging Crimes against

Humanity and Genocide, go to my Intervening Complaint and 10 accompanying Exhibits, Dkt. No. 55. Although the Government moved to dismiss (Dkt. #60) to which I responded (Dkt. #66), the Judge was sufficiently impressed with my presentation that he did not dismiss the Intervening Complaint. Unfortunately, Texas could not sustain its allegations and withdrew its Complaint whereupon my intervention became moot.

I have continued to seek a vehicle to make a case against the Obama Administration and now the Biden Administration. I believe I have found it in this case where I have filed a Petition for Writ of Error *Coram Nobis* raising the issues I attempted to raise in *Texas v. Biden.*

The Supreme Court's decisions in *Biden v. Texas*, 597 U.S. ___ (2022) and *U.S. v. Texas*, 599 U.S. ___ (2023) were wrongly decided. This is not a criticism of the Court. It is a recognition that a corrupt Department of Homeland Security (hereinafter "DHS") intentionally deceived the Court and the Solicitor General failed to challenge her client and do her own investigation. As result, starting this month those wrongful decisions will cause at least 1,500 children to be struck with Polio. Of those struck, at least 12 will die. Further, so many children will be infected by the D 68 Virus and suffer severe respiratory attacks that the Nation will not have enough hospital beds to treat them.

## STANDING OF THE PETITIONER

This attorney has filed a Petition for Writ of Error *Coram Nobis* in this case to raise issues in support of Governor Abbott's efforts to prevent illegal immigrants from entering the state and to protect the citizens of the State of Texas including this challenge to the Parole in Place Program (PIP). Under the Rules of Procedure of the 5th Circuit, F.R.A.P. 4 (a)(1)(C), the granting or denial of a Petition for Writ of Error *Coram Nobis* in a civil case is an appealable order. Therefore, this Petitioner has standing to appear in the District Court and this Court both by Petition and at trial.

## JURISDICTION OF THE COURT

The concept that federal common law may support federal question jurisdiction when the claim brought necessarily involves international law and relationships between the United States and a foreign sovereign is well settled and, indeed, is set forth in Section 111 of the Restatement (Third) of the Foreign Relations Law of the United States. In pertinent part, Section 111(2) states that "Cases arising under international law or international agreements of the United States are within the Judicial Power of the United States and, subject to the Constitution and statutory limitations and requirements of justiciability, are within the jurisdiction of the federal courts."

Federal courts have found federal question jurisdiction to exist with regard to issues of international law and international relations even when the plaintiff's complaint alleges only claims based on state law. For example, in *Republic of*

*Philippines v. Marcos,* 806 F.2d 344 (2d Cir. 1986), the government of the Philippines brought an action in New York state court against Ferdinand Marcos, the deposed dictator of the Philippines, to attach certain properties in New York that were alleged to have been purchased by Marcos with funds of the people of the Philippines. The court noted that the complaint, on its face, was brought under a state law theory of "conversion, requiring the imposition of a constructive trust or equitable liens upon the 'ill-gotten' gains." The court nevertheless held that, under the plaintiff's well pleaded complaint, international relations were sufficiently implicated to support federal jurisdiction. This case involves International Law, International Treaties and the right of Texas to protect its citizens from Genocide. Therefore, international relations are sufficiently implicated to support federal jurisdiction.

### INTERNATIONAL LAW IS AT THE CENTER OF THIS CONTROVERSY INCLUDING, BUT NOT LIMITED TO, THE CONVENTION ON THE PREVENTION AND PUNISHMENT OF THE CRIME OF GENOCIDE

The Petitioner in this action alleges that the administrations of Barrack Obama and Joseph Biden are guilty of Crimes against Humanity and Genocide. These allegations are based upon violation of rights guaranteed by the Convention on the Prevention and Punishment of the Crime of Genocide, Art.2, December 9, 1948, 78 U.N.T.S. 277, (hereinafter "the Convention") The United States signed the Convention on December 11, 1948 and ratified it on November 25, 1988. The Obama and Biden Administrations are charged under Art. II, Secs. (a) (b)and (c). The acts complained of are set forth in Art. III, Sec. (a) and (b). Venue in State courts is established in Article VI.

The Petitioner also alleges violations of International Law, more particularly the Rome Statute of the International Criminal Court (hereinafter "the Rome Statute") which states that the elements of a crime against humanity is commission of any of the enumerated acts when committed as part of a widespread or systematic attack directed against any civilian population. Rome Statute Art. 7.1. An "attack" directed against any civilian population" is a course of conduct "pursuant to or in furtherance of a State or organizational policy to commit such attack" *Id.* Art. 7.2 (a). Although the United States has not ratified the Rome Statute, it sets standards of International Law which will guide the Court in these proceedings. This Motion alleges acts of Crimes Against Humanity as set forth in Article 6 (a), (b) and (c) and at Article 7 (a), (g), (h) and (k) of the Rome Statute. The civilian population which is the target of the attacks described here in is the American suburban and rural population which, as the Obama and Biden Administrations well knew, is largely Republican.

