No. 24-40571

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

State of Texas; State of Alabama; State of Arkansas; State of Florida;
State of Georgia; State of Iowa; State of Kansas; State of Louisiana;
State of Missouri; State of North Dakota; State of Ohio; State of South
Carolina; State of South Dakota; State of Tennessee; State of Wyoming;
State of Idaho,

Plaintiffs - Appellees

v.

United States Department of Homeland Security; Alejandro Mayorkas,
in his official capacity as Secretary for DHS; Ur Mendoza Jaddou, in her
official capacity as Director of USCIS; Troy Miller, in his official
capacity as the Acting Commissioner of CBP; Patrick J. Lechleiter, in
his official capacity as the Acting Director of ICE; Office of Management
and Budget; Shalanda Young, in her official capacity as the Director of
the Office of Management and Budget,

Defendants - Appellees

Oscar Silva Perez; Natalie Taylor; Salvador Doe; Justin Doe; Carmen
Miranda Zayas; Ricardo Ocampo Hernandez; Jessika Ocampo
Hernandez; Foday Turay; Jaxhiel Turay; Genaro Vicencio Palomino;
Cindy Siqueiros Maduena; Coalition for Humane Immigrant Rights,

Movants – Appellants

## MOTION TO VACATE EXTENSION OF DISTRICT COURT
## "ADMINISTRATIVE STAY"

*(Counsel Listed on Next Page)*

i

Esther H. Sung
Karen C. Tumlin
Hillary Li
Laura Flores-Perilla
Brandon Galli-Graves
Vanessa Rivas-Bernardy
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
(323) 450-7272

Paige Austin
Harold Solis
MAKE THE ROAD NEW YORK
301 Grove St.
Brooklyn, NY 11237
(718) 418-7690


*Counsel for Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... iii

INTRODUCTION ............................................................................ 1

PROCEDURAL HISTORY ................................................................. 2

ARGUMENT .................................................................................. 4

   I.  This Court's extension of the district court's administrative stay was procedurally and substantively improper. ..................................... 4

     *A.  An administrative stay is intended for a brief pause of a lower court order during appellate review of that order—not pending review of an ancillary issue like Appellants' request to intervene.* ....... 6

     *B.  Extending the stay is inappropriate in the absence of a finding on jurisdiction by any court.* ............................................................. 8

     *C.  An administrative stay is inappropriate here because it prevents reviewability and subverts the requirements for injunctive relief.* ................................................................................................ 12

   II.  The equities overwhelmingly favor vacatur of the "stay." ............ 14

     *A.  Texas has not shown any injury, much less irreparable harm, that would warrant an injunction of KFT.* ......................................... 14

     *B.  The balance of harms and public interest do not support an injunction of Keeping Families Together.* ......................................... 17

CONCLUSION ............................................................................. 25

CERTIFICATE OF SERVICE ........................................................... 27

CERTIFICATE OF COMPLIANCE ................................................... 28

# TABLE OF AUTHORITIES

## Cases

*Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001) ............................... 7

*Barber v. Bryant*, 860 F.3d 345 (5th Cir. 2017) ...................................... 10

*Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940 (7th Cir. 2006) (Posner, J.) ................................................................................. 15

*Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469 (5th Cir. 2013) 20

*Clapper v. Amnesty Int'l USA*, 568 U. S. 398 (2013) .............................. 11

*Connell v. Dulien Steel Prods., Inc.*, 240 F.2d 414 (5th Cir. 1957) ......... 14

*Crane v. Johnson*, 783 F.3d 244 (5th Cir. 2015) ..................................... 20

*Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972 (D.C. Cir. 1985) 13

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579 (5th Cir. 2013) ................................................................................. 26

*Dep't of State v. Munoz*, 144 S. Ct. 1812 (2024) .................................... 26

*Fiallo v. Bell*, 430 U.S. 787 (1977) ......................................................... 28

*Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199 (5th Cir. 1979) ................................................................................. 13

*Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ...................................................................................... passim

*Gen. Land Off. v. Biden*, 71 F.4th 264 (5th Cir. 2023) ............................ 20

*Gen. Land Off. v. Biden*, No. 7:21-CV-00272, 2024 WL 1023047 (S.D. Tex. Mar. 8, 2024) ................................................................................. 20

*Gill v. Whitford*, 585 U.S. 48 (2018)..........................................28

