No. 24-40571

# In the United States Court of Appeals for the Fifth Circuit

STATE OF TEXAS; STATE OF ALABAMA; STATE OF ARKANSAS; STATE OF FLORIDA; STATE OF GEORGIA; STATE OF IOWA; STATE OF KANSAS; STATE OF LOUISIANA; STATE OF MISSOURI; STATE OF NORTH DAKOTA; STATE OF OHIO; STATE OF SOUTH CAROLINA; STATE OF SOUTH DAKOTA; STATE OF TENNESSEE; STATE OF WYOMING; STATE OF IDAHO,

*Plaintiffs-Appellees*,

*v.*

UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, IN HIS OFFICIAL CAPACITY AS SECRETARY FOR DHS; UR MENDOZA JADDOU, IN HER OFFICIAL CAPACITY AS DIRECTOR OF USCIS; TROY MILLER, IN HIS OFFICIAL CAPACITY AS THE ACTING COMMISSIONER OF CBP; PATRICK J. LECHLEITER, IN HIS OFFICIAL CAPACITY AS THE ACTING DIRECTOR OF ICE; OFFICE OF MANAGEMENT AND BUDGET; SHALANDA YOUNG, IN HER OFFICIAL CAPACITY AS THE DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET,

*Defendants-Appellees*,

OSCAR SILVA PEREZ; NATALIE TAYLOR; SALVADOR DOE; JUSTIN DOE; CARMEN MIRANDA ZAYAS; RICARDO OCAMPO HERNANDEZ; JESSIKA OCAMPO HERNANDEZ; FODAY TURAY; JAXHIEL TURAY; GENARO VICENCIO PALOMINO; CINDY SIQUEIROS MADUENA; COALITION FOR HUMANE IMMIGRANT RIGHTS,

*Movants-Appellants*.

On Appeal from the United States District Court for the Eastern District of Texas, Tyler Division

## OPPOSITION TO MOTIONS TO VACATE ADMINISTRATIVE STAY

# TABLE OF CONTENTS

Page

Table of Authorities .................................................................. ii

Introduction .............................................................................. 1

Background ............................................................................... 2

    A.  The States' challenge to the PIP program. ........................... 2

    B.  The district court's administrative stay and highly expedited trial. ..... 3

    C.  Appellants' intervention motion and expedited appeal. ..................... 5

Argument ................................................................................... 6

  I.  This Court Has Ample Authority to Issue Administrative Stays................ 6

    A.  Both the Court's inherent authority and the All Writs Act authorize administrative stays like this one.......................................................... 6

    B.  To the extent they address this authority at all, the federal government's and Appellants' counterarguments are meritless........ 12

  II.  This Court Lacks Appellate Jurisdiction to Entertain Questions of Standing, the Injunctive-Relief Factors, or the Scope of Remedies. ...........16

Conclusion ............................................................................... 20

Certificate of Service.............................................................. 21

Certificate of Compliance ...................................................... 21

# Table of Authorities

**Page(s)**

**Cases:**

*Adams v. United States ex rel. McCann*,
    317 U.S. 269 (1942) ................................................. 7

*Al Otro Lado v. Wolf*,
    952 F.3d 999 (9th Cir. 2020) ................................... 10

*Ambraco, Inc. v. Bossclip B.V.*,
    570 F.3d 233 (5th Cir. 2009) .................................. 13

*Apter v. Dep't of Health & Hum. Servs.*,
    80 F.4th 579 (5th Cir. 2023) ................................... 18

*BST Holdings, L.L.C. v. OSHA*,
    17 F.4th 604 (5th Cir. 2021) ............................... 9, 12

*BST Holdings, L.L.C. v. OSHA*,
    No. 21-60845, 2021 WL 5166656 (5th Cir. Nov. 6, 2021) .................. 9

*Ctr. for Biological Diversity v. EPA*,
    56 F.4th 55 (D.C. Cir. 2022) ................................... 10

*Dig. Equip. Corp. v. Desktop Direct, Inc.*,
    511 U.S. 863 (1994) ............................................. 16

*E.T. v. Paxton*,
    19 F.4th 760 (5th Cir. 2021) .................................. 10

*Escobar v. Montee*,
    895 F.3d 387 (5th Cir. 2018) .................................. 17

*FTC v. Dean Foods Co.*,
    348 U.S. 597 (1966) ............................................... 8

*Harris v. Nelson*,
    394 U.S. 286 (1969) ............................................... 7

*In re Landry*,
    83 F.4th 300 (5th Cir. 2023) .................................. 12

*In re Murphy-Brown, LLC*,
    907 F.3d 788 (4th Cir. 2018) .............................. 10, 12