As an attack on a national party, herein the Republican Party, the Crimes against Humanity set forth below have since 1963 qualified as Genocide. *See* <u>Statute of the International Tribunal for the Prosecution of Persons Responsible for Serious Violations of International Humanitarian Law Committed on the Territory of the Former Yugoslavia</u>, Article 4 (2) (a) and (b), 25 May 1993. In this case, the intent of the Obama and Biden Administrations to continue to engage in Genocide and Crimes against Humanity can be fairly inferred from the intentional actions continued after the initial outbreak of the EV D 68 Virus and Polio in the United States in October,

11

2014 and the recent repeal of the Remain in Mexico Protocol (MPP). Instead of discontinuing their actions, the Defendants continued their attacks and conspired to mislead the American People as to the true cause of Polio re-appearing in the United States in 2014 after the Sabin I Vaccine eliminated Polio 50 years ago.

## THE CRIMES AGAINST HUMANITY AND GENOCIDE

In the Convention, genocide means any of the following acts committed with intent to destroy, in whole or in part, a national, ethnical, racial or religious group, as such:

a. Killing members of the group;
b. Causing serious bodily or mental harm to members of the group See Definition: <u>Convention on the Prevention and Punishment of the Crime of Genocide</u> attached as Exhibit 1.

Since June, 2014, the Obama and Biden Administrations had been engaged in a Crime against Humanity and Genocide as defined by the Convention. The Administrations' crime consisted of distributing a virus known as EV D 68 being carried by Unaccompanied Minor Children from Latin American countries across the U.S. Border and then distributing the virus into Red States and Red election districts in otherwise Blue States. The D 68 Virus attacks the American suburban and rural population in two ways. First, the virus attacks the respiratory system. In Latin American countries, the population had gotten "herd immunity" years ago. But this virus was virtually unknown in the United States prior to 2014. As a result, after the first release of the virus in June, 2014, Americans, especially children under the age of 6, became desperately ill by the thousands. The rate of infections became so bad

that in 2022 children's hospitals and pediatric wards in general hospitals almost ran out of beds needed to treat the children. This year, 2024, is a "surge year" for the virus. This year the Nation will not have enough hospital beds to treat all of the children.

In addition to attacking respiratory systems, the D 68 virus contains two strains of Polio not blocked by the Sabin 1 Polio vaccine. When American children with certain generic deficiencies come in contact with the Virus, it attacks nerve centers located within muscles in arms, hips or the central nervous system. These children lose the use of their arms or legs except when the virus attacks the central nervous system in which case the children are totally paralyzed.

The position of the Petitioner is that this Court must determine whether or not Joseph Biden and Kamala Harris through the Department of Homeland Security are guilty of a Crime against Humanity and Genocide before it can make a legal determination on the issues surrounding the PIP Program.

There is absolutely no question that after October, 2014, Barack Obama, Joseph Biden and Kamala Harris allowed Unaccompanied Minor Children to enter the United States after which Defendant Department of Homeland Security (DHS) transported the unaccompanied Minor Children to Republican Election Districts throughout the United States. As is demonstrated by the Memorandum of Law in Support of this Petition which the Petitioner attempted to file in the District Court and the twenty-five (25) accompanying Exhibits, this allegation is beyond dispute. If

the Writ of Mandamus is issued, the Petitioner will file the Memorandum of Law and Exhibits in this Court as its Appeal Brief.

## CONCLUSION

The Petitioner offers that this Court must decide whether or not the Petition for Writ of Mandamus should be granted before going forward with any further proceeding. As part of the Writ of Mandamus, the Petitioner asks this Court to instruct the District Court Ckerk after filing the Petition and accompanying pleadings to electronically transfer the Petitioners Memorandum of Law and accompanying Exhibits to the Clerk of this Court for filing as the Petitioner's Appellate Brief. This Petitioner does not wish to delay the scheduled hearing of the expedited appeal currently scheduled. To the contrary, the Petitioner wishes to be heard at the scheduled hearing.

Dated: September 14, 2024

Respectfully submitted,

Robert A. Heghmann

P.O. Box 2108

Leander, Texas 78646

Bob_Heghmann@Reagan.com

## CERTIFICATION

The Petitioner hereby certifies that a copy of this Petition was served upon lead counsel for all parties by U.S. Mail, Postage-Prepaid on September 14, 2024.

_____



FROM:
Robert Hes Hadther
P.O. Box 9108
Leander, Texas
78646-2108

TO:
U.S. Court of Appeals
5th Circuit
Office of Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA
70130-3408