*Libertarian Party of Texas v. Fainter*, 741 F.2d 728 (5th Cir. 1984) .....20

*Louisiana State by & through Louisiana Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872 (5th Cir. 2023)...20

*Morton v. Ruiz*, 415 U.S. 199 (1974) .......................................24

*Nat'l Ass'n for the Advancement of Colored People, NAACP v. Tindell*, 95 F.4th 212 (5th Cir. 2024)...................................................9

*Nken v. Holder*, 556 U.S. 418 (2009).................................6, 7, 8

*Richardson v. Texas Sec'y of State*, 978 F.3d 220 (5th Cir. 2020) ...........7

*Sampson v. Murray*, 415 U.S. 61 (1974)............................14, 15

*Scialabba v. Cuellar de Osorio*, 573 U.S. 41 (2014) .......................27

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)................9, 10

*Texas v. United States*, 50 F.4th 498 (5th Cir. 2022) .............................19

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ............................25

*U.S. v. Jefferson Cnty.*, 720 F.2d 1511 (5th Cir. 1983) ..........................16

*United States v. Ruiz*, 536 U.S. 622 (2002) ..................................8

*United States v. Texas*, 144 S. Ct. 797 (2024).............................3, 7, 8, 12

*United States v. Texas,* 599 U.S. 670 (2023)..............................11, 17, 29

*United States v. Texas*, No. 1:23-CV-1537-DAE, 2024 WL 861526 (W.D. Tex. Feb. 29, 2024), *vacated*, 144 S. Ct. 797 (2024) ............................12

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982).............................24

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................. 16, 24

**Statutes**

5 U.S.C. § 705 ................................................................................... 2, 11

8 U.S.C. § 1151(b)(2)(A)(i) .......................................................... 23

8 U.S.C. § 1158(b)(2)(A)(i) .......................................................... 23

8 U.S.C. § 1182(d)(5) ..................................................................... 24

**Other Authorities**

H.R. Rep. No. 1199, 85th Cong., 1st Sess., 7 (1957) ................................. 24

Implementation of Keeping Families Together ("KFT FRN"), 89 Fed. Reg. 67459 (Aug. 20, 2024) ..................................................... 24

**Rules**

Fed. R. Civ. P. 65 ............................................................................. 12, 13

**INTRODUCTION**

Federal courts are courts of limited subject matter jurisdiction. Eschewing that bedrock principle, the district court enjoined a parole process the federal government announced months ago—without regard to its own lack of jurisdiction or the immense harm such an order would inflict on Appellants and numerous other families like theirs. Compounding that error, this Court *sua sponte* extended that district court injunction indefinitely in an appeal on a wholly ancillary matter. Accordingly, the State of Texas has gotten precisely what it wanted in filing suit—an indefinite nationwide injunction of an immigrant-inclusive policy with which it disagrees—without having to prove that its dispute over federal immigration policy is one that can be resolved through the judicial process, much less that its claims are valid. No litigant and no political dispute merits inverting the law in the way that is required to justify this Court's unprecedented extension of the district court's "administrative stay." The only outcome consistent with "the Framers' concept of the proper—and properly limited—role of the courts in a democratic society," *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 380 (2024) (citation omitted) (hereinafter

"*Hippocratic Med.*"), is for this Court to immediately vacate its extension of that injunction. Texas opposes this motion. The Federal Defendants do not oppose.

## PROCEDURAL HISTORY

Keeping Families Together ("KFT"), a parole process announced in June 2024, opened to applicants on August 19, 2024. Four days later, after all eligible Appellants had submitted applications, Texas and fifteen other states sued to challenge KFT's lawfulness and requested a temporary restraining order, a preliminary injunction, and a stay of agency action under 5 U.S.C. § 705. ROA.96-192. On the next business day, before any response from Federal Defendants, the district court *sua sponte* granted a form of relief not sought by Texas: a temporary, renewable "administrative stay" of KFT for fourteen days, characterized as "[t]emporary, injunctive relief based significantly on case-administration." ROA.527. While the district court acknowledged "the traditional four factors governing preliminary relief," ROA.528, it claimed not to be bound by them in providing functionally identical relief via an "administrative stay," which the district court principally justified based on Justice Barrett's two-Justice concurring opinion in *United*

*States v. Texas*, 144 S. Ct. 797 (2024). ROA.528, 531. The district court *sua sponte* consolidated the pending motion for preliminary relief with summary judgment briefing and a potential bench trial, with briefing to conclude by October 10, 2024, and expressed its expectation "that good cause may exist to extend this administrative stay for additional periods through mid-October." ROA.532.