*In re Univ. Mich.*,
    936 F.3d 460 (6th Cir. 2019) .................................. 12

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ............................................... 6

*Link v. Wabash R.R. Co.*,
  370 U.S. 626 (1962) ........................................................ 7

*Martin v. O'Rourke*,
  891 F.3d 1338 (Fed. Cir. 2018) ...................................... 10

*Mi Familia Vota v. Ogg*,
  105 F.4th 313 (5th Cir. 2024) ........................................17

*Michael v. I.N.S.*,
  48 F.3d 657 (2d Cir. 1995) ............................................ 10

*Nat. Gas PipeLine Co. of Am. v. Energy Gathering, Inc.*,
  2 F.3d 1397 (5th Cir. 1993) .............................................. 7

*Nken v. Holder*,
  556 U.S. 418 (2009) .......................................... 8, 11, 13, 14

*O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*,
  342 F.3d 1170 (10th Cir. 2003) ...................................... 10

*Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regulatory Comm'n*,
  479 U.S. 1312 (1986) ........................................................ 8

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*,
  474 U.S. 34 (1985) ............................................................ 7

*Phillips Beverage Co. v. Belvedere, S.A.*,
  204 F.3d 805 (8th Cir. 2000) .......................................... 10

*Sierra Club v. City of San Antonio*,
  115 F.3d 311 (5th Cir. 1997) .......................................... 16

*Summit Med. Assocs., P.C. v. Pryor*,
  180 F.3d 1326 (11th Cir. 1999).......................................17

*Tex. All. for Retired Ams. v. Hughes*,
  976 F.3d 564 (5th Cir. 2020) .......................................... 10

*Texas v. Biden*,
  20 F.4th 928, 997 (5th Cir. 2021).................................18-19

*Texas v. United States*,
  86 F.Supp.3d 591 (S.D. Tex. 2015) ................................ 18

*United States v. Colomb*,
  419 F.3d 292 (5th Cir. 2005) ............................................ 7

*United States v. Dunbar*,
  611 F.2d 985 (5th Cir. 1980) (en banc) .......................... 10

*United States v. Hayman*,
  342 U.S. 205 (1952) .......................................................... 8

*United States v. N.Y. Tel. Co.*,
  434 U.S. 159 (1977) ..........................................................7, 8, 10
*United States v. Texas*,
  144 S.Ct. 797 (2024) ........................6, 8, 9, 10, 11, 12, 14, 18
*Utah v. Su*,
  109 F.4th 313 (5th Cir. 2024) ...................................................17
*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
  913 F.3d 443 (5th Cir. 2019) .................................................. 16
*Veasey v. Abbott*,
  870 F.3d 387 (5th Cir. 2017) (per curiam) .........................11
*Williams v. Davis*,
  No. 22-30181, 2023 WL 119452 (5th Cir. Jan. 6, 2023) ....................17
*Woodson v. Surgitek, Inc.*,
  57 F.3d 1406 (5th Cir. 1995) .................................................. 7

**Constitutional Provisions, Statutes, and Rules:**
U.S. Const. art. II, §3 ............................................................2
5 U.S.C.:
  §705 .................................................................................13
  §706(2) ........................................................................... 14
8 U.S.C.:
  §1182(a)(9)(B)(i)(II) ..........................................................2
  §1182(d)(5)(A) ..................................................................2
  §1255(i) .............................................................................2
28 U.S.C.:
  §1291 ............................................................................... 16
  §1292(a)(1) .................................................................. 15, 16
  §1651(a) ................................................................3, 7, 8, 10
Fed. R. Civ. P. 65 ......................................................... 13, 15

**Other Authorities:**
Implementation of Keeping Families Together, 89 Fed. Reg. 67,459 (Aug. 20, 2024)......................................................................2
Order, *Book People, Inc. v. Wong*, No. 23-50668 (5th Cir. Sept. 25, 2023) ............... 9
Order, *Free Speech Coal., Inc. v. Paxton*, No. 23-50627 (5th Cir. Sept. 19, 2023) ...... 9
Rachel Bayefsky, *Administrative Stays: Power and Procedure*,
  97 Notre Dame L. Rev. 1941 (2022)............................................ 6, 8

# Introduction

Until Appellants rushed to this Court demanding that it drop everything and decide the issue of intervention, this case was hurtling at breakneck pace toward a September 18 bench trial and a final judgment shortly thereafter. Not content to participate as amici in those proceedings, however, Appellants insisted that this Court should reverse the district court's intervention ruling. But because it was not feasible for Appellants' appeal to be briefed, argued, and decided within two weeks, this Court issued an administrative stay to temporarily preserve the status quo.