Never having had a chance to respond, much less argue the merits of such expansive relief, Federal Defendants moved to vacate the stay a week later. ROA.633. The next day, and again without waiting for an opposition, the district court denied Federal Defendants' motion, *sua sponte* extending its administrative stay until September 23 while also further expediting its previous schedule to allow a summary judgment hearing and possible bench trial on September 18, 2024. ROA.732, 737-738.

In the interim, Appellants moved to intervene in the litigation to defend Keeping Families Together. ROA.253. The district court denied intervention on September 3, 2024, ROA.694-702, and Appellants filed the instant appeal the same day, moving to expedite the appeal to resolve the question of their intervention before the rapidly approaching district

court hearing and possible bench trial, ROA.703. This Court granted that motion to expedite. ECF No. 54.

Midway through the parties' expedited briefing schedule on this appeal, this Court issued an unpublished, unsigned order staying the district court proceedings pending resolution of the appeal "or other order of this court." ECF No. 68-1. The same order added: "The [administrative] stay issued by the district court will remain in effect pending further order of this court." *Id.*

Appellants now move this Court to vacate its extension of the district court's "administrative stay," allowing it to expire by its own terms.

## ARGUMENT

### I. This Court's extension of the district court's administrative stay was procedurally and substantively improper.

Without comment or analysis, this Court *sua sponte* extended an "administrative stay"—a stay that was itself entered and extended *sua sponte* by the district court—effectively imposing an indefinite and unreviewable nationwide injunction on the operation of Keeping Families Together. Although Courts of Appeal may appropriately respect and defer to a lower court's management of its own docket, this Court's order

goes well beyond that and is inappropriate for several independent reasons.

First, the appeal before this Court is not on the merits of Texas's claims or of the district court's "stay," but the ancillary question of whether Appellants may intervene. Second, this Court—like the district court—has acted without assuring itself of Texas's standing to bring its claims, and without consideration of the traditional four-factor test for ordering such injunctive relief. Such an unsupported extension of an unreasoned stay intrudes on the authority of the executive, inflicts harm on Appellants and numerous families like theirs, and fails to respect Article III's limits on judicial power. Finally, this Court's extension has the effect of impermissibly insulating the district court's initial order from appellate review, despite its likely duration of at least two months and its enormous impact.

For these reasons, this Court's extension of the district court's "administrative stay" should be vacated. Unpublished Order, ECF No. 68-2.

**A.** *An administrative stay is intended for a brief pause of a lower court order during appellate review of that order—not pending review of an ancillary issue like Appellants' request to intervene.*

This Court's *sua sponte* extension of the district court's *sua sponte* "administrative stay" was not an appropriate exercise of its authority. Although "[a]n appellate court's power to hold an order in abeyance while it assesses the legality of the order has been described as 'inherent,'" *Nken v. Holder*, 556 U.S. 418, 426 (2009), that is not what happened here. On appeal before this Court is not the merits of the district court's "administrative stay" of Keeping Families Together, but the ancillary question of whether Appellants should be allowed to intervene. Courts utilizing or examining the propriety of administrative stays have done so in the context of a pause pending review of the merits of a motion for a stay pending appeal, typically brought under Federal Rule of Appellate Procedure 8. *See, e.g.*, *Nken*, 556 U.S. at 426; *Texas*, 144 S. Ct. at 797; *Richardson v. Texas Sec'y of State*, 978 F.3d 220, 227–28 (5th Cir. 2020); *Arnold v. Garlock, Inc.*, 278 F.3d 426, 433 (5th Cir. 2001). This order falls far outside the bounds of this precedent.

Indeed, the Supreme Court has cautioned that even a formal stay on appeal "is an intrusion into the ordinary processes of administration

and judicial review," *Nken*, 556 U.S. at 427 (citation and quotation marks omitted), that should be deployed only as "a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process" rather than engaging in "justice on the fly," *id.* "The whole idea" of a stay "is to hold the matter under review in abeyance because the appellate court lacks sufficient time to decide the merits." *Id.* at 432.