Appellants and the federal government now urge the Court to lift that stay and permit the Parole in Place ("PIP") program to go into effect. Yet Appellants do not ask the Court to dismiss their appeal. Instead, they want the Court to short circuit its review and immediately resolve their appeal in their favor, granting relief from the district court's order in the process. The Court should not allow Appellants to invoke this Court's jurisdiction and file lengthy and complex merits briefing, while simultaneously seeking to prevent the Court from responsibly exercising that jurisdiction.

The Court has ample authority to issue an administrative stay under the All Writs Act and its inherent authority, and its use of that authority was proper. On Appellants' *own* theory, had the Court not entered a stay, the case would have proceeded to trial without them, rendering it difficult (if not impossible) for the Court to award effective relief. Appellants and the federal government err by ignoring these familiar sources of authority and mischaracterizing the Court's administrative stay—designed to preserve *Appellants'* asserted rights—as an injunction. And they

doubly err by seeking to interject questions of standing and remedies into a collateral-order appeal regarding intervention. The Court should deny their motions.

## Background

### A.  The States' challenge to the PIP program.

This appeal arises out of a challenge by a coalition of States to the Biden-Harris Administration's PIP program, which purports to create a pathway to legal status for over 1.3 million aliens who have been unlawfully in the country for ten years or more. *See* Implementation of Keeping Families Together, 89 Fed. Reg. 67,459 (Aug. 20, 2024). Because Congress has not authorized the PIP program, *see* 8 U.S.C. §§1182(a)(9)(B)(i)(II), 1255(i) (requiring aliens to first leave the U.S. to seek such relief), and certainly not *en masse*, *see id.* §1182(d)(5)(A) (requiring actual "case-by-case" review), Plaintiffs sued the Department of Homeland Security ("DHS") and relevant federal officials on August 23. ROA.29-30.

In their complaint, the States brought eight claims under the Administrative Procedure Act ("APA"), alleging (among other things) that the PIP program exceeds DHS's statutory authority, is arbitrary and capricious, and was promulgated without proper notice and comment. ROA.63-75. The States also brought a claim under the Take Care Clause, U.S. Const. art. II, §3, and a non-statutory ultra vires claim. ROA.75-77. The same day they filed their complaint, the States sought a temporary restraining order, preliminary injunction, or stay of the rule. ROA.96-161.

### B. The district court's administrative stay and highly expedited trial.

On August 26, the district court invoked the All Writs Act, 28 U.S.C. §1651(a), and its own "inherent authority to manage its docket" and issued a 14-day administrative stay of the PIP program under which U.S. Citizenship and Immigration Services ("USCIS") was permitted to continue *accepting* applications but was prohibited from *approving* new applications or *granting* parole. ROA.527-32.

The court explained that it "ha[d] undertaken a first-blush review of the merits of plaintiffs' standing and cause of action in light of the evidence submitted with their motion for a TRO and a stay," and concluded "[t]he claims are substantial and warrant closer consideration than the court has been able to afford to date." ROA.529. But it did not "express any ultimate conclusions about the success or likely success of those claims." ROA.530. Instead, preventing DHS "from granting parole under the rule's process for a short time," ROA.531, served to "preserv[e] its jurisdiction to enter complete relief for plaintiffs should their lawsuit ultimately prove meritorious." ROA.530. This was necessary, the court found, because it could "not presently perceive how to practicably unwind parole once issued." ROA.531.

Because USCIS's "mere acceptance of applications" would not "pose the same practical risks of irreversibility," however, the court specified that its stay "does not apply to the agency's creation of a process for *seeking* parole in place under the rule, as opposed to the *granting* of parole in place under the rule." ROA.531. Recognizing the need for promptness, the court also set an expedited schedule, requiring the administrative record to be completed by September 9, discovery by September 16, and dispositive motions by October 10, ROA.532-35.

Eight days later, the federal government filed a nearly 60-page motion asking the district court to vacate its stay. ROA.633-91. The court refused, first outlining the legal authority for its stay, ROA.734-35, then holding that nothing in the motion "significantly change[s] the court's conclusion about the equities bearing on the need to preserve the status quo ante for a short period," ROA.736. The court reiterated that "an unlawful grant of parole" would be "very difficult to unwind after the fact given the immediate incurring of reliance interests after parole is granted." ROA.736. In contrast, "the burden to the government of a relatively short restraint on issuing parole under the rule" was "much smaller" because "[a]pplications for parole under the rule can, with minimal administrative disruption, be processed as usual and held for approval, which can then proceed if the government prevails after the upcoming hearing on the facts and the law." ROA.736. Likewise, the burden of a stay of the program on beneficiaries of the PIP program was slight given that they "must have been continuously present in this country without admission or parole for ten years," and a further restraint on parole for a few weeks "is much shorter than the potential" alternative of "three- or ten-year periods of waiting abroad." ROA.736.