An administrative stay is a yet higher degree of intrusion. As Justice Barrett observed in her concurrence in *Texas,* "[w]hen entered, an administrative stay is supposed to be a short-lived prelude to the main event: a ruling on the motion for stay pending appeal." 144 S. Ct. at 799. Here, this Court's eventual ruling is on a different issue entirely— Appellants' proposed intervention—so its administrative stay of KFT is not a prelude to anything. In this context, with no review of the merits of the district court's stay forthcoming, the Court's *sua sponte* extension is not the limited, "responsibl[e]" intrusion sanctioned in *Nken.* 556 U.S. at 427.

For the same reason, a stay is not justified by the well-established rule that "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). This Court

is not determining its jurisdiction, it is deciding whether Appellants may intervene.

**B. *Extending the stay is inappropriate in the absence of a finding on jurisdiction by any court.***

Extension of the district court's "administrative stay" is further inappropriate because no court has applied the basic threshold test to determine whether Texas has shown standing sufficient to justify federal-court jurisdiction, much less upend both a major nationwide policy months in the making and the lives of those who could benefit from it. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.") (citation omitted). Texas cannot make this basic showing, *see infra* Section II; *see also* Defendant-Appellees' Motion to Vacate Extension of District Court Stay, ECF No. 90, and no court has determined that it has.

In couching its order as an "administrative stay," the district court provided no analysis whatsoever of Texas's assertions of injury. *See* ROA.529 (noting only that Texas's "claims are substantial and warrant closer consideration than the court has been able to afford to date"); *cf. Nat'l Ass'n for the Advancement of Colored People, NAACP v. Tindell*, 95 F.4th 212, 216 (5th Cir. 2024) (requiring "a clear showing" of "standing

to maintain the preliminary injunction, for an injunction is always improper if the district court lack[s] jurisdiction.") (citations and internal quotation marks omitted) (alteration in original); *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017) (same). This Court's extension of the district court's "stay," also without reasoning or inquiry into standing, compounds this error.

This Court should not prolong injunctive relief the district court lacked authority to issue in the first place—potentially for months—without first establishing its own jurisdiction. An "administrative stay" is not a tool intended to obviate such a requirement, which the Supreme Court has traced back to at least 1804. *Steel Co.*, 523 U.S. at 95. Standing to sue is a bedrock constitutional requirement inherent in the separation of powers, *Hippocratic Med.*, 602 U.S. at 378, intended to "prevent the judicial process from being used to usurp the powers of the political branches," *United States v. Texas,* 599 U.S. 670, 676 (2023) *(quoting Clapper v. Amnesty Int'l USA,* 568 U. S. 398, 408 (2013)); *see also Hippocratic Med.*, 602 U.S. at 397 ("No principle is more fundamental to the judiciary's proper role in our system of government" than the cases or controversies requirement). This Court's extension order authorizes a

multi-month judicial usurpation of constitutional authority that belongs elsewhere.

Nor is an "administrative stay" appropriate to allow litigants like Texas, who have shown no injury, to obtain an injunction freezing an invalid status quo pending a sufficient showing at some future point. *See* ROA.530 (couching order as a means of "preserving its jurisdiction to enter complete relief for plaintiffs should their lawsuit ultimately prove meritorious"). The court's ability to craft relief in the future is *predicated* on jurisdiction; it does not jurisdiction make. Indeed, the Supreme Court recently characterized the standing inquiry as just the opposite: "the standing requirement means that the federal courts decide some contested legal questions *later* rather than *sooner*, thereby allowing issues to percolate and potentially be resolved by the political branches in the democratic process." *Hippocratic Med.*, 602 U.S. at 380 (emphases added). An "administrative stay" turns this standard on its head, imposing harmful injunctive relief on families like Appellants' *now*, without first holding Texas to its burden to substantiate its claim to future injury. *See infra* Section II.

For these reasons, administrative stays are traditionally and properly the tool of an *appellate* court to "freeze legal proceedings until the court can rule on a party's request for expedited relief," *Texas*, 144 S. Ct. at 798, long after the basic tenets of jurisdiction are established.[1] That never happened here. The district court made no attempt to hold Texas to its initial burden, which as Appellants detail below, Texas has not even remotely met. *See infra* Section II.A.; ECF No. 90 at 12-18.