"The rigor of defendants'. . . 60-page filing," however, "convince[d] the court that a hearing on the facts and the law [could] be scheduled on an even more accelerated schedule," so the district court issued a revised scheduling order setting even tighter deadlines, including setting the close of discovery for September 11, dispositive motions for September 13, responses to the dispositive motions on September 16, and a bench trial for September 18. ROA.737-38. The court also extended its "temporary stay and restraining order for an additional 14-day period, such that it

[was to] expire[] at the end of September 23, 2024"—enough time to complete trial and, presumably, for the district court to issue a decision. ROA.737.

### C. Appellants' intervention motion and expedited appeal.

While the parties were litigating the propriety of the district court's administrative stay, Appellants moved to intervene as defendants. ROA.253-76. The district court denied the motion because Appellants and the federal government share the same "ultimate objective" of preserving the PIP program, meaning the federal government could adequately represent Appellants, who offered no evidence of "adversity of interest, collusion, or nonfeasance." ROA.697-700. The court allowed Appellants to participate as amici, however, which Appellants took advantage of by filing an amicus brief in support of the federal government's motion to vacate the administrative stay. ROA.706-31.

Nevertheless, Appellants noticed an appeal of the order denying their motion to intervene, ROA.703, and successfully sought to expedite this Court's consideration. ECF 54. Like the district court before it, this Court set an aggressive schedule under which the entire appeal would be fully briefed in less than 10 days, ECF 55, and argued on October 10, ECF 66. Yet there remained a significant risk that this case would proceed to final judgment before Appellants' right to participate had been resolved, which prospect forced the Court to administratively stay the district-court proceedings "pending further order of this court." ECF 68 at 2.

## Argument

### I. This Court Has Ample Authority to Issue Administrative Stays.

Appellants and the federal government err in arguing that this Court overreached by issuing an administrative stay. This Court's authority to issue such stays flows directly from its inherent power to manage its docket and has been confirmed by Congress in the All Writs Act. *See, e.g.*, *United States v. Texas*, 144 S.Ct. 797, 798 n.1 (2024) (Barrett, J., concurring in denial of applications to vacate stay) (citing Rachel Bayefsky, *Administrative Stays: Power and Procedure*, 97 Notre Dame L. Rev. 1941, 1960-64 (2022)). The stay here falls comfortably within both sources of authority. It was entered to ensure that this Court's jurisdiction was not thwarted by the then-impending bench trial that could have mooted this appeal and to preserve the status quo while this Court's deliberations occur. Appellants cannot both invoke this Court's jurisdiction and complain that this Court—which has expedited proceedings over the States' objections—is taking the time it needs to consider the parties' arguments and issue a reasoned decision.

#### A. Both the Court's inherent authority and the All Writs Act authorize administrative stays like this one.

**1.** "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Indeed, it is part and parcel of judiciary's "'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of

cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962). Following the Supreme Court's lead, this Court has often recognized that "[t]he federal courts are invested with inherent power 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (cleaned up) (quoting *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995)). "This power is necessarily incident to the judicial power granted under Article III of the Constitution." *Woodson*, 57 F.3d at 1417 (citing *Nat. Gas PipeLine Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir. 1993)).

In tandem with their inherent constitutional authority, under the All Writs Act federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a). "This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve 'the rational ends of law.'" *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172 (1977) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)). It allows courts "to fill[] the interstices of federal judicial power when those gaps threaten[] to thwart the otherwise proper exercise of federal courts' jurisdiction." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 41 (1985).

Accordingly, federal courts' "auxiliary" powers under the All Writs Act "are not limited to those situations where it is 'necessary' to issue the writ or order 'in the sense that the court could not otherwise physically discharge its appellate duties.'" *N.Y. Tel. Co.*, 434 U.S. at 173 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942)). Instead, courts may use their authority when

"appropriate," 28 U.S.C. §1651(a), including where issuing a writ or interim order will prevent "frustrating the 'very purpose' of" a proceeding and render it "effective" or to "avoid impairing or frustrating the Court of Appeals' appellate jurisdiction," *N.Y. Tel. Co.*, 434 U.S. at 173 (citing *United States v. Hayman*, 342 U.S. 205, 220-22 (1952), and *FTC v. Dean Foods Co.*, 348 U.S. 597 (1966)).