No authority exists for such circumvention of Rule 65 or the bedrock requirements for injunctive relief. Certainly, the All Writs Act, on which the lower court relied, ROA.528, does not excuse the prerequisite of jurisdiction, "free a district court from the restraints of Rule 65 . . . [or] authorize a district court to promulgate an Ad hoc procedural code whenever compliance with the Rules proves inconvenient." *Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 202 (5th Cir. 1979). Nor does 5 U.S.C. § 705 provide the missing authority. *Cf.* ROA.736. It authorizes a "stay" of an agency rule in certain circumstances, *subject to* the same four-part test as requests for a

---

[1] *See, e.g.*, *United States v. Texas*, No. 1:23-CV-1537-DAE, 2024 WL 861526, at *8 (W.D. Tex. Feb. 29, 2024), *vacated*, 144 S. Ct. 797 (2024) (issuing a preliminary injunction of the challenged policy with a multi-page analysis of standing).

temporary restraining order or preliminary injunction, *see Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985), and its text explicitly requires a showing of irreparable injury.

The district court lacked jurisdiction to issue its "administrative stay," and this Court erred in extending it.

### C. *An administrative stay is inappropriate here because it prevents reviewability and subverts the requirements for injunctive relief.*

This Court's extension of the district court's "administrative stay"—which is in form and effect an injunction—is also improper because it frustrates appellate reviewability, in contravention of the well-established rule that injunctive relief cannot be insulated from review after a brief period. Fed. R. Civ. P. 65. Whatever the district court may label its order, its appealability is determined by its duration. *See Sampson v. Murray*, 415 U.S. 61, 88 n.58 (1974) ("[T]he authority to issue temporary restraining orders is carefully hedged in Rule 65(b) by protective provisions," of which the "most important" is "the limitation on the time during which such an order can continue to be effective.") (citation and quotation marks omitted); *Connell v. Dulien Steel Prods., Inc.*, 240 F.2d 414, 417 (5th Cir. 1957) (a TRO continued past the period

permitted by Rule 65(b) "becomes, in effect, a temporary injunction from which an appeal lies.").

But the layering of this Court's stay atop the lower court's order—pending an appeal on a separate issue—has created a situation where no appeal can lie from an order with immense consequences for hundreds of thousands of people, possibly for months. That is neither appropriate nor lawful. *Cf. Sampson*, 415 U.S. at 86–87 ("A district court, if it were able to shield its orders from appellate review merely by designating them as temporary restraining orders, rather than as preliminary injunctions, would have virtually unlimited authority over the parties in an injunctive proceeding.").

The stymieing of review is particularly egregious here, where the underlying order was issued without inquiry into standing or the four-factor test for injunctive relief. By extending that order indefinitely, this Court vitiates the statutory right to review. *Cf. Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 943 (7th Cir. 2006) (Posner, J.) (an injunctive order extending beyond 20 days "is appealable, since otherwise a district court could by the simple expedient of extending the TRO circumvent . . . the right of appeal granted by section 1292(a)(1).").

## II.   The equities overwhelmingly favor vacatur of the "stay."

The procedural errors committed by the district court in *sua sponte* issuing and later extending its "administrative stay" of KFT—and of this Court in extending that stay—matter because the Appellants and families like theirs suffer real harm each day the policy remains blocked. That Texas has been allowed to obtain such "an extraordinary and drastic remedy," *U.S. v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (5th Cir. 1983), without ever having met its clear burden of persuasion must be corrected without further delay by this Court.

### A. *Texas has not shown any injury, much less irreparable harm, that would warrant an injunction of KFT.*

Texas must establish it will "likely" experience irreparable injury in the absence of an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To do this, Texas alleges that KFT parole will prevent an anticipated decrease in expenditures on education, healthcare, and crime. But even if such indirect and "attenuated" costs were sufficient to establish standing, *but see Texas*, 599 U.S. at 680 n.3, Texas has made no effort to establish that such injuries are foreseeable, let alone likely. Absent any showing of harm, Texas cannot establish its right to relief at

all, much less on a lower showing of merely "serious questions" going to the merits. *See* ROA.734.

For instance, while Texas notes that its law permits undocumented state residents to pay resident tuition at institutions of higher learning, that is true regardless of whether such residents have received KFT parole—no Texas resident who is now ineligible for such a tuition benefit will become eligible by virtue of KFT. Next, the state complains of costs associated with the education of unaccompanied noncitizen children— but that is inapposite because such children are not eligible for KFT parole. Both resident tuition and education costs are available to state residents regardless of immigration status, so the granting of KFT parole generates no newly eligible beneficiaries nor new costs to the state.