**2.** Administrative stays flow straightforwardly from both sources of authority. *See Texas*, 144 S.Ct. at 798 n.1 (citing Bayefsky, *supra* at 1960-64). As Justice Barrett explained just a few months ago, an administrative stay is "an exercise of [a court's] docket-management authority," that "do[es] not typically reflect the merits of" an appeal but instead "'freeze[s] legal proceedings until the court can rule on a party's request for expedited relief.'" *Id.* at 798 (quoting Bayefsky, *supra* at 1942). An administrative stay "buys the court time to deliberate," and [t]heir point is to minimize harm while an appellate court" does so. *Id.* But "'[m]inimizing the harm' is not necessarily the exclusive justification for an administrative stay." *Id.* at 799. They are also "devices meant to maintain the status quo." *Id.* at 798 n.2 (citing *Nken v. Holder*, 556 U.S. 418, 429 (2009), and *Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regulatory Comm'n*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). And sometimes they can function as a preliminary take on "the underlying merits" too. *Id.* at 799.

Given the "short-lived" nature of such stays, "there is no jurisprudence of administrative stays, much less a one-size-fits-all test that courts apply before entering one." *Id.* That is entirely natural: "Play in the joints seems appropriate for a measure that functions as a flexible, short-term tool." *Id.* The Supreme Court itself

"frequently" utilizes administrative stays for this purpose. *Id.* at 798 (collecting authorities). So does this Court and its sister circuits. *See, e.g.*, *id.* (collecting authorities); *BST Holdings, L.L.C. v. OSHA*, No. 21-60845, 2021 WL 5166656, at *1 (5th Cir. Nov. 6, 2021), *adhered to* 17 F.4th 604, 610 n.7 (5th Cir. 2021); *see also* Order, *Book People, Inc. v. Wong*, No. 23-50668 (5th Cir. Sept. 25, 2023); Order, *Free Speech Coal., Inc. v. Paxton*, No. 23-50627 (5th Cir. Sept. 19, 2023). And ironically, even the federal government acknowledged the propriety of appellate courts issuing such orders for these purposes in its briefing below. *See* ROA.643-44.

    **3.**   The Court's administrative stay here falls comfortably within this well-established tradition. For one, it was a clear "exercise of" this Court's "docket-management authority" designed to "freeze legal proceedings until the court can rule on [Appellants'] request for expedited relief" on their intervention appeal. *Texas*, 144 S.Ct. at 798. Indeed, the Court stated that "[n]othing in th[e] order is to be construed as a comment on the merits of the instant appeal, regarding intervention, or on the underlying merits of the litigation." ECF 68 at 2. But "th[e] panel must have an opportunity to consider the merits briefs . . . and to hear argument on the appeal of the denial of intervention." *Id.* After all, although the Court expedited the appeal, ordered briefing to be completed in just one week, and sent the case to the next available oral argument panel, even that highly expedited schedule would not have permitted it to resolve the appeal before the bench trial would have effectively mooted it. *Id.*

    Thus, in the parlance of the All Writs Act, this Court's stay was "necessary or appropriate in aid of" this Court's collateral-order "jurisdiction[]," 28 U.S.C.

§1651(a), which would have otherwise been "impair[ed] or frustrat[ed]" by moot-ness absent a short-term stay. *N.Y. Tel. Co.*, 434 U.S. at 173. Courts routinely issue relief to prevent district-court proceedings from thwarting appellate jurisdiction. *See, e.g.*, *Al Otro Lado v. Wolf*, 952 F.3d 999, 1006 & n.6 (9th Cir. 2020); *In re Murphy-Brown, LLC*, 907 F.3d 788, 794 (4th Cir. 2018); *Michael v. I.N.S.*, 48 F.3d 657, 663-64 (2d Cir. 1995); *accord Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 70-72 (D.C. Cir. 2022); *Martin v. O'Rourke*, 891 F.3d 1338, 1342-43 (Fed. Cir. 2018); *Phillips Beverage Co. v. Belvedere, S.A.*, 204 F.3d 805, 806 (8th Cir. 2000). The Court's order here is of a piece.

The portion of the Court's order keeping the district court's own administrative stay "in effect pending further order of this court," is likewise firmly within the tra-ditional scope of administrative stays. This provision is aimed at "maintain[ing] the status quo" while this Court deliberates on the appealed question of whether Appel-lants have a right to participate in the district court's upcoming trial. *Texas*, 144 S.Ct. at 798 & n.2; *accord United States v. Dunbar*, 611 F.2d 985, 989 (5th Cir. 1980) (en banc) (court may "stay[] proceedings below pending appeal" to safeguard double-jeopardy rights). True, the status quo can be a "tricky metric" to define, *Texas*, 144 S.Ct. at 798 & n.2, especially because it "depends very much on the facts of a partic-ular case," *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170, 1178 (10th Cir. 2003). In assessing motions for stay pending appeal, courts often de-fine the status quo as the situation preexisting the order being appealed. *See, e.g.*, *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021); *Tex. All. for Retired Ams. v. Hughs*, 976 F.3d 564, 568 (5th Cir. 2020); *Veasey v. Abbott*, 870 F.3d 387, 391-92 (5th Cir.