The same is true for Texas' asserted healthcare costs, which allegedly derive from the Emergency Medicaid Program and Texas Children's Health Insurance Program. As Texas once again concedes, federal law already requires it to include noncitizens in these programs without regard to immigration status. As a result, whether a noncitizen resident of the state has received KFT parole has no bearing on the state's health care costs. Rather, because noncitizens paroled under KFT will

become eligible to request work authorization under longstanding regulations not at issue in this case, KFT will likely *decrease* the state's healthcare costs as more of these individuals and their families receive employer-sponsored health insurance.

Finally, Texas alleges that crime and associated costs will increase as more individuals are paroled under KFT, but offers no logical explanation or evidence to support this claim, as the process excludes anyone with criminal charges or even most criminal history.

Presumably to make up for its failure to identify *increased* costs attributable to KFT, Texas instead argues that enjoining KFT may *decrease* its existing expenses because that will cause some unknown number of individuals to leave the U.S. But this highly speculative claim is unsupported by the facts contained in Texas's own declarations. Texas has presented no evidence about the KFT-eligible population demonstrating that *any* of them will leave the U.S. absent KFT parole. *Cf. Texas v. United States*, 50 F.4th 498, 519 (5th Cir. 2022). This is unsurprising: it makes no logical sense that an individual would suddenly become likely to permanently leave the country because a program that did not exist for the many years that the individual has

lived here continues not to exist. Even if some such individuals would leave the country permanently at some later date, Texas has offered no reason to believe such a decision would be motivated by an injunction of KFT rather than any number of other unrelated factors (e.g., the death of a loved one abroad).

Second, Texas cannot meet its burden by demonstrating that enjoining Keeping Families Together will *decrease* costs it was already incurring before the policy was implemented. Rather, Texas's responsibility is to establish that the challenged policy will *increase* those costs.[2] While Texas's arguments for the former are lacking, they are entirely absent for the latter.

### B. *The balance of harms and public interest do not support an injunction of Keeping Families Together.*

Unlike the entirely speculative harms Texas claims it will face, the harms to Appellants and others like them resulting from a continued

---

[2] *E.g.*, *Gen. Land Off. v. Biden*, No. 7:21-CV-00272, 2024 WL 1023047, at *4 (S.D. Tex. Mar. 8, 2024) ("Plaintiffs must show that if the funds in question are not spent on additional border walls, Texas would incur unrecoverable costs based on 'illegal aliens *who would not otherwise be in the State.*'" (quoting *Gen. Land Off. v. Biden*, 71 F.4th 264, 272 (5th Cir. 2023))) (emphasis added); *Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015) ("Mississippi's alleged fiscal injury was purely speculative because there was no concrete evidence that Mississippi's costs had increased or will increase as a result of DACA."); *Louisiana State by & through Louisiana Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 881

injunction of Keeping Families Together are concrete, irreparable, and devastating. *Libertarian Party of Texas v. Fainter*, 741 F.2d 728, 729 (5th Cir. 1984) ("[T]he threatened injury to plaintiff [must] outweigh[] the threatened harm the injunction may do to the defendant").

The financial harm to Appellants alone outweighs any conjectural future losses to Texas. The inability to obtain work authorization and permanent status in the United States limits noncitizen Appellants' job opportunities, lowers their household incomes and savings for the future, and puts them at higher risk of exploitation by employers. ROA.367. Because Appellant Oscar Silva Perez does not have employment authorization, his wife Natalie is the sole breadwinner and cannot afford to go back to school to pursue a career in genetics. ROA.291, *see also* ROA.317-318. Similarly, Appellant Genaro Vicencio's lack of immigration status has prevented him from obtaining loans to grow his business, despite it being the highest-paying painting company in his county. ROA.355, 356-357. Neither Appellant Oscar Perez Silva nor

---

(5th Cir. 2023) (finding that standing through a strain on state resources "is necessarily contingent on a finding that the Final Rule will increase [the state's] enforcement costs."); *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013).

Appellant Carmen Miranda's spouse can access health insurance. ROA.321, 283-284.