2017) (per curiam); *see also Nken*, 556 U.S. at 429 (defining as "the status quo [] the state of affairs before" the order that was the subject of the appeal "was entered").

Here, "[m]eaning no criticism of the district court's recognition of the need for prompt resolution," the Court issued an administrative stay to facilitate its own ability to hear and decide this appeal. ECF 68 at 2. If the Court had *not* preserved the district court's own administrative stay for the pendency of this appeal, then that court would have issued a judgment, or that court's stay would have expired by its own terms, weeks before this Court could even hold oral argument. *Compare* ROA.737 (setting September 23 expiry on district-court administrative stay) *with* ECF 66 (calendaring argument in this Court for October 10). The former would have imperiled this Court's ability to afford Appellants complete relief; the latter would have imperiled the district court's ability to afford Plaintiffs complete relief. *See* ROA.531, 736. The latter would be particularly inequitable as it would permit Appellants and the federal government to use a collateral-order appeal on an "ancillary" question to obtain relief that they had been unable to receive from the district court itself and that would ordinarily not be subject to an interlocutory appeal. *See generally* ROA.732-38 (order denying motion to vacate administrative stay).

Put another way, this Court issued the stay to prevent its *own* actions in handling this appeal from altering the status quo in the district court. Because in this context the focus of the "status quo" analysis is on *this Court*, the proper metric for defining the status quo here is "[t]he day [the] appeal . . . was docketed in" this Court. *Texas*, 144 S.Ct. at 798 & n.2. For that reason, the Court's order preserves the district court's administrative stay as it existed on the day this appeal was docketed—i.e.,

precisely the status quo. That decision was not just legally proper, it was eminently sensible. *Accord BST Holdings*, 17 F.4th at 610 n.7 ("The unusual procedural posture of this case makes for an unusual process.").

## B. To the extent they address this authority at all, the federal government's and Appellants' counterarguments are meritless.

Even though this Court's order is expressly denominated an "administrative stay," ECF 68 at 2, neither the federal government nor Appellants seriously contend with this Court's authority to issue such stays. Indeed, the *sole* argument on this topic is Appellants' oblique suggestion (at 7) that such stays are appropriate only to buy an appellate court time to rule on a motion for stay pending appeal. But Appellants cite no authority for such an all-or-nothing proposition, and nor could they. True, administrative stays frequently arise in that context, but the Court's inherent power to "exercise …[its] docket-management authority" is not limited to only that context. *Texas*, 144 S.Ct. at 798. Nor is the All Writs Act. Indeed, courts regularly use such authority for other purposes. *See, e.g.*, *In re Landry*, 83 F.4th 300, 303-08 (5th Cir. 2023) (ordering district court to vacate hearing on drawing court-ordered map in redistricting dispute to permit the legislature to attempt to redraw maps first); *In re Univ. Mich.*, 936 F.3d 460, 466-67 (6th Cir. 2019) (countermanding district-court order compelling University President to attend a settlement conference that the district court converted into a public settlement conference at the eleventh hour); *Murphy-Brown*, 907 F.3d at 794 (preventing district court from revisiting order "on the very eve of [appellate] oral argument"); *accord Ambraco, Inc. v. Bossclip B.V.*, 570

12

F.3d 233, 243 (5th Cir. 2009) (district courts may use "power inherent in every court" to prevent overlapping proceedings).

Instead of focusing on this Court's authority to issue administrative stays, the primary argument of both the federal government and Appellants is that "[t]his Court has, in effect, granted plaintiffs a preliminary injunction" without adhering to the notice requirements of Federal Rule of Civil Procedure 65 or requiring a showing that the four traditional factors for issuing preliminary injunctions have been met. DOJ Mot. 10-11; Appellants' Mot. 10-12. But all they offer is *ipse dixit* that this Court's administrative stay is tantamount to an injunction. Under settled principles of law, however, "[a]n injunction and a stay have typically been understood to serve different purposes." *Nken*, 556 U.S. at 428.[1] An injunction "is a means by which a court tells someone what to do or not to do" by "direct[ing] the conduct of a party . . . with the backing of its full coercive powers." *Id.* But a stay "operates upon the judicial proceeding itself" by "halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." *Id.*