Consular processing as an alternative to KFT, meanwhile, is complicated, protracted, dangerous, and costly. ROA.328 (estimating that Appellant Ricardo Ocampo and his wife have spent $15,000 pursuing consular processing). Injunctions pausing KFT parole could force Appellants to pursue consular processing again, subjecting them to the very hardship they seek to avoid through KFT. For example, Appellant Carmen Miranda Zayas has already spent nearly a decade pursuing consular processing for her husband Francisco. ROA.318-319. However, Francisco is their family's breadwinner and Carmen's primary caretaker, as Carmen has Multiple Sclerosis that causes her debilitating pain and mobility challenges. ROA.317. Francisco's "leaving [their] family for any amount of time would cause significant hardship." ROA.319-321. As discussed below, a continued stay of KFT may force them into precisely that situation. ROA.318-319.

The pause of KFT also exacerbates the emotional toll from Appellants' constant fear of separation and inability to plan for the future. Every Appellant describes the trauma of the feeling of not

knowing if their partner will be torn from them and their families. *See, e.g.*, ROA.342 ("[M]y family and I still live each day in this country we call home with a fear that we could be separated."), ROA.292 ("I live with constant fear that any day Oscar could get detained and face deportation."), ROA.335 ("I want to know the love of my life can't be ripped away at any time. . . . To not have those worries if he doesn't come home from work or if he comes home an hour later that ICE took him away. . . ."). With each day that KFT is paused, the uncertainty about the future grows. *See, e.g.*, ROA.326 (R. Ocampo Decl. ¶¶ 9-10) ("We are living in limbo."), ROA.283 ("I feel like we are living our lives in six-month increments . . . [It] makes it impossible to plan our careers and our futures."). The fear and uncertainty traumatize not only Appellants, but also their U.S.-born children. Ricardo's lack of status has caused his teenage son fear, "mental health breakdowns and even suicidal thoughts." ROA.327.

The uncertainty and unpredictability affect every part of Appellants' lives, from education, to buying a home, to changing jobs, and even having children. ROA.283, ROA.344-345, ROA.329. Allowing grants of KFT parole redresses this extensive and ongoing harm. For

Appellants, the availability of KFT would mean "knowing I will be able to put my kids to bed the next day," ROA.329, "a profound sense of relief that [my husband] wouldn't be taken away from us," ROA.351, and "peace of mind knowing I will always be around to provide for my wife and son," ROA.356-357. The Court cannot redress financial and emotional harm to Appellants through an eventual ruling in Appellants' favor, making it irreparable—and far greater than the indirect harms Texas claims.

A stay or injunction at this stage also undermines the public interest. *Cf. Winter*, 555 U.S. at 24 ("[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.") (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

**First**, there is a public interest in courts rigorously applying the requirement that movants establish standing to sue before issuing stays that alter the lives of hundreds of thousands of people and transfer the task of governance from the executive to the courts, however briefly. *See supra* Section I(B). The importance of that principle is heightened when the process at issue—like KFT—is agency action affecting "the rights of

individuals," *Morton v. Ruiz*, 415 U.S. 199, 235 (1974), and has been publicized, planned for, and relied upon for months. *See, e.g.*, ROA.368, ROA.301, ROA.293-294. It is further heightened where, as here, such individuals have been denied the opportunity to appear as parties in a proceeding to fully join in the defense of agency action, despite the Court's acknowledgment of their "direct, substantial, legally protectable interest in the proceedings" that is "sufficiently implicated by [the] case." ROA.695-696 (citing *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015)).

Taken together, these factors demonstrate a strong likelihood that Texas cannot establish standing to bring suit, and instead can be considered at best "concerned bystanders," *Hippocratic Medicine*, 602 U.S. at 382, or even indirect beneficiaries of KFT parole, through increased tax revenue, improved public health, and other positive outcomes. ECF No. 60 at 53-54 (discussing evidence Appellants plan to adduce if granted intervention). Despite this, Plaintiffs have *already* succeeded in upending months of preparations and plans by Appellants and numerous other families. ROA.285-286, ROA.293-94, ROA.301, ROA.302-304, ROA.356, ROA.320-321, ROA.328-330, ROA.361.

**Second**, staying KFT parole frustrates Congress's intent in making immigrant visas for the spouses of U.S. citizens immediately available and providing DHS with broad parole authority. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). ("[T]he public is served when the law is followed.") Congress has frequently "use[d] its authority over immigration to prioritize the unity of the immigrant family." *Dep't of State v. Munoz*, 144 S. Ct. 1812, 1825 (2024). Accordingly, immediate relatives—"the children, spouses, and parents of a citizen of the United States," 8 U.S.C. § 1158(b)(2)(A)(i)—are not subject to any numerical limitation on immigrant visas, meaning they are the rare category of visa for which there should be no wait beyond adjudicatory processing time. 8 U.S.C. § 1151(b)(2)(A)(i); *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 47–48 (2014).