As described above, this Court's administrative stay preserves the status quo between the parties in the district court at the time this appeal was docketed. *Supra*

---

[1] In the APA, Congress authorized a reviewing court to issue "*all* necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. §705 (emphasis added). Such statutory authorization does not fit neatly within the common-law notion of a "stay" or an "injunction," but ultimately the Court need not get into that distinction here because, as the federal government admits (at 11-12), the propriety of the district court's original stay is not at issue in this intervention appeal.

at 10-12. It does this by operating directly "upon the judicial proceeding itself," freezing all aspects of the district-court proceeding in place, including "temporarily divesting" a portion of the district court's own administrative-stay order of enforceability by temporarily pausing its expiration date. *Nken*, 556 U.S. at 428. This Court's administrative stay is therefore not an injunction, and for that reason it is unsurprising that this temporary, short-lived order did not recite the traditional factors governing the issuance of injunctions. *See Texas*, 144 S.Ct. at 799 (observing that the *Nken* factors "do not control" the issuance of an administrative stay).

The federal government also argues (at 12) that the Court's issuance of an administrative stay exceeded the scope of the Court's appellate jurisdiction, which is limited to questions of intervention, by "granting plaintiffs relief on the merits of their claims." But DOJ misreads this Court's order, which states that "[n]othing in this order is to be construed as a comment on the merits of the instant appeal, regarding intervention, or on the underlying merits of the litigation." ECF 68 at 2. This Court obviously did *not* give the States "relief on the merits of their claims"—which, under the APA would take the form of an order "hold[ing] unlawful and set[ting] aside" the PIP program, 5 U.S.C. §706(2). Again, the Court's administrative stay was an "an exercise of [the court's] docket-management authority" designed to "buy[] the court time to deliberate" on Appellants' "request for expedited relief" on the question of intervention. *Texas*, 144 S.Ct. at 798. Regardless, this Court's *jurisdiction* to issue an administrative stay does not flow from the collateral-order doctrine, but instead from its inherent *constitutional* authority to manage its docket and from the All Writs Act. *Supra* at 6-9. So, nothing about the scope of this Court's

14

appellate jurisdiction under the collateral-order doctrine limits its independent constitutional authority or power under the All Writs Act.

Finally, Appellants argue (at 12-13) that the Court's administrative stay was "inappropriate" because it effectively converts a temporary restraining order into an injunction that is insulated from appellate review under 28 U.S.C. §1292(a)(1). Once again, this Court's order is a stay, not an injunction, and it was not entered under Federal Rule of Civil Procedure 65. ECF 68; ROA.527-35. Nor was the district court's order permanently insulated from appellate review. If Appellants thought the district court somehow erred in issuing its administrative stay, they could have attempted to challenge that stay in this Court. *They did not*. *See* Appellants' Mot. 6 (admitting that "the merits of the district court's 'administrative stay'" is not "[o]n appeal before this Court"). As the propriety of the district court's underlying order is not at issue in this appeal, the Court should also reject Appellants' efforts to sneak that issue in through the back door. The Court thus cannot address Appellants' argument that "[t]he district court lacked jurisdiction to issue its" administrative stay (at 12) or the federal government's contention (at 19-21) that this Court should limit the scope of the district court's stay that even the federal government has admitted is not within the scope of this intervention appeal.[2]

---

[2] After all, if the federal government were right (at 11-12) that the Court lacks jurisdiction to issue its own administrative stay because it does not relate to intervention (and the federal government is not), *a fortiori*, the Court lacks jurisdiction to consider the *district* court's administrative stay.

## II. This Court Lacks Appellate Jurisdiction to Entertain Questions of Standing, the Injunctive-Relief Factors, or the Scope of Remedies.

Both Appellants and the federal government devote more than half of their respective motions to arguments about Texas's standing, the equitable-relief factors a court must consider before issuing injunctive relief, and the propriety of universal injunctions under the APA. *See* DOJ Mot. 12-16, 19-21; Appellants' Mot. 14-25. But none of those issues is properly before this Court—indeed, the Court lacks appellate jurisdiction to consider them, let alone resolve them in the first instance.

"Appellate jurisdiction is generally confined to 'final decisions of the district courts of the United States,'" which are decisions that "'end[] the litigation on the merits and leave[] nothing more for the court to do but execute the judgment.'" *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019) (quoting 28 U.S.C. §1291, then *Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)). Congress has statutorily authorized immediate appeals from certain interlocutory orders, including orders granting or denying preliminary injunctions. 28 U.S.C. §1292(a)(1). Likewise, there are certain "'narrow class[es] of decisions'" that are "immediately appealable as collateral orders even if no final judgment has been rendered." *Vantage Health Plan*, 913 F.3d at 448.