Yet Appellants' experiences demonstrate that U.S. citizens and their spouses face immense extra-statutory barriers to the benefits Congress extended to immediate relatives. Consular processing and waiver applications are backlogged and inefficient. Adjudication of I-601A waivers now takes over four years. Implementation of Keeping Families Together ("KFT FRN"), 89 Fed. Reg. 67459, 67468 (Aug. 20,

2024); ROA.356. Even with an approved waiver in hand, delays at U.S. consulates can stretch to a year or more. *See* KFT FRN, 89 Fed. Reg. at 67460; ROA.343; ROA.292-293. Consular processing is fraught with complex logistical obstacles, a minefield Appellant Jessika Ocampo calls "terrifying." ROA.335; *see also, e.g.*, ROA.318-319, ROA.328. Appellants' reluctance to undertake consular processing is rooted in those barriers, which appear nowhere in Congress's statutory scheme. *E.g.*, ROA.343; ROA.319-320; ROA.293-293. By contrast, DHS's broad authority to issue parole is rooted in statute. 8 U.S.C. § 1182(d)(5).

Congress did not intend to strand half a million families without a path to immediate relative visas due to bureaucratic backlogs, nor to tie the agency's hands in fixing the problem. *Cf. Fiallo v. Bell*, 430 U.S. 787, 795 n.6 (1977) (in passing the immediate-relative provisions of the INA "congressional concern was directed at 'the problem of keeping families of United States citizens and immigrants united'") (citing H.R. Rep. No. 1199, 85th Cong., 1st Sess., 7 (1957)). In seeking to reduce those barriers, KFT better effectuates the law. Enjoining the process does the opposite.

**Third**, the public interest is disserved by a nationwide injunction, enforceable not only in the fifteen Plaintiff States that have explicitly

disclaimed any effort to prove standing, but also in thirty-four states that have not brought suit. *See Gill v. Whitford*, 585 U.S. 48, 73 (2018) (a remedy must be "tailored to redress" a plaintiff's injury). Nationwide injunctions are increasingly disfavored as they "intrude on powers reserved for the elected branches[,] . . . deprive other lower courts of the chance to weigh in on important questions before this Court has to decide them [,] . . . [and] encourage parties to engage in forum shopping and circumvent rules governing class-wide relief." *Texas*, 599 U.S. at 694 (Gorsuch, J., concurring).

## CONCLUSION

"Article III does not contemplate a system where [Texas] can come to federal court whenever [it] believe[s] that the government is acting contrary to the Constitution or other federal law." *Hippocratic Med.*, 602 U.S. at 382. For that and the other reasons discussed above, this Court should vacate its extension of the district court's "administrative stay," which expires by its own accord on September 24, 2024.

Dated: September 19, 2024      Respectfully submitted,

                         */s/ Esther H. Sung*
                         Esther H. Sung
                         Karen C. Tumlin

Hillary Li
Laura Flores-Perilla
Brandon Galli-Graves
Vanessa Rivas-Bernardy
JUSTICE ACTION CENTER
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272
Facsimile: (323) 450-7276

Paige Austin
Harold A. Solis
MAKE THE ROAD NEW YORK
301 Grove Street
Brooklyn, NY 11237
Telephone: (718) 418-7690
Facsimile: (866) 420-9169

*Counsel for Appellants*

**CERTIFICATE OF SERVICE**

I, Esther H. Sung, hereby certify that on September 19, 2024, I caused the foregoing Motion to Vacate Extension of District Court "Administrative Stay" to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit via the CM/ECF system, which will send a notice of this filing to counsel for Plaintiffs-Appellees and Defendants-Appellees.

*/s/ Esther H. Sung*
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272

*Counsel for Movants-Appellants*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify the following:

1. The foregoing brief complies with the length limitations of Rule 27(d)(2)(A). The brief contains 4,988 words according to the Microsoft Word word-counting function, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. The foregoing brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times Century Schoolbook type style.

Dated: September 19, 2024

*/s/ Esther H. Sung*
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
Telephone: (323) 450-7272

*Counsel for Appellants*