District-court orders denying intervention are one class of orders falling within the collateral-order doctrine. *See, e.g.*, *Sierra Club v. City of San Antonio*, 115 F.3d 311, 313-14 (5th Cir. 1997). But critically, issues of standing do *not* fall within the collateral-order doctrine, and to the extent they are considered at all, it is only "via the 'pendent appellate jurisdiction doctrine.'" *Williams v. Davis*, No. 22-30181, 2023

WL 119452, at *2 (5th Cir. Jan. 6, 2023) (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir. 1999)); *see also Mi Familia Vota v. Ogg*, 105 F.4th 313, 333-34 (5th Cir. 2024) (same).

Here, Appellants have taken an appeal from the district court's order denying intervention, and this Court's appellate jurisdiction is based exclusively on the collateral-order doctrine. *See* ECF 60 at 2. Questions regarding intervention are therefore properly within the purview of this Court's appellate jurisdiction. But questions of the balance of the equitable factors for injunctive relief or the scope of remedy under the APA are decidedly not. Indeed, none of these issues has been passed on by the district court. As this is "a court of *re*view, not first view," the district court should consider them first. *Utah v. Su*, 109 F.4th 313, 318 (5th Cir. 2024) (emphasis original).

Nor could Appellants or the federal government argue that questions of Article III standing fall within this Court's pendent appellate jurisdiction. *See Williams*, 2023 WL 119452 at *2. Such questions are neither "inextricably intertwined" with, nor "necessary to ensure meaningful review of," questions of intervention. *Id.* (quoting *Escobar v. Montee*, 895 F.3d 387, 391 (5th Cir. 2018)). Unlike in the context of sovereign immunity, the intervention analysis and the standing analysis do not "significantly overlap," and only the latter "goes to whether or not a court has subject matter jurisdiction." *Id.* at *3. Or as Appellants have succinctly put it (at 1), intervention is a "wholly ancillary matter."

Moreover, even if this Court *could* consider such justiciability issues in the first instance despite the limits of the collateral-order doctrine, the Court has recognized

that there is "greater wisdom" in "remanding for the district court to address standing and any other jurisdictional issues in the first instance." *Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 595 (5th Cir. 2023). Exercising that wisdom here is particularly important because Appellants want to intervene so that they can provide *evidence* regarding standing—effectively conceding that standing cannot be resolved on the record currently before the Court. *See* ECF 60 at 41-42. Given both the narrow scope of this appeal under the collateral-order doctrine and the district court's reasonable conclusion that disputes about standing here should be resolved in connection with the parties' presentation of evidence and argument, this Court should deny both motions and then resolve Appellants' (expedited) intervention appeal.[3]

In all events, even if the Court could consider such issues now, nothing would change. The PIP program only applies to individuals who "have been continuously present in this country without admission or parole *for ten years*." ROA.736 (emphasis added). Yet Appellants and the federal government complain that this Court—while expediting its ordinary process—has stayed proceedings *for weeks*. Given Plaintiffs' significant legal claims under standing and merits theories that the Court has already upheld, *see, e.g.*, *Texas v. United States*, 86 F.Supp.3d 591, 670 n.101 (S.D. Tex. 2015) (after finding standing, holding unlawful mass-immigration program), *aff'd Texas v. United States (DAPA)*, 809 F.3d 134 (5th Cir. 2015), *aff'd by an equally divided court*, 579 U.S. 547, 548 (2016) (per curiam); *Texas v. Biden (MPP)*, 20 F.4th

---

[3] If the Court were to conclude that it should resolve standing in the first instance, the States respectfully request leave to file supplemental jurisdictional briefing on the question.

928, 997 (5th Cir. 2021) (after affirming standing, holding that DHS "cannot … parole aliens en masse"), *rev'd on other grounds*, 597 U.S. 785 (2022), and claims for nationwide relief, *see* ROA.78, this Court did not remotely err by adopting an expedited schedule that will allow it to promptly resolve Appellants' intervention appeal so the district court can conduct an expedited bench trial. Indeed, that bench trial would already be over had Appellants not invoked this Court's jurisdiction in the first place.

## Conclusion

The Court should deny the motions to vacate the administrative stay.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General


Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General

/s/ Lanora C. Pettit
Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

William F. Cole
Deputy Solicitor General

Counsel for Plaintiffs-Appellees

## Certificate of Service

On September 30, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
Lanora C. Pettit

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,193 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
Lanora C. Pettit